HARRIS L. COHEN, ESQ., State Bar # 119600
HARRIS L. COHEN, A PROF. CORP.
5305 Andasol Ave.
Encino, CA 91316
tel (818) 905-5599 / fax (818) 905-5660
Email: hcohen00@aol.com

JOYCE K. LAU (No. 267839)
THE FULLER LAW FIRM, P.C.
60 No. Keeble Ave.
San Jose, CA 95126
Telephone: (408)295-5595
Facsimile: (408) 295-9852
Email: joyce@fullerlawfirm.net

BERNARD J. KORNBERG (State Bar No. 252006)
PRACTUS, LLP
58 West Portal Ave PMB 782
San Francisco, CA 94127
Telephone: (341) 234-6629
Email:  bernard.kornberg@practus.com

Attorneys for Milestone Financial, LLC, William
R. Stuart and Bear Bruin Ventures, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 20-30711 |
| E. MARK MOON, | Chapter 11 |
| Debtor. | Adv No. 22-03106 |
| MARK E. MOON,<br><br>Plaintiff,<br><br>vs.<br><br>MILESTONE FINANCIAL, LLC<br><br>Defendant. | **MOTION BY MILESTONE FINANCIAL, LLC FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS**<br><br>Date: May 3, 2024<br>Time: 10:00 a.m.<br>Ctrm:  remote appearance<br><br>The Hon. Dennis Montali |

Milestone Financial, LLC ("Milestone") will and hereby does move the Court for an order granting its motion for summary judgment and/or partial summary judgment on all the causes of action in the first amended complaint which allege 1) violation of Civil Code §2943(c), 2) violation of 15 U.S.C. §1639g, 3) violation of RESPA, 4) Breach of Contract, and 5) Intentional Interference with Contractual Relations.

The Motion will be based upon the Motion, the Notice of Motion, the Memorandum of Points and Authorities, the Declaration of William Stuart, Zoe Hamilton, Harris Cohen, Bernard Kornberg, and Richard Wang, and the evidence in support of the motion and all other documentation on file with the Bankruptcy Court herein.

The motion is made pursuant to FRCP 56, Local Bankruptcy Rule ("LBR") 1001-2(a) and 7007-1 et seq., 9013-1 et seq., and Civil Local Rules ("CLR") 56-1, 56-2 and 56-3. Pursuant to CLR 56-2 no separate statement of undisputed facts or joint statement of undisputed facts shall be submitted.

DATED: March 27, 2024    PRACTUS, LLP


By:    /s/ Bernard J. Kornberg
    BERNARD J. KORNBERG

Attorneys for Milestone Financial, LLC

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**_____ **- 1 -**

**I. INTRODUCTION.**_____ **- 1 -**

**II. PERTINENT FACTS**_____ **- 3 -**

**III. ARGUMENT**_____ **- 4 -**

   **A.  THE UNDISPUTED FACTS SHOW THAT THE MOONS WERE NOT ELIGIBLE FOR THE 2022 REFINANCE LOAN WITH UWM, AND THUS DID NOT SUFFER ACTUAL DAMAGES** _____ **- 4 -**

   **B.  MOON'S FIRST CAUSE OF ACTION FOR VIOLATION OF CIVIL CODE §2943(c) FAILS AS MILESTONE RESPONDED TO THE SOLE PAYOFF DEMAND MADE**_____ **- 7 -**

   **C.  MOON'S SECOND CAUSE OF ACTION FOR VIOLATION OF 15 U.S.C. §1639g CLAIM IS BARRED AS THE LOAN IS NOT A CONSUMER LOAN AND PLAINTIFF IS BARRED FROM CLAIMING OTHERWISE BY EQUITABLE ESTOPPEL, HIS SETTLEMENT AND RELEASE AND 1640(c)** _____ **- 8 -**

      1.  THE REPRESENTATION OF FACT WAS MADE NUMEROUS TIMES_- 12 -

      2.  MOON KNEW HE WAS REPRESENTING THAT THE LOAN WAS NOT A CONSUMER LOAN _____ - 12 -

      3.  MILESTONE DID NOT KNOW MOON'S TRUE INTENTIONS AND WAS NOT REQUIRED TO INVESTIGATE OR CHALLENGE MOON'S WRITTEN REPRESENTATIONS _____ - 13 -

      4.  MOON INTENDED FOR MILESTONE TO ACT ON HIS REPRESENTATIONS TO FUND THE LOAN _____ - 14 -

      5.  MILESTONE WAS INDUCED TO ACT ON THE REPRESENTATIONS AND DID SO BY FUNDING THE MOON LOAN _____ - 14 -

      6.  MILESTONE IS NOT LIABLE BASED ON ANY UNINTENTIONAL BONA FIDE ERROR_____ - 14 -

      7.  MOON'S THIRD CAUSE OF ACTION FOR RESPA IS BARRED AS IT ONLY APPLIES TO CONSUMER LOANS AND AS A QUALIFIED WRITTEN REQUEST WAS NOT MADE _____ - 16 -

   **D.  MILESTONE DID NOT BREACH A CONTRACT WITH MOON** _____ **- 18 -**

   **E.  MOON'S INTENTIONAL INTERFERENCE CLAIM IS SUBJECT TO PARTIAL SUMMARY ADJUDICATION AS HE HAS NOT SUFFERED ANY**

**DAMAGES** _____ **- 19 -**

**IV. CONCLUSION** _____ **- 20 -**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**CASES**

*Caballero v. Premier Care Simi Valley, LLC* (2021) 69 Cal. App. 5th 512 .................... - 11 -

*Golden Gate Way, LLC v. Enercon Services, Inc.*, 572 F. Supp. 3d 797 (N.D. Cal. 2021)... - 11 -

