HARRIS L. COHEN, ESQ., State Bar # 119600
HARRIS L. COHEN, A PROF. CORP.
5305 Andasol Ave.
Encino, CA 91316
tel (818) 905-5599 / fax (818) 905-5660
Email: hcohen00@aol.com

JOYCE K. LAU (No. 267839)
THE FULLER LAW FIRM, P.C.
60 No. Keeble Ave.
San Jose, CA 95126
Telephone: (408)295-5595
Facsimile: (408) 295-9852
joyce@fullerlawfirm.net

BERNARD J. KORNBERG (State Bar No. 252006)
MILLER NASH, LLP
340 Golden Shore, Ste. 450
Long Beach, CA 90802
Telephone: (562) 247-7622
Email: Bernard.kornberg@millernash.com

Attorneys for Defendant,
Milestone Financial, LLC

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br>MARK E. MOON<br>    Debtor,<br>_____ | ) CASE NO.  20-30711<br>) CHAPTER 11<br>) ADV NO. 22-03106<br>) |
| MARK E. MOON,<br><br>    Plaintiff,<br>v.<br>Milestone Financial, LLC, a California<br>Limited Liability Company<br><br>    Defendant.<br>_____ | ) **MILESTONE FINANCIAL, LLC'S**<br>) **REPLY TO OPPOSITION TO MOTION**<br>) **FOR ATTORNEYS' FEES;**<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT**<br>)<br>) Date:  August 2, 2024<br>) Time: 10:00 a.m.<br>) Dept. remote appearance |

# TABLE OF CONTENTS

| HEADINGS | PAGE |
|---|---|
| I. MILESTONE MAY RECOVER ATTORNEYS' FEES FOR LITIGATING TORT CLAIMS. | 1 |
| II. MILESTONE'S FEES FOR DEFEATING THE 15 U.S.C. §1639g CLAIM ARE INEXTRICABLY INTERTWINED WITH THE FEES FOR THE OTHER CLAIMS AND ARE RECOVERABLE. | 3 |
| III. MILESTONE MAY RECOVER ATTORNEYS' FEES FOR ITS COLLATERAL ESTOPPEL DEFENSE. | 6 |
| IV. MILESTONE MAY RECOVER ATTORNEYS' FEES BASED ON THE LOADSTAR METHOD. | 6 |
| A. THE REASONABLE RATES ARE BASED ON THE LOADSTAR METHOD. | 6 |
| B. THE RATES ARE NOT CIRCUMSCRIBED BY THE GRADUATION DATE OF THE ATTORNEY AS PROPOSED BY MOON AND ARE REASONABLE FOR THE NORTHERN DISTRICT BASED ON PREVAILING RATES. | 7 |
| V. THE TIME FOR THE FIRST SCHUMAN DEPOSITION IS COMPENSABLE. | 9 |
| VI. ALL OF MS. LAU'S TIME IS COMPENSABLE. | 10 |
| VII. ALL OF MR. KORNBERG'S TIME IS COMPENSABLE. | 11 |
| VIII. ALL OF MR. COHEN'S TIME IS COMPENSABLE. | 12 |

# TABLE OF AUTHORITIES

| AUTHORITIES | PAGE |
|---|---|
| **Statutes** | |
| | |
| 15 U.S.C. §1639g | **3, 5, 6, 12** |
| 15 U.S.C. §1640(a)(3). | **4** |
| FRCP 30(d)(1) | **10** |
| Civil Code §2924(c) | **5** |
| **Cases** | |
| | |
| **Federal** | |
| | |
| *Citrus El Dorado, LLC v. Stearns Bank*, 2016 WL 7626583 (C.D. Cal. 2016), | **2, 3** |
| *Dominguez v. City of San Jose*, 2023 WL 2717266, *5 (N.D. Cal. 2023) | **8, 9** |
| *Human Rights Def. Ctr. v. Cnty. of Napa*, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021), | **8** |
| *In re Manoa Finance Co.*, 853 F.2d 687, 691 (9th Cir.1988). | **6** |
| | |
| **State** | |
| | |
| *Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal. App. 4th 608, 625-626. | **5** |
| *Reynolds Metals Co. v. Alperson* (1979) 25 Cal. 3d 124, 129-130 | **5** |
| *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 | **1** |
| *Weber v. Langholz* (1995) 39 Cal. App. 4th 1578, | **4** |