*Goldwater Bank, N.A. v. Kulikowski*, 2022 WL 298068 (D. Mass 2022) ...................... - 17 -

*Hutchings v. Beneficial Finance Co. of Oregon*, 646 F.2d 389 (9th Cir. 1981) ............. - 16 -

*In re Gonzalez*, 620 B.R. 296 (Bankr. C.D. Cal. 2019) ................................................ - 13 -

*Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal. 4t 1134 ........................................ - 21 -

*Madden v. Kaiser Found. Hosps.*, 17 Cal.3d 699, 710, 131 Cal.Rptr. 882, 552 P.2d 1178 (1976) ................................................................................................................... - 11 -

*McLaurin v. Russell Sigler, Inc.*, 155 F. Supp. 3d 1042 (C.D. Cal. 2016) .................... - 12 -

*Ong v. Bank of America, N.A.*, 2023 WL 2530869 (C.D. Cal. 2023) ............................. - 11 -

*Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163 [21 Cal. Rptr. 2d 245] ........................................................................................................ - 10 -

*Richman v. Hartley* (2014) 224 Cal. App. 4th 1182 ...................................................... - 19 -

*Simmons v. Ghaderi* (2008), 44 Cal. 4th 570 ............................................................... - 13 -

*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal. App. 4th 1230 .. - 19 -

*Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 49 Cal.Rptr.2d 793 ...................................................................................................... - 21 -

**STATUTES**

12 U.S.C. §2602 .......................................................................................................... - 16 -

12 U.S.C. §2605 .......................................................................................................... - 16 -

15 U.S.C. § 1603 ........................................................................................................... - 9 -

15 U.S.C. § 1640(c) ...................................................................................................... - 15 -

15 U.S.C. §1602 ..................................................................................................... - 9 -, - 16 -

Civil Code §2943 ................................................................................................... - 7 -, - 8 -

Evidence Code §622 .................................................................................................... - 11 -

Federal Rule of Evidence 302 ........................................................................ - 11 -

Financial Code §22502 ............................................................................... - 11 -

of 15 U.S.C. §1639g .......................................................................... - 9 -, - 12 -

**TREATISES**

1 *Witkin, Summary of Cal. Law* (11th ed. 2021) Contracts, § 118, pp. 159–160. .......... - 10 -

**REGULATIONS**

12 C.F.R. § 1024.36 .................................................................................. - 16 -

4861-0663-7803, v. 1

vi

MOTION FOR SUMMARY JUDGMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Plaintiff, Mark E. Moon ("Moon"), filed this action claiming that he suffered damages by not receiving a timely payoff demand from Milestone Financial, LLC ("Milestone") during his bankruptcy case. This was after the Court's May 26, 2022, judgment that liquidated his debt to Milestone and declared exactly how much he owed including daily interest thereafter. (Appendix of Exhibits ("AOE") #20). He claims this led to him refinancing the Milestone loan secured by his property at 11 Mandalay Court, Redwood City, CA (the "Property"), at a higher interest rate than he otherwise could have done.

In fact, Moon never applied for a refinance loan. Lori Moon, who is no longer a party to this case, was the sole borrower on the refinance application. After she was unable to qualify for a loan at United Wholesale Mortgage LLC ("UWM") in 2022, she was approved for a loan with Kind Lending, LLC ("Kind Lending") in April 2023.

Moon is a highly educated pharmacist who earned his Doctor in Pharmacy aka Pharm D. at the University of California, San Francisco (Mark Moon Depo. ("MMD") P. 8:1-25 – 11:1-10). Moon was also a licensed securities broker having his Series 3, 7 and 9/10 supervisor licenses. (MMD P. 18:23-25, 19:1-20). (AOE 14).

Moon admits in his discovery responses that Milestone provided payoff statements, through Bernard Kornberg ("Kornberg"), on June 16, 2022, November 28, 2022, January 3, 2023, February 6, 2023 and March 24, 2023. (Response to SI 10 – AOE 12-13; see also AOE 1-6). The Second Amended Complaint ("SAC") does not identify any causal effect to delineate how any of the payoff statements caused any actual lender to refuse to fund any loan based on a lack of timeliness or specificity of amount.

In discovery responses, Moon has not identified any actual lender that offered him an unconditional approved loan at a lower interest rate than the rate Lori Moon obtained. Moon further failed to identify any facts to connect any Milestone response to a request for a payoff demand statement with the loss of any approved loan at a lower rate.

Further, Moon's expert Robert Schuman testified at his deposition that the loan Lori Moon sought from UWM was not denied for lack of a payoff demand as follows:

**"Q Well, let's -- okay. In your view was the UWM mortgage denied, because a payoff demand was not provided?**
**A No."** Schuman Deposition Page 57:4-7 (AOE 21).

The Bernard Kornberg declaration further confirms that he never received any communication from anyone claiming that any urgency was required to fund any approved loan. Further, there was never a claim that when a payoff demand was provided that it was miscalculated such that any change would have enabled either of the Moons to obtain any loan, other than the actual loan that Lori Moon obtained from Kind Lending, after this Court authorized a loan.

At all times the Moon judgment was known to everyone and the amount owed was known by everyone. Milestone did not cause the loss of any loan. Milestone requested documents from Moon and he produced documents bate stamped from 1-570. The production does not contain any documents reflecting any damages based on an alleged untimely payoff demand. It also does not include any loan denial from UWM based on an untimely payoff demand. Further, the production does not include a document reflecting any lender provided an unqualified and/or unconditional loan approval at 5.9% interest during the relevant time period.