Milestone Financial, LLC ("Milestone") replies to the opposition to its motion for attorneys' fees as follows:

## I.     MILESTONE MAY RECOVER ATTORNEYS' FEES FOR LITIGATING TORT CLAIMS.

Moon argues that Milestone may not recover its fees for defeating his Intentional Interference with Contract claim.  First, he admits that *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608, permits a party to recover attorneys' fees for prevailing on tort claims.  " ' [P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.' (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341, 5 Cal.Rptr.2d 154.)."  He therefore is forced to argue that the contract language is so narrow that it does not include this claim.

The contract language extends to "any claim. Liability, loss, demand, damage, penalty, expense, cost, attorney fee, … or relating in any way to the Note, Deed of Trust or the Property." Settlement Agreement ¶3.  The Note is similarly broad including "Holder in enforcing payment or collection of this Note or the terms of any Loan Document, whether or not suit is filed, including without limitation fees in obtaining legal advice regarding Holder's rights and remedies, and all costs and fees incurred in obtaining relief from any stay or injunction. The parties' deed of trust provides for the recovery of attorneys' fees." Note ¶ 4.

Moon next seeks to divorce this case from the Note and Settlement Agreement. At the same time, his only relationship with Milestone arises from the Note and

Settlement Agreement.  He did not have any other business relationship. The dispute

about what was owed and the payoff demand arises solely from the Note and the

Settlement Agreement.  Moon's sole desire was to have the Deed of Trust reconveyed.

The interference claim related directly to Moon's desire to pay off the Note based on the

Settlement Agreement and Judgment.  If there were no Note and Settlement Agreement,

there would be no claim.  If money was not owed to Milestone there would be no claim.

The claim is that Milestone interfered with Moon paying off the Note based on the

Settlement Agreement, as determined by the judgment.  Thus, the claim arises out of the

Note and Settlement Agreement and desire to have the Deed of Trust reconveyed.

In *Citrus El Dorado, LLC v. Stearns Bank*, 2016 WL 7626583 (C.D. Cal. 2016),

the post-judgment motion for attorneys' fees addressed four claims – breach of contract,

fraud, intentional interference with contract and negligent interference in a business

relationship.  In addressing the same basis as Moon's attempt to avoid liability here, the

Court rejected his argument because:

1. "its tort claims for intentional interference with economic relations and

negligent interference with economic relations—were "completely intertwined" with

these contract claims. *See Gens v. Wachovia Mortgage Corp.*, 10–CV–01073–LHK, 2011

WL 3844083, at *4 (N.D. Cal. Aug. 30, 2011)." *Id.* at *3 [1] ; and

---

[1] "*See, e.g., Do v. First Fin. Sec., Inc.*, No. 214CV07608SVWAJW, 2016 WL 11757926,
at *2 n.2 (C.D. Cal. Jan. 11, 2016) (Awarding fees under Section 1717 for tortious
interference claim because it was "sufficiently intertwined with the interpretation" of the
contract); *Webber v. Inland Empire Invs.*, 74 Cal. App. 4th 884, 895 (1999) (affirming
award of attorney's fees under Section 1717 on claim for "conspiracy to intentionally

2.     "But '[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.' *Reynolds*, 25 Cal. 3d at 129–30, 158 Cal.Rptr. 1, 599 P.2d 83. Specifically, attorney's fees 'need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories.' *Drouin v. Fleetwood Enters.*, 163 Cal. App. 3d 486, 493, 209 Cal.Rptr. 623 (1985); *see also Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 687, 98 Cal.Rptr.2d 263 (2000)." *Id.* at *6

Moon's breach of contract claim incorporated by reference his entire Intentional Interference claim.  (See FAC ¶30 – "Plaintiff incorporates the allegations of each paragraph above.").  Therefore, they are duplicative and intertwined.  Further, they are based on the same facts including the alleged "refusal to supply the information necessary to satisfy Plaintiff's obligation to Defendant" which duplicate the Intentional Interference claim.  (FAC ¶31).  Thus, the Court should find all fees incurred in defeating that Moon claim are recoverable.