While Milestone responded to numerous requests for payoff demands in addition to Moon having the judgment where the Court liquidated the debt, there are no actual damages suffered by Moon based on any untimely payoff demand under Civil Code §2943. As to the claim under 15 U.S.C. 1639g and the RESPA claim, those statutes only apply to consumer loans and the Milestone loan was represented by Mark and Lori Moon, on numerous documents to **not** be a consumer loan. Given Moon's education and sophistication, the Court should find he is estopped to claim this was a consumer loan and that either 15 U.S.C. 1639g or RESPA apply to the Milestone loan.

Further, Moon waived the claim that the Milestone loan was a consumer loan in the

settlement agreement, as this Court has found on prior occasions and in its ruling on Moon's motion for partial summary adjudication. (AOE 18). Milestone did not breach any contract with Moon as the only claim is that the payoff demands were not timely and this did not lead to any damages which are an element of a breach of contract claim.

Finally, the intentional interference claim is barred as it does not apply to loan applications by a non-party, Lori Moon, to a third party. The first element of that cause of action requires that the relationship be between the plaintiff and a third party, which is absent here. Second, damages are also a requirement for that cause of action and there are no damages, as Lori Moon's UWM loan was not lost based on Milestone's conduct.

## II. PERTINENT FACTS

On June 23, 2034, Moon and Lori H. Moon signed a note in favor of Milestone Financial, LLC for $795,000.00 at 11.3% interest (the "Milestone Loan"). (Stuart Declaration ("SD") ¶2). The Milestone Loan was secured by a deed of trust against the Property. The Milestone Loan matured on July 31, 2017. (SD ¶2).

The Moons failed to make the monthly payments and Milestone put the loan in default. (SD ¶3). At the request of the Moons, Milestone entered into a Settlement Agreement, which amongst other things, extended the maturity date to July 31, 2019. (SD ¶3).

The Moons fail to repay the balance of loan at the maturity date. (SD ¶4). A notice of default was recorded in September of 2019, starting the foreclosure process. (SD ¶2). This resulted in Mark Moon filing a lawsuit in Superior Court, but after his injunction was denied he filed this bankruptcy case and removed the litigation to this Court, which resulted in the Judgment. (AOE 20). While the Judgment reduced the interest owed on the Milestone Loan, it did not modify the maturity date. (AOE 20). Thus, at all times the loan was past due and there was no monthly payment due, rather the entire balance was due.

In mid-2022, Lori Moon, who is not in bankruptcy, hired Robert Schulman of Network Financial Group ("Network Financial") to act as her loan broker. Schuman Deposition Page 53:1-11 (AOE 21). Network Financial submitted a loan application on

her behalf to UWM. *Id*. On August 23, 2023, UWM provided a conditional approval to Lori Moon. (Schuman Depo Page 64:13-15 (AOE 21). Moon's SAC alleges that the loan would have been at 5.9%. (SAC ¶31). However, Lori Moon never met the conditions and the loan never closed. (Schuman Depo Page 69:19-25) (AOE 21).

In April 2023, Lori Moon obtained a loan from Kind Lending at 7.625% to refinance the Milestone loan. (SAC ¶32).

## III. ARGUMENT

**A. THE UNDISPUTED FACTS SHOW THAT THE MOONS WERE NOT ELIGIBLE FOR THE 2022 REFINANCE LOAN WITH UWM, AND THUS DID NOT SUFFER ACTUAL DAMAGES**

In his operative SAC Moon has asserted five claims for relief: Violation of Civil Code §2943(c), Violation of 15 U.S.C. §1639g, Violation of RESPA, Breach of Contract and Intentional Interference with Contractual Relations. The actual damages asserted for each of these causes of action are the same: that Milestone's failure to respond to various demands for payoff and other statements caused Lori Moon to be denied the UWM loan in 2022. She asserts damages as the difference for 30 years in the interest rate of the UWM loan at 5.9% and the 7.625% loan she ultimately received from Kind Lending. (SAC ¶ 32).[1] The undisputed facts show that, based on UWM's underwriting standards, Lori Moon was not eligible for a loan with UWM in 2022.

Lori Moon did not directly apply for a loan with UWM, but applied through her loan broker, Robert Schulman of Network Financial. (Schuman Depo Page 53:1-11) (AOE 21). UWM, after receipt of the application, responded with an August 23, 2023 conditional approval with Loan Approval Conditions. This was the last conditional approval provided to Network Financial by UWM. (Schuman Depo Page 64:13-15 (AOE 21). A conditional approval provides the conditions *necessary* to close the loan, including

---

[1] He ignores present value in his damages claim and also ignores the fact that homes in California are generally held for substantially less than 30 years, but that is not at issue in this motion.

the conditions imposed by any government sponsored entity such as Fannie Mae, Freddie Mac, or the VHA. (Schuman Depo Page 26:3-10) (AOE 21).

This conditional approval included condition 3002, which required the following:

> The mortgage on the subject property is not reporting on credit. Verify monthly payment with 1) A VOM. 2) Original Note, OR 3) Current mortgage statement. **Provide evidence that all payments in the past 12 months were timely and made by the borrower.** If the mortgage was a cash-out and taken out within 30 days of the new note date, this transaction cannot close until 30 days have passed. ** 8/10 need payments covering July 2021 -July 2022. will need actual statements confirming monthly obligation in lieu of spreadsheet provided. The spreadsheet cannot be tied to the mortgage at all. need actual statement **8/23/22 Due to need the mortgage statements. PENDING PAYOFF INFORMATION

(AOE 21, attached as Exhibit 3). (Emphasis added).

Pursuant to Schuman, the reason the loan was denied was the Milestone did not provide a VOM. (Schuman Depo Page 69:19-25) (AOE 21). However, he stated that a VOM was not actually necessary so long as Milestone had provided confirmation that "12 months of payments were made." (Schuman Depo Page 73:6-9) (AOE 21). Schuman further confirmed that, if the lender stated that the prior 12 months of payment were not timely made, the loan would have been denied.