## II.     MILESTONE'S FEES FOR DEFEATING THE 15 U.S.C. §1639g CLAIM ARE INEXTRICABLY INTERTWINED WITH THE FEES FOR THE OTHER CLAIMS AND ARE RECOVERABLE.

Moon objects to Milestone separately recovering attorneys' fees for defeating his 15 U.S.C. §1639g claim.  His objection is that the fees are not separately recoverable

---

interfere with a contractual relationship")."  *G.P.P., Inc. v. Guardian Protection Products, Inc.*, 2023 WL 7723234, *3 (E.D. Cal. 2023).

based on 15 U.S.C. §1640(a)(3).  However, the fees are recoverable because the parties

contracted for such recovery so they are recoverable under California law.  Further, they

are inextricably intertwined with recoverable fees on other claims.

Interestingly, the case cited by Moon is on point and provides for the recovery of

such fees.  In *Weber v. Langholz* (1995) 39 Cal. App. 4th 1578,

> "The promissory note and the trust deed signed by plaintiff both provide that
> plaintiff shall indemnify, hold harmless, and reimburse defendants for all expenses
> including court costs and attorney fees incurred in connection with the note, and in
> connection with any action or suit arising out of the note, wherein final judgment
> is entered in favor of defendants, for all costs including attorney fees, which shall
> be deemed costs of the judgment. By the terms of plaintiff's own agreement, the
> court properly awarded contractual attorney fees to defendants under Civil Code
> section 1717." *Id.* at 1585.

The resemblance of that language to the Settlement Agreement ¶3 is striking.

Next the court struck down Moon's argument that the one-way provision of 15 U.S.C.

§1640(a)(3) is the exclusive basis for fees under TILA.  "This is not controlling, because

the award to defendants here is not under the Act but on a different basis, plaintiff's

contractual agreement to pay defendants' attorney fees." [2]  *Id.*  Thus, TILA does not

preempt or otherwise void the contractual fee shifting clauses at issue.

_____

[2] "Plaintiff contends that to award attorney fees under Civil Code section 1717 would
frustrate the protection for the consumer in the federal statute. Essentially, plaintiff argues
that in this situation California Civil Code section 1717 is preempted by the federal Truth
in Lending Act, although she cites no authority supporting that proposition. We find no
federal preemption. . . . If Congress intended to prohibit borrowers from agreeing in a
promissory note to pay the lender's attorney fees in the event of unsuccessful suit under
the Act, it could have done so expressly by prohibiting such a term in a lending
agreement. Congress did not do so. Civil Code section 1717 is a broad law applying to all
contractual agreements containing provisions for attorney fees. A congressional intent to
preempt such a state law is not to be presumed by mere implication but must clearly

Further, Moon's case for failing to provide a timely payoff demand and failing to provide an accurate demand are facts that are included in every cause of action. The Civil Code §2924(c) claim asserted a 21 day deadline. The 15 U.S.C. §1639g claim, which incorporated the §2924(c) claim (See complaint ¶24 and FAC ¶26) asserted a 7 business day deadline. The breach of contract claim in the original complaint and FAC incorporated both the Civil Code §2924(c) claim and the 15 U.S.C. §1639g claim in the breach of contract claim regarding the alleged "refusal to supply the information necessary." (FAC ¶31). Thus, all claims included the same facts and were hopelessly intertwined. "Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." *Reynolds Metals Co. v. Alperson* (1979) 25 Cal. 3d 124, 129-130.[3]

Because the Act does not preempt California law providing freedom of contract, and the claims are inextricably intertwined with the other claims, the fees for defeating the claim are recoverable and need not be apportioned.