> Q: So if Milestone had provided a verification of mortgage saying the borrower is in default and failed to make payments as agreed, the loan would have been denied?

> A: Correct.

(Schuman Deposition Page 74:3-6) (AOE 21).

Based on Schuman's testimony, Lori Moon **was never eligible** for a loan with UWM. The Milestone loan fully matured on July 31, 2017. (AOE 11). Subsequent to the maturity date, Milestone never extended the deadline for the Moons to make payments, or otherwise provided an additional forbearance period. (SD ¶5). Accordingly, the Milestone Loan was in default and had been since at least August 1, 2018. (SD ¶5). Therefore, Milestone could never have provided any truthful statement that the Moons had made the last twelve contractual payments on a timely basis. Thus, there was no way for Lori Moon

to close condition 3002 for UWM.  She simply was not eligible for a loan under UWM's program.

Milestone, to confirm the accuracy of Mr. Schuman's statements, has retained its own expert.  Richard Wang is a principal and founder of Veridian Mortgage, LLC.  Mr. Wang has been brokering wholesale residential loans since 1993 and has closed an estimate 300+ loans with UWM.  As set forth in his accompanying declaration, he reviewed the relevant documents and conditional approval provided by UWM to Lori Moon.  His conclusion is as follows:

> 17.  It is my opinion, based on my professional expertise, that there was no possibility that UWM would approve this loan as payments had not been timely made within the prior 12 months.
>
> 18.  Fannie Mae explicitly allows 0 x 60-day lates in the most recent 12 months. FHA program guidelines allow a variation of no more than 2 x 30-day and 1 x 90 day lates. VA program guidelines allow 1 x 30 day late.
>
> 19.  Per the Loan Estimate, this was a conventional loan (i.e. to be governed by the Freddie Mac and Fannie Mae standards), so could not have been approved with even 1 x 60 day late.
>
> 20.  In this case, the entire loan had matured in 2017, and thus payment was overdue by well over 60 days.  Further, given the history of delinquency, there was no chance of an exception.

(Wang Decl. ¶¶ 17-20).

Lori Moon did not apply with any other lenders until the Kind Lending application in 2023.  (Schuman Depo Page 30:18-23) (AOE 21).  Kind Lending was a newer company and was willing to make an exception that UWM would not.  (Schuman Depo Page 37:2-18; 39:18-22).

Accordingly, the undisputed facts show that, even if Mark Moon's allegations were correct and Milestone had failed to provide the legally required documents, it would not matter.  Lori Moon would have been denied the loan with UWM, the sole lender she applied to in 2022, for failure to timely make payments on the Milestone Loan.

The Court should enter partial summary judgment that Moon did not suffer actual

damages.

**B.    MOON'S FIRST CAUSE OF ACTION FOR VIOLATION OF CIVIL CODE §2943(c) FAILS AS MILESTONE RESPONDED TO THE SOLE PAYOFF DEMAND MADE**

Moon's first cause of action is for violation of Civil Code section 2943(c).  Under this section, a lender must "on the written demand of an entitled person . . . prepare and deliver a payoff demand statement to the person demanding it within 21 days of the receipt of the demand Civil Code §2943(c).  A violation of Civil Code §2943(c) for failure to timely provide a payoff statement permits a plaintiff to recover all damages which plaintiff may sustain by reason of the refusal and $300, but only once in a six month period, either before or after the alleged failure to timely comply.  Civil Code §2943(e)(4).

Moon's SAC alleges that Milestone failed to respond to payoff demands in June of 2022 through August of 2022.  (SAC ¶¶35-36).  Milestone is aware of a sole request for a payoff demand during June through August of 2022.  On May 26, 2022, a request for payoff demand from Michelle Hider at Old Republic Title was made to Harris Cohen, counsel for Milestone.  (AOE 24).  Milestone responded to this payoff demand 21 days after the demand on June 16, 2022.  (AOE 1).  This Court has already found that "the June 16, 2022 email and first-class mail letter from Milestone's counsel, Bernard Kornberg, to Michelle Hider, Old Republic Title, satisfied the requirements of California Civil Code Section 2943."  Order Denying Motion for Partial Summary Judgment (AOE 18).

Milestone is aware that Moon alleges that a July 15, 2022 request for a payoff demand was made by Old Republic Title Company ("ORTC") on Milestone by email to kgray@milestonefinancial.net. (Ex. A to SAC).[2]  Milestone never received this request as Kristy Gray ceased her employment at Milestone in 2018.  (SD ¶6).  As of 2022, her email address was not monitored as she had not worked for Milestone for 4 years. *Id*.

To be liable under Civil Code section 2943(c), "[a] beneficiary, or . . . shall, on the

_____

[2] Moon has never been provided competent evidence of this assertion, and reserves all rights on reply to object to any such evidence.

4861-0663-7003 v. 1

Case: 22-03106    Doc# 46    Filed: 03/27/24    Entered: 03/27/24 16:42:29    Page 13 of 27

written demand . . . prepare and *deliver* a payoff demand statement to the person demanding it within 21 days of the receipt of the demand." (Civ. Code § 2943(c)) (emphasis added).

"Delivery" in turn, is specifically defined as

> depositing or causing to be deposited in the United States mail an envelope with postage prepaid, containing a copy of the document to be delivered, addressed to the person whose name and address is set forth in the demand therefor. The document may also be transmitted by facsimile machine to the person whose name and address is set forth in the demand therefor.

(Civ. Code § 2943(a)(3)).

No evidence is provided of delivery by mail or facsimile as required by the statute. The only alleged delivery was by email to a dead email address. Thus, delivery did not occur in a manner giving rise to a claim under Civil Code 2943.