---

appear. (*California v. ARC America Corp., supra*, 490 U.S. at pp. 100–101, 109 S.Ct. at pp. 1664–1665.)." *Id.* at 1585-1586.

[3] "Further, 'Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units.' (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687 [98 Cal.Rptr.2d 263]; *see Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493 [209 Cal.Rptr. 623] ['Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories'].)' (*Maxim, supra*, 208 Cal.App.4th at p. 298, 145 Cal.Rptr.3d 406.)." *Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal. App. 4th 608, 625-626.

### III.  MILESTONE MAY RECOVER ATTORNEYS' FEES FOR ITS COLLATERAL ESTOPPEL DEFENSE.

Moon argues that Milestone should be penalized for the efficiency in using prior arguments in this brief.  The opposite is true.  Moon benefitted from Milestone's institutional knowledge of the argument and case law that did not have to be baked from scratch.  Moon has continuously and persistently argued this was a consumer loan and prosecuted it under a consumer loan statute, 15 U.S.C. §1639g.  Moon, as the master of his complaint, was free to not raise an issue that the Court had already decided.   Instead he raised it and Milestone properly responded by asserting all defenses available to it.  He cannot complain about it after having lost again.

Moon has not identified any time entries regarding this argument that were overbilled or unnecessary.  The fact that one argument was used in two briefs does not erase the counsel time to draft and fit the arguments into different briefs.

### IV.  MILESTONE MAY RECOVER ATTORNEYS' FEES BASED ON THE LOADSTAR METHOD.

#### A.  THE REASONABLE RATES ARE BASED ON THE LOADSTAR METHOD.

Moon argues that Milestone is limited to recovering attorneys' fees at the rate charged to Milestone and not using the loadstar that is the method used in the Ninth Circuit.  However, a compensation award based on the loadstar is a presumptively reasonable fee. *In re Manoa Finance Co.*, 853 F.2d 687, 691 (9th Cir.1988).  The Settlement Agreement permits Milestone to recover **all** its attorneys' fees.  Settlement Agreement ¶3 and 18(I).  Milestone cited to the Deed of Trust paragraph 9.28 entitled

Case 2:23-cv-01945-APG-NJK   Document 93   Filed 10/25/24   Entered 10/25/24 16:57   Page 9 of 21

"**Attorneys Fees**" and which includes in the paragraph that

> "For the purpose of this Paragraph 9.28, **"costs and expenses" include all court costs and attorneys' fees**, such as court costs and attorneys' fees incurred in connection with any of the following: (i) post-judgment motions, (ii) contempt proceedings, (ii) garnishment, levy and debtor and third party examinations, (iv) discovery, and (v) bankruptcy litigation. Beneficiary shall have the right (but not the obligation) to commence, appear in, or defend any action purporting to affect any of the interests, rights, obligations or liabilities of Beneficiary or Trustor in connection with this Deed of Trust or any of the Loan Documents, and Trustor shall pay to Beneficiary on demand all costs and expenses reasonably incurred by Beneficiary in connection therewith." (Emphasis added).

Moon's claim that the deed of trust only provides for the recovery of costs, not attorneys' fees, is belied by the actual language of the paragraph cited to. The Note provides for the recovery of actual attorneys' fees incurred, but does not limited the application of the loadstar approach. Alternatively, if the Court disagrees, then loadstar fees are specifically recoverable under the Settlement Agreement ¶ 3 and 18(I) and Deed of Trust section 9.28.

## B. THE RATES ARE NOT CIRCUMSCRIBED BY THE GRADUATION DATE OF THE ATTORNEY AS PROPOSED BY MOON AND ARE REASONABLE FOR THE NORTHERN DISTRICT BASED ON PREVAILING RATES.