It should also be noted that Moon has admitted in his discovery responses that in addition to the June 16, 2022, response, Kornberg also sent similar responses to payoff demands on "November 28, 2022, January 3, 2023, February 6, 2023 and March 24, 2023." (Response to SI 10) (AOE 12-13). Therefore, Lori Moon had numerous opportunities to refinance the debt and was unable to do so until the end of April 2023. Based on this undisputed evidence, the Court should find as a matter of law that Milestone did not cause any "loss of loan" damages to Lori Moon for not getting a loan, and not to Mark Moon, as he never qualified for or obtained any loan.

Based on the foregoing, the Court should grant the motion for partial summary adjudication.

**C.   MOON'S SECOND CAUSE OF ACTION FOR VIOLATION OF 15 U.S.C. §1639g CLAIM IS BARRED AS THE LOAN IS NOT A CONSUMER LOAN AND PLAINTIFF IS BARRED FROM CLAIMING OTHERWISE BY EQUITABLE ESTOPPEL, HIS SETTLEMENT AND RELEASE AND 1640(c)**

Moon's second cause of action alleges a violation of 15 U.S.C. §1639g of TILA. Under that section, "[a] creditor or servicer of a home loan shall send an accurate payoff

balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." This section only applies to loans where the borrower is "a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. §1602(i); see also 15 U.S.C. § 1603 (exemption "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes").

To obtain the loan, Moon executed the loan documents that included numerous unconditional written representations by the Moons to Milestone that the loan was not a consumer loan.

Milestone only makes non-consumer loans. Milestone represents this fact to the public at large on its website: "Milestone Financial LLC offers flexible, n*on-consumer loan programs...*"[3] Moon specifically represented to Milestone on numerous documents that the loan was a business or commercial loan as follows:

1. The cover letter and Conditional Loan Quote ("CLQ") both confirm that Milestone does not make consumer loans. The CLQ expressly states the loan purpose is "investment," not a consumer purpose. **The CLQ is initialed and signed by Mark Moon and Lori Moon**.

2. The notarized Affidavit Regarding Loan Purpose ("ARLP") was signed by Mark Moon and Lori Moon. The ARLP expressly states that the loan is not a consumer loan and is for business, commercial or investment purposes. (See ¶2). Further it states,

> "Borrower understands that **Broker and lender shall each rely upon and accept as true the representations made in this Affidavit and each such representation shall be conclusively presumed to have been relied on by Broker and lender**, regardless of any investigation made or information possessed by Broker and/or lender. Each warranty, representation and agreement contained in this Affidavit is true and correct on the date hereof and shall be automatically deemed repeated and reaffirmed on the closing and funding of the secured loan." (Emphasis added).

---

[3] https://www.milestonefinancial.net/

Case 22-03106 Doc# 46 Filed: 03/27/24 Entered: 03/27/24 16:42:29 Page 15 of 27

3.      The Lender-Broker-Borrower and Disclosure of Agency Relationships agreement (the "LBB") was signed by Mark Moon and Lori Moon.   It provides, "Borrower agrees to use the Loan proceeds strictly for business, commercial or investment purposes."

4.      The Promissory Note was signed by Mark Moon and Lori Moon.  It provides in paragraph 19 that,

> "Borrower represents and warrants that the proceeds of the loan evidenced by this Note (a) **are strictly for business, commercial, or investment purposes ONLY**, and (b) will not be used primarily for agricultural, fanning personal, family, household or other consumer purposes. Maker acknowledges that this Note was negotiated and arranged by a licensed California real estate broker." (Emphasis added).

Therefore, Moon has represented in not one or two documents, but four (4) separate SIGNED documents, including the notarized Affidavit Regarding Loan Purpose, that the loan was not a consumer loan.  Moon is bound by these documents and recitals whether he chose to read them or not.

" ' [O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read, he should have it read or explained to him.' ' (*Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163 [21 Cal. Rptr. 2d 245] (*Randas*); see 1 *Witkin, Summary of Cal. Law* (11th ed. 2021) Contracts, § 118, pp. 159–160.)." *Caballero v. Premier Care Simi Valley, LLC* (2021) 69 Cal. App. 5th 512, 518. Not only is Moon deemed to have read and understood the agreements he signed, but he is also bound by them under Evidence Code §622 and FRE 302.

" '[O]ne who assents to a contract is' generally 'bound by its provisions and cannot complain of unfamiliarity with [its] language.' *Madden v. Kaiser Found. Hosps.*, 17 Cal.3d 699, 710, 131 Cal.Rptr. 882, 552 P.2d 1178 (1976). Moreover, California evidence law also provides that "facts recited in a written instrument are conclusively presumed to be true as between the parties thereto." Cal. Evid. Code § 622 (emphasis added); see also Fed.

R. Evid. 302 ("In a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision").  *Golden Gate Way, LLC v. Enercon Services, Inc.*, 572 F. Supp. 3d 797, 820 (N.D. Cal. 2021).[4]  Thus, the representations as to the character of the loan are conclusively presumed.

Further, loans over $5,000 not for consumer purposes are "Commercial loans." Financial Code §22502 (para. 1) (§22001(c)).

> **"For purposes of determining whether a loan is a commercial loan, the lender may rely on any written statement of intended purposes signed by the borrower. The statement may be a separate statement signed by the borrower or may be contained in a loan application or other document signed by the borrower. The lender shall not be required to ascertain that the proceeds of the loan are used in accordance with the statement of intended purposes."**

(Emphasis added).

Clearly, the California legislature also mandated that borrowers are strictly held to their loan purpose representations.

For all these reasons, Milestone was not required to challenge or investigate the Moons' true intentions and could rely on their numerous signed written representations which it did.  (SD ¶¶ 19-20).