Moon argues that the only issue for determining hourly rates is the date of graduation from law school. However, that is not the sole basis for determining hourly rates. As stated in The American Lawyer, partners in large law firms in Bankruptcy cases, such as McDermott charge top partners at $2,590 per hour and Dechert's top partner is at $2,400 per hour.[4] Using Moon's unitary age focused scale, these partners

---

[4] See Exhibit "1" attached hereto.

would have to be over 300 years old to justify such a rate.  Suffice it to say, age is not the sole determinant of value.

The Court can evaluate the work done and results achieved and determine the reasonable rate for comparable attorneys appearing before it.  The motion includes the homework done by the Court in *Dominguez v. City of San Jose*, 2023 WL 2717266, *5 (N.D. Cal. 2023), reflecting the prevailing rates in the Northern District.  Using the *Human Rights Def. Ctr. v. Cnty. of Napa*, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021), guideline, Mr. Cohen should receive $950.00 per hour.  While Moon seeks to restrict Milestone to the discounted rate counsel provides to this client, the loadstar method prevails and does not grant the other side that discount.  Moon has not made any substantive argument about why $800.00 is not the prevailing rate in this District for Mr. Cohen's services based on the rates charged by counsel with his experience and based on the work and results in this case.  Certainly Moon cannot argue the work was not superior as the result was a total victory and judgment against Moon as to all causes of action.

As to Mr. Kornberg, Moon suggest he should be compensated at the rate of $250.00 per hour.  Mr. Kornberg is a partner at the multi-state firm of Miller Nash LLP (AK, CA, WA, OR, ID).  He was admitted to the bar in 2007 and has three published bankruptcy appellate decisions as the prevailing party.  His experience is significant in the bankruptcy arena justifying his rack rate at Miller Nash of $645.00 for specialized work in Bankruptcy Court.  Moon demeans Mr. Kornberg claiming his counsel is much older and therefore wiser and worth more per hour.   He claims Mr. Kornberg's

Case 24-01055  Doc# 82  Filed 10/07/24  Entered 10/07/24 11:45:37  Page 11 of 21

reasonable rate is that of a senior paralegal, $250 per hour.[5]  However, Mr. Kornberg's value should be measured by the results, 100% winner.  The old Chaucer proverb about stones and glass houses applies when the non-prevailing party demeans the competence and value of the attorney who was successful for the prevailing party.  Of course, Moon does not provide any case law or surveys of the rates for partners in multi-state law firms with multiple published decisions having a prevailing rate of $250 per hour in San Francisco.

As for Ms. Lau, Moon limits his argument to a single sentence.  "Ms. Lau, admitted to practice in 2009, has even less experience than Mr. Kornberg, so Ms. Lau's rate should be the same as Mr. Kornberg's, or slightly lower."  Ms. Lau only billed 6.9 hours in this case at her regular rate.  She has practiced in this Court for years and is very experience in Bankruptcy law.  She is a junior partner at The Fuller Law Firm and the Court is well aware of the quality of her work over the years justifying the rate sought based on the reasonable rates in San Francisco.

## V.  THE TIME FOR THE FIRST SCHUMAN DEPOSITION IS COMPENSABLE.

Moon argues that the first day of the Schuman deposition should be non-compensable.  Moon admits that although it was planned for Cohen to take the deposition remotely, with the witness in Ms. Lau's office to produce the documents, McDonnell objected to Cohen taking the deposition.  To avoid any procedural objections at trial,

---

[5] *See Dominguez v. City of San Jose*, 2023 WL 2717266, *5 (N.D. Cal. 2023) – "$260 and $350 for paralegals with 10 and 30 years experience, respectively"

Milestone acquiesced and had Kornberg take the deposition in person, which saved Moon the billing for travel time, that he apparently wanted to incur based on his frivolous objection.[6] In any event, at the deposition Schuman announced for the first time that he had to leave by 1:00 p.m. Thus, Schuman required a two day deposition, independent of any other facts.