This Court has already determined that Moons waived their right to claim the loan was a consumer loan.  In the Court's ruling on Moon's partial summary judgment motion, the Court stated,

---

[4] *See also Ong v. Bank of America, N.A.*, 2023 WL 2530869, *3 (C.D. Cal. 2023) ("California law provides that '[t]he facts recited in a written instrument are conclusively presumed to be true as between the parties thereto ....' Cal. Evid. Code § 622; *see also McLaurin v. Russell Sigler, Inc.*, 155 F. Supp. 3d 1042, 1046 (C.D. Cal. 2016) ('The Ninth Circuit and California courts confirm that Plaintiff's signature on the Acknowledgment [of receipt, providing that Plaintiff understood Defendant's Arbitration Policy and that she received a copy,] is sufficient to show Plaintiff's agreement to arbitrate.'). Here, Plaintiffs' signature on the Agreements, which specifically reference the Rules and confirm Plaintiffs' consent and receipt, show the parties' mutual intent that the Rules be incorporated to provide terms governing the contracts.' ")

> "As a preliminary matter, the court will not deal with the oft-repeated argument by Milestone Financial, LLC ('Milestone') that it did not make loans to consumer buyers and that it was misled by Mr. Moon and Ms. Lori Moon regarding the purpose of the loan. **That issue was disposed of by this court previously when it indicated that the issue had been waived as part of the restructuring transaction that occurred years ago**. "

Court's Ruling at page 2:1-7 (Emphasis added) (AOE 18). Therefore, the transactions is not governed by 15 U.S.C. §1639g.

Even if Moons' contractual affirmations regarding the character of the loan are not binding by themselves, the Moons are estopped from now claiming the loan is consumer in character.

> "Under California law, five elements must be present for the doctrine of equitable estoppel to apply: (a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." *In re Gonzalez*, 620 B.R. 296, 313 (Bankr. C.D. Cal. 2019) *citing Simmons v. Ghaderi* (2008), 44 Cal. 4th 570, 584.

### 1. THE REPRESENTATION OF FACT WAS MADE NUMEROUS TIMES

Here, Moons made the same written representations that this was not a consumer loan at least four (4) separate times in four (4) separate signed and/or signed and notarized documents. This constitutes a representation of a material fact. *Simmons v. Ghaderi* (2008), 44 Cal. 4th 570, 584. In fact, Moons doubled down on that representation when they affirmed it in the Settlement Agreement, Indemnity and First Amendment to Promissory Note Secured by Deed of Trust that they signed after the loan was funded and they desired more time to pay it off.

### 2. MOON KNEW HE WAS REPRESENTING THAT THE LOAN WAS NOT A CONSUMER LOAN

Moon is now claiming the loan was a consumer loan[5], however, he willingly and continuous represented otherwise and is deemed as a matter of law to have known what he was signing. Having received a Doctorate of Pharmacy, and having passed the Securities Series 3, 7, and 9/10 New York Stock Exchange supervisor's license examination in English, (AOE 14), he cannot claim a lack of understanding of English. Further, even if he claimed otherwise, he is bound by what he signed as detailed and expressly stated in the cases cited above.

Moon also sought to borrow funds from another lender claiming the loan was to fund the opening of a veterinary pharmacy, which he then asserted was a false representation by him. (Cohen Dec. ¶3, AOE 14 (pages 29:2-23, 46:9-25 – 47:1-12 Ex. 12). His testimony was that he was willing to sign the statement of intention for the business loan when he knew it was false. He thus is willing to sign anything to achieve his loan objectives, and damn the consequences. This type of conduct should not be condoned and judicially approved, hence the need for enforcement by estoppel.

### 3. MILESTONE DID NOT KNOW MOON'S TRUE INTENTIONS AND WAS NOT REQUIRED TO INVESTIGATE OR CHALLENGE MOON'S WRITTEN REPRESENTATIONS

Milestone was ignorant of the actual facts and relied on Moon's numerous representations. Moon is now claiming his loan was a consumer loan (or he could not assert a §1638g or RESPA claim). Milestone may be actually or permissibly ignorant of that claim (that it was a consumer loan) as Moon represented exactly the opposite set of facts in his numerous signed loan documents. Thus, Milestone was at a minimum permissibly ignorant based on its reliance on Moon's numerous signed documents.

Moon **does not claim** that he disavowed any of his written representations at any time prior to funding of the loan, as he knew from the loan quote that Milestone would not fund the loan if it was a consumer loan. Moon chose to conclusively convince Milestone

---

[5] This is necessarily implied in his asserting causes of action under statutes solely applicable to consumer loans.

of his intention to seek a non-consumer loan. This was true even in the face of the bold and capital letter warning on the Affidavit just above his name that recites:

> **"BORROWER IS AWARE OF THE PENALTIES OF PERJURY, WHICH INCLUDE THE EXECUTION OF A FALSE AFFIDAVIT, PURSUANT TO 18 U.S.C. SECTION 1621, AND THAT THE EXECUTION OF A FALSE AFFIDAVIT IS A CRIMINAL ACT PURSUANT TO APPLICABLE LAW."**

Faced with Moon being informed it was a crime to lie to Milestone, Moon affirmatively represented that the loan Moon was seeking was not a consumer loan and Milestone was justified in relying on the written representation.

### 4. MOON INTENDED FOR MILESTONE TO ACT ON HIS REPRESENTATIONS TO FUND THE LOAN

As the representations are contained in the loan documents and the pre-funding package, Moon must have known Milestone would rely on his representations to decide to fund the loan. As stated above, Milestone clearly states (and advertises) that it does not fund consumer loans, and had the Moons not made these representations, Milestone would not have funded the loan. That is the sole purpose for the loan package, namely for the lender to obtain the information and representations from the borrower to allow it to rely on them and fund the loan based on those representations.