Second, there was a sound issue with the remote court reporter, however her office was a few blocks away and Kornberg and Lau agreed to move it to that location, which would have taken 30 minutes to reset and the deposition completed within the time limited set by Rule 30(d)(1). However, again McDonnell refused to travel a minimal distance to keep the deposition going, while complaining in his declaration that he travelled 45 miles to get to the deposition. His claims and actions are difficult to reconcile with someone who wanted the deposition to occur and finish promptly.

## VI.    MS. LAU'S TIME IS COMPENSABLE.

Moon argues that 4.5 hours of Ms. Lau's time should not be compensable as duplicative. While both Ms. Moran and Mr. McDonnell usually attend hearings jointly, Moon complains that Ms. Lau's attending hearings or a deposition should not be

---

[6] McDonnell claims "After all this was set up by Mr. Cohen, he decided at the last minute that he would not bother to attend the deposition in person, but instead stated he would appear by Zoom. I did not consent, and it is likely Mr. Schuman was not consulted." (McDonnell Decl. ¶4)  In fact, Mr. Cohen never planned to appear in person and always does remote depositions as Mr. McDonnell knows from the prior Moon case in which he deposed both Lori Moon and Mark Moon remotely. Further, Schuman was informed. Mr. McDonnell is making up a story about a last minute change, as it was always going to be remotely taken by Mr. Cohen.  McDonnell's decision to object however, was the last minute fly in the ointment.

MILESTONE'S REPLY TO OPP TO MOT FOR ATTORNEYS' FEES AND MEMO OF P AND A

compensable. The goose and gander argument immediately comes to mind. However, independent of the hypocrisy, Ms. Lau's input in the case has been meaningful and valuable. She has insights into briefs, her impressions of the Court's attitude regarding certain arguments and other aspects of the case that helped lead to the 100% victory. Those insights are in-part gained by her appearing at hearings. Therefore, the objections to her work in attending hearings should not lead to any reduction in compensable time.

The only other objection was 1.00 hour for her to appear at the Schuman deposition at which Schuman produced voluminous documents. She was necessary to help Kornberg review the documents on the spot due to the late production by Shuman and to assist Kornberg with the deposition. It is not unusual for the attorney taking the deposition to be assisted and this was within the normal course of litigation for the most important witness in the case. Ms. Lau was to assist in note taking, thinking of questions and following the outline to make sure key inquiries and follow up questions were asked. This time is all compensable and normal, especially with the key witness that led to the summary judgment.

## VII. MR. KORNBERG'S TIME IS ALL COMPENSABLE.

Moon seeks to have the Court disallow 8.4 hours of Kornberg's time working on the case. Milestone agrees to the 0.20 deduction for an improper entry regarding an appeal. As to all the other time, the objection is that it is duplicative. Moon claims that counsel may not have co-counsel review documents and requires an absence of reviews for content, missing arguments, changes in arguments, case law that either counsel believes needs to be added, etc. Moon essentially believes all work must be done by a

single attorney without interaction, discussion, or taking advantage of different knowledge sets, experience or ideas concerning relevant facts etc. The position taken by Moon is inconsistent with the practice of law and would deprive the client of the valuable insights of counsel. In serious litigation firms routinely assign more than one attorney, and it is reasonable. Ultimately, the result speaks for itself, as we are here on a motion for prevailing party attorneys' fees based on the product resulting from the collaboration and input from co-counsel.

For all of these reasons, the Court should award fees for all the hours worked by Mr. Kornberg with the exception of 0.20 on April 23, 2024.

## VIII.   MR. COHEN'S TIME IS ALL COMPENSABLE.

Moon seeks to have the Court disallow 17 hours of Cohen's time working on this case. He bases his request on two arguments:

1)      the prevailing opposition to Moon's summary adjudication took too long; and

2)      the prevailing motion for summary judgment by Milestone took too long.