### 5. MILESTONE WAS INDUCED TO ACT ON THE REPRESENTATIONS AND DID SO BY FUNDING THE MOON LOAN

Milestone was induced by the numerous Moon representations to fund the loan and in fact did fund the loan.

Based on the foregoing, the Court should find that Moon is estopped to claim the loan was a consumer loan and should grant the motion as to the 15 U.S.C. §1639g claim which did not apply to this loan.

### 6. MILESTONE IS NOT LIABLE BASED ON ANY UNINTENTIONAL BONA FIDE ERROR

Alternatively, Milestone is not liable because it relied upon Moons' representations that this was not a consumer loan. Section 1640(c) provides:

> "A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programing, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error."

15 U.S.C. § 1640(c)

Any liability based on the loan being a consumer loan was unintentional as Moons represented in numerous documents that the loan was a non-consumer loan. Thus if Milestone relied upon the 21 day time period for non-consumer loans, it was justified under the facts of this case. Milestone had procedures in place to insure that borrowers were not taking out consumer loans, including requiring numerous representations to the contrary so that borrowers were unequivocally confirming that the loan was not subject to 15 U.S.C. §1639g et seq.

To the extent that the Court finds the loan was a consumer loan, and that Moons misrepresented their intentions and the character of the loan, the Court should summarily adjudicate the cause of action in Milestone's favor under §1640(c) as it had procedures reasonably adapted to avoid errors on this issue and they were followed.[6] Those procedures are detailed in Zoë Hamilton's declaration and include the loan documentation administration and confirmation of the license of the loan broker and execution of the non-consumer loan borrower representations prior to funding.

---

[6] *See Hutchings v. Beneficial Finance Co. of Oregon*, 646 F.2d 389, 391 (9th Cir. 1981) (system of reviewing contracts with trained employee to double check found to satisfy requirements of 15 U.S.C. §1640(c)).

### 7. MOON'S THIRD CAUSE OF ACTION FOR RESPA IS BARRED AS IT ONLY APPLIES TO CONSUMER LOANS AND AS A QUALIFIED WRITTEN REQUEST WAS NOT MADE

In his third claim for relief, Moon claims a violation of RESPA for Milestone allegedly failing to provide a timely response to information requests from a mortgage broker based on 12 U.S.C. §2605(k).

Like TILA, RESPA does not apply to the Milestone loan as it was a business loan. 12 U.S.C. §2605(k)(1) is limited to servicers of federally related mortgages and states, "(1) In general, A servicer of a federally related mortgage shall not – ." Federally related mortgage loans are defined in 12 U.S.C. §2602(1) and do not include private lenders for business, commercial or investment purposes. Even the definition of "creditor" in §2602(1)(B)(iv) does not include private lenders on these types of loans as specified in 15 U.S.C. §1602(g) and is limited to consumer credit transactions. *See also Goldwater Bank, N.A. v. Kulikowski*, 2022 WL 298068, *3 (D. Mass 2022). Thus, RESPA does not apply to the Milestone loan as it was not a consumer loan for all the reasons set forth above which are incorporated herein by reference.

Further, even if Milestone had a duty to respond to requests for information, the document at issue did not qualify as one. "[A] qualified written request shall be a written correspondence . . . that . . . provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B); see also 12 C.F.R. § 1024.36(a). The Request for Information was sent on July 15, 2022 by Robert Schuman to Joyce Lau, counsel for Milestone. In it, Robert Schuman sent out a prefilled form and requested Milestone to complete any blanks and sign it. (Schuman Depo Ex. 17) (AOE 21). The form, as prefilled, stated that the Milestone loan was current, that there were no late payments, and that a monthly payment of $6,647.50 with the next payment date of 8/1/2022. Schuman Depo Ex. 17) (AOE 21).

The purpose of prefilling these numbers was to trick UWM into approving the loan by creating a fake history. After the Judgment was entered on May 25, 2022, the Moons made payments of six payments $6,647.50 on June 6, July 13, October 3, November 23,

December 30, and December 30 of 2022. (SD ¶7). Milestone accepted these payments, as was its right, but was unaware as to what the intent was behind the payments was. (SD ¶8). Milestone did not direct the Moons to make payments and no payment plan or other forbearance was in place. (SD ¶9).

Milestone learned the reason for these payments through discovery. As stated in Cathy Moran's email to Robert Schuman, in the email Schuman produced for his deposition,

> There is no 'required payment' since the loan was fully matured. I picked a number close to the monthly payments on the loan before it matured, and we paid that as 'adequate protection' in the bankruptcy case.

(AOE 22).

Further, Schuman admitted in emails to Moon's attorneys that if the truth was told, the loan with UWM would be denied.

> Here's a bigger problem, their payoff points out payments made since June. The lender will require a copy of the payoff. When they see this, the first things they're going to ask is "what happened to the August, September, and December payments? If we say they were not required, they will ask for documentation from the lender acknowledging that. **We do NOT want to go down that road if at all possible.**

(AOE 23) (Emphasis added).

The Milestone loan was not current, there were numerous late payments pre-maturity that caused defaults, and it had matured three years prior. This information was material, as Schuman testified that if Milestone had modified the form to indicate that the loan was delinquent, it would have resulted in a hard denial. (Schuman Depo Pages 111-112) (AOE 21). Demanding that Milestone sign a materially untrue form in order to create the appearance that the Moons were current for the previous 12 months is not a "qualified written request," but a demand that Milestone participate in loan fraud.