It takes more time to overcome non-meritorious arguments than Moon thinks. For example, Moon throughout this entire case has prosecuted the 15 U.S.C. §1639g claim that only applies to consumer loans. This required Milestone to re-litigate the consumer loan claims that Moon has been making for years. Moon can't reassert frivolous claims and then complain that Milestone has to do all the work to rebut those claims with the voluminous documents he signed to the contrary. He claims it was merely a cut and paste, and then complains it took too long to overcome his meritless positions. If he

Case 2:24-cv-00387-HDV-MAR   Document 82   Filed 07/22/24   Entered 07/22/24   Page 15 of 21

wants to keep throwing up arguments regardless of merit, then he has to pay for Milestone's fees to clean it up in each motion and in response to each complaint. This was Moon's fault, not Milestone's.

Milestone had to address Moon's claims in his original complaint, and his FAC. Further, Moon chose to file the summary adjudication motion that lacked merit, forcing Milestone to defend against it. Moon ran up the fees and now complains that Milestone had to do the work to combat Moon's aggressive approach to the case including litigating meritless claims.

Interestingly, Moon claims it should have taken less time to defeat his summary adjudication motion. Should the blame be placed on Milestone's counsel for looking at all the issues and doing all the necessary work to make sure Milestone prevailed, or should it be placed on Moon for filing a motion that lacked merit, forcing Milestone to do extensive work to defeat it? Perhaps Moon does not appreciate that an opposition to a motion for summary adjudication is binary, if you lose it is tragic and dispositive as to an aspect of the case. There is no room for mistakes or partial effort work. The job must be done with full diligence to avoid the catastrophic result of losing such a case-defining motion.

Milestone's counsel treated the opposition with the respect it is due based on the stakes of the motion. Moon cannot complain that Moon's summary adjudication forced counsel to do a full court press job to avoid losing the case. That Milestone prevailed speaks to the value of the opposition brief, not Moon's general argument that it took too

Case 2:24-cv-00282-FMO-PVC Document 82 Filed 10/22/24 Page 16 of 21

long. If Moon thought his motion was not meritorious and should be easily and quickly defeated, he should not have filed it.

Moon does not analyze the briefs and explain how he could have done the research more quickly, found the 14 relevant cases more quickly, read the cases that were not used more quickly, drafted the arguments more quickly, chosen what arguments to make or not make more quickly, reviewed the Schuman deposition, documents and declaration more quickly, and drafted the declarations of Stuart, Hamilton, Cohen, Kornberg and Wang more quickly. Instead he just asks for an arbitrary reduction after Cohen put in the work to draft a prevailing motion. The Court should not indulge this type of argument, which lacks substance and is an unsupported reduction request.

DATED: July 25, 2025                             MILLER NASH LLP


                                                 By: /s/ Bernard Kornberg
                                                 Bernard Kornberg, Esq.
                                                 Attorney for Defendant Milestone
                                                 Financial, LLC

Case 4:24-cv-05495-HSG   Document 82   Filed 07/25/24   Entered 07/25/24 11:45:02   Page 17 of 21
MILESTONE'S REPLY TO OPP TO MOT FOR ATTORNEYS' FEES AND MEMO OF P AND A

# EXHIBIT "1"



Page Printed From:
https://www.law.com/americanlawyer/2024/01/10/top-restructuring-partners-are-earning-more-than-2400-per-hour-as-rates-continue-to-climb/



NOT FOR REPRINT

ANALYSIS

# Top Big Law Partners Are Earning More Than $2,400 Per Hour, as Rates Continue to Climb

Dechert has hiked its rates for a top partner by 20%, while McDermott is charging top partners out at $2,590 hourly, according to recent bankruptcy court filings.

January 10, 2024 at 05:00 AM

Lawyer Rates and Arrangements



**Dan Roe**
Reporter

## What You Need to Know

- Big Law rates are nearing $2,600 hourly for top partners, recent bankruptcy court filings show.
- Rate hikes above 10% have gotten more common in recent years compared to 2020.
- Dechert said a 20% rate increase brought it into alignment with the market as many firms make significant fee increases to meet historical leaders.

In September, a committee of unsecured creditors hired Dechert to represent them in the bankruptcy of Benitago Group, an Amazon e-commerce business acquirer. At most, Dechert would charge them $2,000 per hour, according to an employment application in the U.S. Bankruptcy Court for the Southern District of New York.