Finally, as set forth above, Moon has no actual damages. RESPA does allow for statutory damages of up to $2,000 for a violation of 2605, but only "in the case of a pattern or practice of noncompliance with the requirements of this section." 12 U.S.C. § 2605(f). Milestone, as its practice is to only make commercial loans, does not have any history of

having to respond to QWRs (and as set forth above, does not in this case either).  (SD ¶22).

Milestone has never been sanctioned by any regulator, or in any private action, for a

violation of this section previously.  (SD ¶23).   Thus, no pattern or practice of non-

compliance exists that would allow for sanctions.  This is particularly true where the loan

documents confirm that the RESPA does not apply to the loan.

The undisputed material facts show that Moon's RESPA cause of action fails.

## D.    MILESTONE DID NOT BREACH A CONTRACT WITH MOON

"To prevail on a cause of action for breach of contract, the plaintiff must prove (1)

the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance,

(3) the defendant's breach, and (4) the resulting damage to the plaintiff."  *Richman v.

Hartley* (2014) 224 Cal. App. 4th 1182, 1186.  "A breach of the implied covenant of good

faith is a breach of the contract."  *Thrifty Payless, Inc. v. The Americana at Brand, LLC*

(2013) 218 Cal. App. 4th 1230, 1244.

In both cases, the plaintiff must prove damages.  As set forth in section II, above,

the undisputed facts show that the acts of Milestone did not cause Moon any damages as

Lori Moon was never eligible for a loan with UWM.  This cause of action fails on this

basis alone.

Paragraph 28 of the SAC alleges "Defendant's refusal to supply the payoff

information necessary to satisfy Plaintiff's obligation to Defendant is a breach of the

contract between Plaintiff and Defendant, and a breach of the covenant of good faith and

fair dealing made a part of every contract governed by the laws of the State of California."

As to the contract itself, the note does not provide any specific obligation of the

lender to provide payoff information.[7]  (AOE 10).  The note prepayment provision in

paragraph 22 only applied to prepayments before the maturity date.  The maturity date in

---

[7] However, even if it did, Moon was informed of the amount due to Milestone six (6)
different times, including the judgment, over a ten (10) month span, until Kind Lending
LLC funded a loan in late April 2023.

the note was July 31, 2017.  That was extended in the Settlement Agreement, Indemnity and First Amendment to Promissory Note Secured by Deed of Trust to July 31, 2019. (AOE 11).  Here, Moon was attempting to pay the obligation in 2022 and 2023 **after the judgment in this case**.  Therefore, by its express terms, paragraph 22 of the note does not apply to the issues raised in the SAC.

Moon complains that the amounts to pay off Milestone were not known.  However, by Moon's own admission Milestone supplied that information on June 16, 2022, November 28, 2022, January 3, 2023, February 6, 2023 and March 24, 2023.  Further, the information was at all times known to everyone as it was contained in the Court's judgment.  Moon fails to show any breach of the covenant, nor that he, or anyone else, was unable to refinance due to the acts of Milestone.

Additionally, Moon has claimed that the June 16, 2022, Milestone payoff demand prepared by Kornberg did not include a June payment of $6,647.50.  While that may be true, no damages were suffered.  The payoff demand was $755,656.97.   Moon does not claim that he paid the $755,656.97 and overpaid by $6,647.50.  Moon also does not claim that his lender refused to fund $755,656.97, but would have funded $749,009.47. Therefore, no damages were suffered based on the alleged overstatement of $6,647.50.

**E.    MOON'S INTENTIONAL INTERFERENCE CLAIM IS SUBJECT TO PARTIAL SUMMARY ADJUDICATION AS HE HAS NOT SUFFERED ANY DAMAGES**

Moon's fifth cause of action is incorrectly titled but is actually for intentional interference with prospective economic damages.  The elements of the tort of intentional interference with prospective economic advantage "are usually stated as follows: ' '(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.' [Citations.]' (*Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 521–522, 49 Cal.Rptr.2d 793.)."  *Korea Supply*

*Co. v. Lockheed Martin Corp.* 29 Cal. 4t 1134, 1153.

First, as set forth in section II, above, the undisputed facts show that the acts of Milestone did not cause Moon any damages as Lori Moon was never eligible for a loan with UWM. This cause of action fails on this basis alone.

Moon also cannot satisfy the first element of the claim. There was no economic relationship between Mark Moon and a third party with the probability of future economic benefit to the plaintiff. Lori Moon, a non-party, sought a loan from UWM, not Mark Moon the only plaintiff in this action. Therefore, the claim fails for failure to satisfy the first element. Moon also cannot satisfy the last element of the claim, as Milestone's conduct did not prevent Lori Moon from refinancing.

As Moon cannot prove the first element of the cause of action or that there was any damage, Milestone is entitled to partial summary judgment of this cause of action.

## IV. CONCLUSION

Based on the foregoing, Milestone requests that the Court;

1. Grant partial summary judgment on the first cause of action in the SAC for Violation of Civil Code §2943(c);

2. Grant partial summary judgment on the second cause of action in the SAC for Violation of 15 U.S.C. §1639g;

3. Grant partial summary judgment on the third cause of action in the SAC for Violation of RESPA;

4. Grant partial summary judgment on the fourth cause of action in the SAC for breach of contract;.

5. Grant partial summary judgment on the fifth cause of action in the SAC labeled as intentional interference with contractual relations;

6. Grant partial summary judgment that Moon did not suffer any actual damages as to each cause of action; and

7. Grant summary judgment as to the entire SAC.

4861-0663-7003, v. 1

DATED: March 27, 2024     PRACTUS, LLP


By:       /s/ Bernard J. Kornberg
             BERNARD J. KORNBERG

Attorneys for Milestone Financial, LLC

4861-0663-7003, v. 1

- 21 -
MPA ON MOTION FOR SUMMARY JUDGMENT