While Dechert's current top-billing partner for the Benitago bankruptcy costs $1,825 hourly, the law firm disclosed a 20% rate increase for its top partner of $2,400 hourly in a recent court filing.

In a statement, a Dechert spokesperson said the firm adjusted billing rates to "reflect market standards and align with our peers," noting that rates are based on a variety of factors for individual cases.

Dechert's peers are indeed marching ahead on rates with above-average 2024 increases compared to recent years, an American Lawyer analysis of federal bankruptcy court records and BankruptcyData.com data found. Rate increase notices filed in bankruptcy court typically disclose firmwide rate increases, with restructuring partners usually billing under the firm's highest possible rate.

1/3

Annual rate increases that law firms disclosed
in bankruptcy court filings

**ALM.** Design by Chelsey Fredlund/ALM · Source: Federal bankruptcy records, BankruptcyData.com

McDermott, Will & Emery has been charging $2,590 for top-billing partners since at least May 2023, according to a retention application in the bankruptcy of Mountain Express Oil Co. filed in the U.S. Bankruptcy Court for the Southern District of Texas.

While McDermott listed top partners at $2,330 and $1,850 in other bankruptcies, it also listed the $2,590 rate in at least two other bankruptcies last year and announced it in a recent rate increase notice in the Wesco Aircraft Holdings bankruptcy.

The trend of above-average rate increases began during the pandemic, with firms like Paul, Weiss, Rifkind Wharton & Garrison and Quinn Emanuel Urquhart & Sullivan jumping above $2,000 an hour for top partners in 2022 after previously charging $300 to $400 less in 2021. Like Dechert, such firms leaped up to meet historical fee leaders like Kirkland & Ellis and Latham & Watkins, which had already been charging at least $1,800 hourly the year before they went to $2,000.

Of the major firms that have announced 2024 rate increases in bankruptcy dockets, Kirkland boasts the next-highest rate of $2,465, which it rolled out in bankruptcies such as Yellow Corp. and Rite Aid.

Not to be outdone, Latham announced a $225 increase for top-billing partners in the bankruptcy of pharmaceutical company Endo International for a new rate of $2,455. Paul Weiss came in just under $2,400 when it stated a $220 increase in the bankruptcy of electric vehicle manufacturer Proterra Inc.

Sullivan & Cromwell followed closely with a $210 increase to $2,375 for top-billing partners in the FTX bankruptcy, and Paul Hastings crept up to $2,300 in the same bankruptcy from a former top rate of $2,215.

On a percentage basis, annual rate hikes have gotten larger in recent years as well. Going into 2021, leading bankruptcy firms announced single-digit rate increases: 3% for Kirkland, 8% for Latham, and 5% for Paul Weiss. Over the following three years, annual rate increases at Kirkland, Latham and Paul Weiss averaged 9%, 11% and 11%, respectively.

While most top firms hadn't cracked $2,000 in bankruptcy filings only two years ago, the $2,500 barrier might already be broken in other practice areas. In a 2022 U.S. Department of Justice filing, Covington & Burling listed a top rate for senior partners of $2,500, Reuters reported at the time. Also in 2022, Hogan Lovells billed former U.S. solicitor general Neal Katyal out at $2,465 hourly in the bankruptcy of Johnson & Johnson subsidiary LTL Management.

**RELATED STORIES**

## What $1,000 an Hour Gets You in the Am Law 200 Today

## Where Do Big Law Associates Live the Largest?



The American Lawyer provides the most informed and trusted source of news, data, analysis and forecasting on the global business of law.

NEWS
Latest stories

SURVEYS & RANKINGS
AM Law 100
AM Law 200
Diversity Scorecard
The A List
Pro Bono Report

SPECIAL PACKAGES
Special Reports
Special Supplements

AMERICAN LAWYER
Current Issue
Sitemap

NOT FOR REPRINT

Copyright © 2024 ALM Global, LLC. All Rights Reserved.