1  HARRIS L. COHEN, ESQ., State Bar # 119600
   HARRIS L. COHEN, A PROF. CORP.
2  5305 Andasol Ave.
   Encino, CA 91316
3  tel (818) 905-5599 / fax (818) 905-5660
4  Email: hcohen00@aol.com

5  JOYCE K. LAU (No. 267839)
   THE FULLER LAW FIRM, P.C.
6  60 No. Keeble Ave.
   San Jose, CA 95126
7  Telephone: (408)295-5595
   Facsimile: (408) 295-9852
8  joyce@fullerlawfirm.net

9
   BERNARD J. KORNBERG (State Bar No. 252006)
10 MILLER NASH, LLP
   340 Golden Shore, Ste. 450
11 Long Beach, CA 90802
   Telephone: (562) 247-7622
12 Email: Bernard.kornberg@millernash.com

13
14 Attorneys for Defendant, Milestone Financial, LLC

15            UNITED STATES BANKRUPTCY COURT
              NORTHERN DISTRICT OF CALIFORNIA
16               SAN FRANCISCO DIVISION

17

18 In re                          )   CASE NO.  20-30711
   MARK E. MOON                    )   CHAPTER 11
19                                 )   ADV NO. 22-03106
20      Debtor,                    )
                                   )
21 _____ )   **MILESTONE FINANCIAL, LLC**
                                   )   **APPENDIX OF EVIDENCE IN**
22 MARK E. MOON,                   )   **SUPPORT OF MOTION FOR**
                                   )   **ATTORNEYS' FEES AFTER**
23      Plaintiff,                 )   **APPEAL**
   v.                              )
24 Milestone Financial, LLC, a California )
25 Limited Liability Company       )
                                   )   Date: June 27, 2025
26      Defendant.                 )   Time: 10:00 a.m.
                                   )   Dept. remote appearance
27 _____ )
28

_____
         MILESTONE FINANCIAL, LLC APPENDIX OF EVIDENCE IN SUPPORT OF
         MOTION FOR ATTORNEYS' FEES AFTER APPEAL

Milestone Financial, LLC ("Milestone") submits its appendix of evidence in support of its motion for attorneys' fees after appeal as follows:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1 | United States District Court Order Affirming Summary Judgment for Milestone. |
| 2 | Appellants' (Moon's) Opening brief |
| 3 | Appellees' (Milestone's) Opening Brief |
| 4 | Moon's Second Amended Complaint |
| 5 | Moon Promissory Note |
| 6 | Settlement Agreement, Indemnity and First Amendment to Promissory Note Secured by Deed of Trust |
| 7 | Moon Deed of Trust |
| 8 | John McDonnell, Esq. brief filed on June 3, 2022 seeking $800.00 per hour as the appropriate loadstar rate. |
| 9 | Bernie Kornberg's Billing Statements |
| 10 | Harris Cohen's Billing Statements |

DATED: May 28, 2025

MILLER NASH, LLP

By:_____/s/ Bernard J. Kornberg
    BERNARD J. KORNBERG
Attorneys for Milestone Financial, LLC

Case: 22-03106   Doc# 86-2   Filed: 05/28/25   Entered: 05/29/25 14:15:16   Page 2 of 177

# EXHIBIT "1"

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK E. MOON,

               Appellant,

     v.

MILESTONE FINANCIAL, LLC,

               Appellee.

Case No.  24-cv-04003-CRB

**ORDER AFFIRMING SUMMARY JUDGMENT FOR MILESTONE**

Docket No. 8

## I.    INTRODUCTION

This is an appeal of a judgment of the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court") granting summary judgment for Appellee Milestone Financial, LLC ("Milestone") and dismissing Appellant Mark E. Moon's five claims.  Moon alleges violations of state and federal statutes requiring timely payoff statements and responses to information requests, breach of contract and intentional interference with a prospective economic advantage.  In essence, Moon argues that Milestone's conduct prevented his spouse Lori Moon from refinancing on better terms, leaving her to accept a less favorable loan.  Under Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition on the pleadings.  For the reasons below, Moon's Bankruptcy Appeal is **DENIED** and summary judgment is **AFFIRMED** in favor of Milestone.

## II.    BACKGROUND

In 2015, Milestone loaned Moon $795,000, secured by Moon's residence at 11 Mandalay Court, Redwood City, California.  A 388.  The note originally matured on July 31, 2018 and, in a 2016 extension agreement, the parties postponed maturity one year to July 31, 2019 and confirmed that "all unpaid sums [would] be due and payable in full" on that date.  Appendix ("A") 388-89,

Dkts. 10-1 to 10-42 (Appendix); A 397 § 5.  Moon made no final lump-sum payment when the note matured.  A 669.  A May 25, 2022 Bankruptcy Court judgment in a first adversary proceeding (Adv. 20-03117) expressly found that "the note matured on August 1, 2019" and fixed the payoff due on that date at $751,009.91.  A 482-83.

Moon sought to refinance the Milestone debt with a $900,000, 5.90% interest thirty-year loan from United Wholesale Mortgage ("UWM").  A 511.  UWM issued a conditional approval that, among other things, required documentation showing that every payment on the Milestone loan had been made on time for the preceding twelve months.  See id., Condition 3002.  On May 26, 2022, Michelle Hider (an escrow assistant at Old Republic Title) requested a payoff demand for Moon's 11 Mandalay Court property.  A 526.  On June 16, 2022, Milestone's counsel Bernard Kornberg responded to Old Republic Title's request and provided escrow with a payoff quote.  A 336.  On July 15, 2022, Old Republic Title sent another payoff request to Milestone.  A 67.

Ultimately, the 5.90% refinance fell through.  A 498.  In April 2023, Moon's spouse closed a replacement refinance at 7.625% with Kind Lending, LLC.  A 13; A 87.

Moon commenced this adversary proceeding (Adv. 22-03106) on September 13, 2022, and later filed a Second Amended Complaint alleging:

1.  Violation of California Civil Code § 2943 (failure to provide timely payoff statement);

2.  Violation of 15 U.S.C. § 1639g (federal analogue of above);

3.  Violation of RESPA/Regulation X (failure to respond to information request);

4.  Breach of contract; and

5.  Intentional interference with prospective economic advantage.

A 10-6.

After discovery, the Bankruptcy Court denied Moon's motion for partial summary judgment on March 8, 2024.  Dkt. 10-17.  On Milestone's subsequent motion, the Bankruptcy Court granted summary judgment for Milestone on all five counts on June 10, 2024.  Dkt. 10-37.

Moon timely appealed under 28 U.S.C. § 158(a)(1).  A 736.  Before the Court is Moon's appeal seeking reversal of the Bankruptcy Court's June 2024 summary judgment order and

2

1   remand for trial.

2   **III.    LEGAL STANDARD**

3       A trial court reviews <u>de novo</u> a bankruptcy court's grant of summary judgment.  *In re*

4   *Ahaza Sys., Inc.*, 482 F.3d 1118, 1123 (9th Cir. 2007).  Accordingly, the Court applies Rule 56 of

5   the Federal Rules of Civil Procedure.

6       Summary judgment is proper where the pleadings, discovery and affidavits show that there

7   is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

8   matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of

9   the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material

10  fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

11  nonmoving party.  *Id.*

12      The moving party for summary judgment bears the initial burden of identifying those

13  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

14  issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving

15  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

16  reasonable trier of fact could find other than for the moving party.  But on an issue for which the

17  opposing party will have the burden of proof at trial, as is the case here, the moving party need

18  only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.*

19      Once the moving party meets its initial burden, the nonmoving party must go beyond the

20  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

21  genuine issue for trial."  Fed. R. Civ. P. 56(e).  If the nonmoving party fails to make this showing,

22  "the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

23  **IV.    DISCUSSION**

24      The Court evaluates whether summary judgment should be affirmed for Milestone for each

25  of Moon's five claims.

26  **A.    California Civil Code Section 2943(c)**

27      In Moon's first claim, Moon alleges that Milestone violated California Civil Code §

28  2943(c) by failing to timely respond to a request for a payoff demand.  A 3.

United States District Court
Northern District of California

3

1      California Civil Code § 2943(c) requires that a lender "on the written demand of an

2  entitled person . . . prepare and deliver a payoff demand statement to the person demanding it

3  within 21 days of the receipt of the demand." Cal. Civ. Code § 2943(c). A plaintiff may recover

4  damages caused by "an intentional failure to comply with the requirement[] [to timely provide a

5  payoff statement] without just cause or excuse." Id. § 2943(e)(4).

6      Here, there is no violation of § 2943(c) because Milestone timely and sufficiently

7  responded to Old Republic Title's May 26, 2022 request on June 16, 2022 and, under the relevant

8  circumstances, this response applied to the July 15, 2022 request. Specifically, on June 16, 2022,

9  Milestone's counsel (Mr. Kornberg) responded to Old Republic Title's May 26, 2022 request for a

10 payoff demand. *See* A 336. His letter states:

11       In the Judgment, the Court fixed the amount due to Milestone, as of
      May 13, 2022, at $751,009.91. Daily interest accrues at a rate of

12       $140.82 until paid. As of June 16, 2022 that amount is $755,656.97
      (33 days x 1$40.82 = $4,647.06 + $751,009.91).

13 Id. Mr. Kornberg's letter fell within the 21-day limit to respond under § 2943(c). Thus, Milestone

14 did not violate § 2943(c).

15     Moon's argument that Milestone did not respond to the July 15, 2022 request for the same

16 information and thus violated § 2943(c) is unpersuasive. Opening Brief at 45 (Dkt. 8). The June

17 16, 2022 response did not make reference to any applicable expiration date, nor is there any

18 indication that the Bankruptcy Court's judgment fixing the amount due to Milestone had changed.

19     As the Bankruptcy Court held in its order denying summary judgment for Moon:

20       Despite Mr. Moon's argument about the sufficiency of that
      response, it does not purport to expire on the date it was issued or

21       otherwise contradict the quoted language. Nothing in CC 2943
      prohibits any additional language, nor to restrict a response

22       information such as just quoted.

23 A 301. The key requirement of § 2943(c) is to ensure that an individual receives a statement that

24 accurately reflects the amount required to pay off the loan. Because the earlier response satisfies §

25 2943(c) and the base payoff amount had not changed, Milestone's June 16, 2022 response fulfills

26 the purpose of § 2943(c).[1] Consequently, the response satisfies § 2943(c), even as to the July 15,

27

28 _____
[1] Further, under § 2943(e)(4), Moon can seek damages only if Milestone intentionally failed to
comply with a request without just cause or excuse. However, there is no evidence that Milestone

United States District Court
Northern District of California

4

1    2022 request.

2          The Bankruptcy Court's grant of summary judgment for Milestone on this claim is

3    affirmed.

4    **B.      15 U.S.C. Section 1639g**

5          Moon's second claim is that Milestone violated 15 U.S.C. § 1639g by failing to timely

6    provide a payoff statement.

7          Next, 15 U.S.C. § 1639g provides:

             A creditor or servicer of a home loan shall send an accurate payoff
8            balance within a reasonable time, but in no case more than 7
             business days, after the receipt of a written request for such balance
9            from or on behalf of the borrower.

10   15 U.S.C. § 1639g.

11         Again, Mr. Kornberg's June 16, 2022 letter satisfies this requirement. The response

12   identifies the payoff due as $751,009.91 (exclusive of interest). Id.

13         That Mr. Kornberg is an attorney and not a creditor does not vitiate a finding that his

14   response satisfies 15 U.S.C. § 1639g. Moon fails to cite to any caselaw that rejects attorney-led

15   compliance with § 1639g, where the attorney is an authorized representative of the creditor. The

16   Court does not find support for the proposition that § 1639g prohibits compliance by an agent of

17   the creditor.

18         As the Bankruptcy Court held, the "alternative theory advanced by Mr. Moon that federal

19   law requires response to a payoff demand be sent by the 'actual creditor' rather than an attorney or

20   agent…appears to be frivolous in any event." A 302.

21         Accordingly, Mr. Kornberg's response satisfies the requirement in § 1639g. Thus, the

22   Bankruptcy Court's grant of summary judgment for Milestone on this claim is affirmed.

23   **C.      Real Estate Settlement Procedures Act ("RESPA")**

24         Moon's third claim is that Milestone violated RESPA by failing to respond to a request for

25   information. As is relevant here, 12 U.S.C. § 2605(k)(1)(E) provides: "A servicer of a federally

26   related mortgage shall not . . . fail to comply with any other obligation found by the Bureau of

27   _____

28   intentionally failed to comply with the request because the base amount due to Milestone had not
     changed.

1    Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer

2    protection purposes of this chapter."  The regulation Moon alleges Milestone violated is 12 C.F.R.

3    § 1024.36(d), which requires a response to an information request within 30 days after the servicer

4    receives the request.  Opening Brief at 16; see 12 C.F.R. § 1024.36(d).  Importantly, liability for

5    failure requires that a plaintiff show "actual damages to the borrower as a result of the failure."  12

6    U.S.C. § 2605(f)(1)(A).

7            Moon cannot succeed on his claim because he cannot show actual damages caused by the

8    alleged failure.  The damage at issue here is the difference between the cost of the unattained

9    UWM loan and the cost of the current loan.  Any failure on Milestone's part did not cause this

10   damage.  Instead, the record demonstrates that UWM required that loan applicants attest that "all

11   payments in the past 12 months were timely and made by the borrower" and the loan could not

12   move forward, in part, because the Milestone loan had matured (i.e. the Milestone loan was not

13   current).  See A 511 (UWM Loan Approval Conditions, Condition 3002), A 482 (Judgment for

14   Plaintiffs identifying that maturity date had passed).  Accordingly, Milestone is not liable under

15   RESPA for failing to sign a document that would falsely represent that the loan was current when

16   it had matured.  See A 515 (Prefilled Request for Verification of Rent or Mortgage).  There was no

17   violation of RESPA.

18           As the Bankruptcy Court held:

19               Whether or not Milestone responded with an accurate [Verification
                 of Mortgage ("VOM")], or Lori [Moon] provided the note reflecting
20               the Extension, or a current mortgage statement, nothing would
                 satisfy UWM's requirement that the [Milestone loan] be current.
21               The [loan] was not current.  The [loan] was not merely in default.
                 The [loan] had long since matured.  The facts surrounding the [loan]
22               with Milestone are long-settled, and the requirements on the face of
                 UWM's Loan Approval Conditions simply do not align with the
23               Moon's reality.

24           The Bankruptcy Court's grant of summary judgment for Milestone on this claim is

25   affirmed.

26   **D.    Breach of Contract**

27           In Moon's fourth claim, Moon alleges that Milestone breached an implied duty to fulfill

28   the requirements of California Civil Code § 2943(c) allegedly incorporated into the contract by

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1   failing to timely provide accurate payoff information.  Opening Brief at 49.

2       First, Moon fails to identify a provision in the promissory note (A 388), the settlement

3   agreement between the Parties (A 396), or the Bankruptcy Court's judgment (A 481) requiring

4   Milestone to furnish a payoff demand.

5       Second, the Court will not infer that California Civil Code § 2943(c) creates contractual

6   duties because this statute does not clearly evince an intent to create such obligations.  See *Retired*

7   *Emps. Assn. of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1186 (2011) ("'In

8   California law, a legislative intent to grant contractual rights can be implied from a statute if it

9   contains an unambiguous element of exchange of consideration by a private party for

10  consideration offered by the state.'") (quoting *California Teachers Assn. v. Cory*, 155 Cal.App.3d

11  494, 505 (1984)).

12      Further, to the extent that Moon alleges a breach of contract based on California Civil

13  Code § 2943(c), this argument is moot as Milestone did not violate § 2943(c).  Accordingly,

14  Moon's breach of contract claim fails.

15      Thus, the Bankruptcy Court's grant of summary judgment for Milestone on this claim is

16  affirmed.

17  **E.**    **Intentional Interference with Prospective Economic Advantage**

18      Moon's fifth claim is a claim for intentional interference with prospective economic

19  advantage ("IIPEA").  Opening Brief at 16.  Moon alleges that Milestone's alleged failures to

20  timely provide payoff statements or responses to information requests constitutes IIPEA.  Id.  The

21  elements of an IIPEA claim are:

22          (1) an economic relationship between the plaintiff and some third
            party, with the probability of future economic benefit to the plaintiff;
23          (2) the defendant's knowledge of the relationship;
            (3) intentional acts on the part of the defendant designed to disrupt
24          the relationship;
            (4) actual disruption of the relationship; and
25          (5) economic harm to the plaintiff proximately caused by the acts of
            the defendant.

26  *Westside Ctr. Assocs. v. Safeway Stores 23, Inc*., 42 Cal. App. 4th 507, 521-22 (1996).

27      Because Milestone did not violate California Civil Code § 2943(c), 15 U.S.C. § 1639g, or

28  12 C.F.R. § 1024.36(d), Moon cannot base his IIPEA on Milestone's alleged violations.

7

1    Further, this claim fails because Moon cannot demonstrate, for purposes of establishing

2    damages, that his spouse failed to enter into a loan contract with UWM because of Milestone's

3    actions, rather than the Moons' failure to meet UWM's requirements.

4    As the Bankruptcy Court held:

5    As a matter of law, Mark [Moon] cannot show, and thus prove
     damages, that it was Milestone's actions and not the very clear
     requirements of UWM, that prevented Lori [Moon] from refinancing
6    with the creditor of her choice.

7    A 302.

8    Finally, the Court does not find record support of the requisite intent to establish an IIPEA

9    claim.  Specifically, there is no evidence that Milestone intentionally took action "designed to

10   disrupt" an economic relationship between Moon and UWM.  *Westside,* 42 Cal. App. 4th at 521-

11   22.

12   Thus, Moon cannot establish IIPEA.

13   Accordingly, the Bankruptcy Court's grant of summary judgment for Milestone on this

14   claim is affirmed.

15   **V.    CONCLUSION**

16   For the foregoing reasons, Moon's Bankruptcy Appeal is **DENIED** and summary

17   judgment is **AFFIRMED** in favor of Milestone.

18   The Clerk shall close the file.

19   **IT IS SO ORDERED**.

20   Dated: May 12 , 2025

21

22

23   CHARLES R. BREYER
     United States District Judge

24

25

26

27

28

*United States District Court*
*Northern District of California*

8

# EXHIBIT "2"

Case No. 24-cv-04003-CRB

---

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

----------------------------------

In re: MARK E. MOON,

*Debtor*

----------------------------------

E. MARK MOON,

*Appellant*

v.

MILESTONE FINANCIAL, LLC,

*Appellee.*

----------------------------------

## APPELLANT'S **OPENING BRIEF**

----------------------------------

Appeal from a Judgment of the United States Bankruptcy
Court for the Northern District of California.

Bankruptcy Case No. 20-30711; Adversary Case No. 22-03106

----------------------------------

JOHN P. MCDONNELL (State Bar No. 77369)
295 89th Street, Ste. 200
Daly City, CA 94015
Telephone: 650-991-9909
Email: JPMcDON@aol.com

Attorney for E. Mark Moon

TABLE OF CONTENTS

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND ................................................................ 4
  Summary of the Prior Proceeding ................................................ 4
  Factual Background on the Current Loan Dispute. ........................7

PROCEDURAL HISTORY.............................................................. 11
  The Moon Motion for Partial Summary Judgment....................12
  The Milestone Motion for Summary Judgment .......................13
  The Moon Opposition to the Motion for Summary Judgment .................16
  The Order Granting the Milestone Motion................................18

SUMMARY OF ARGUMENT ......................................................... 20

LEGAL DISCUSSION.................................................................... 22

  Standards for Summary Judgment........................................... 22

  1. There are no facts to support Milestone's claim that UWM would not have made the July 2022 loan. ................................................ 23

    A. The parties agree that the only relevant UWM requirement was that the Moons had timely made the monthly payments for the 12 months prior to   July 2022.................................................................. 23

    B. Milestone's expert misled the court by claiming that the Fannie Mae guidelines would preclude a new loan if there had ever been any late payment in the entire history of the old loan. ..................................... 28
      1. The Fannie Mae guidelines require timely payments only in the most recent 12 months............................................................ 28
      2. The evidence showed that UWM was unconcerned about an old default. .............................................................................. 29
      3. The Bankruptcy Court apparently accepted Mr. Wang's  false information. .................................................................... 30

  2. The Bankruptcy Court Erred by failing to follow the "substantial factor" test for causation under California law, as required by Bank of N.Y. v. Fremont Gen. Corp. (9th Cir. 2008) 523 F.3d 902. .................................. 32

3. Section 1639g requires that the lender or servicer send the payoff statement; a letter from an attorney is not sufficient................................35

4. The June 16, 2022 attorney letter was defective because it contained inaccurate information. ...........................................................................37

5. A June 16, 2022 letter cannot be a valid response to a written request that is not sent until July 15, 2022. The statutes require a new payoff statement in response to each new request.............................................. 40

6. A waiver agreement signed in September 2016 does not preclude an action for wrongdoing that did not occur until July 2022. ...................... 42

7. Milestone's misconduct was a breach of contract. .............................. 44

8. Mr. Schuman did not demand that Milestone sign a false Verification of Mortgage. ........................................................................................ 45
   A. Mr. Schuman did not demand that Milestone sign the document "as is."........................................................................................................ 46
   B. Mr. Schuman's statement that the parties agreed to the $6,647.50 amount in November 2020 was accurate.................................................47

CONCLUSION........................................................................................ 48

RULE 8015 CERTIFICATION OF COMPLIANCE .................................... 48

CERTIFICATE OF SERVICE ................................................................... 49

TABLE OF AUTHORITIES

Cases

*Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999)................. 23

*Bank of N.Y. v. Fremont Gen. Corp.* (9th Cir. 2008) 523 F.3d 902 .......... 32

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). .................................... 23

*City of Pomona v. SQM N. Am. Corp.* (9th Cir. 2014) 750 F.3d 1036 ........ 23

*City of Ukiah v. Fones* (1962) 64 Cal. 2d 104 .............................................. 43

*Formica v. Parke Bancorp, Inc.* (D.N.J. Nov. 30, 2023, Civil Action No. 21-13867-KMW-SAK) 2023 U.S. Dist. LEXIS 213937, at *8-9). .................. 36

*Hauk v. JP Morgan Chase Bank United States* (9th Cir. 2009) 552 F.3d 1114 ................................................................................................................ 38

*Himes v. Somatics, LLC* (2024) 16 Cal.5th 209 .......................................... 33

*In re Ethan C.* (2012) 54 Cal.4th 610............................................................ 33

*Larkins v. Fifth Third Mortg. Co.* (S.D. Ohio 2019) 376 F. Supp. 3d 784 .. 36

*Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291 ............................. 34

*Lopez v. The Hillshire Brands Co.* (2019) 41 Cal.App.5th 688 ................... 33

*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470 ............................. 44

*Meriweather Inv. Co. v. Lampton* (1935) 4 Cal.2d 697 .............................. 45

*Mitchell v. Gonzales* (1991) 54 Cal.3d 104.................................................. 32

*N.S. v. Kan. City Bd. of Police Comm'rs* (2023) ____U.S.____ [143 S.Ct. 2422, 2422-2423]....................................................................................... 31

*Norfolk & W. Ry. v. American Train Dispatchers' Assoc.*(1991) 499 U.S. 117 .............................................................................................. 45

*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234 ........... 34

*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017.................................... 34

*Reding v. Texaco, Inc.* (9th Cir. 1979) 598 F.2d 513 .................................. 45

*State ex rel. Wilson v. Superior Court* (2014) 227 Cal.App.4th 579........... 33

*Venhaus v. Shultz* (2007) 155 Cal.App.4th 1072 ........................................ 39

*Viner v. Sweet* (2003) 30 Cal.4th 1232 at 1240 .......................................... 32

*Von Hoffman v. Quincy* (1867) 71 U.S. 535 .................................................. 44

*Zetwick v. Cty. of Yolo*, 850 F.3d 436 (9th Cir. 2017). ................................ 22

Statutes

12 U.S.C. §2605(k) ....................................................................... 42

15 U.S.C. §1602(dd)(7)) ................................................................ 36

15 U.S.C. §1602(g), .................................................................... 36

15 U.S.C. §1639g ............................................................. 1, 11,18, 35

Cal. Civ. Code §1916-1(3) ............................................................... 6

Cal. Civ. Code §2943(a)(5) ...................................................... 39, 41, 42

Cal. Civil Code §2943(c) ............................................................... 11

Cal. Civ. Code §2943(e)(4) ............................................................ 41

Ca. Civ. Code. §2943 ............................................................. 1, 18

Cal. Civ. Code §1584 ................................................................. 47

Other Authorities

78 Fed. Reg. 10902 (Feb. 14, 2013) ................................................... 37

73 Fed. Reg. 44,522, 44,570 (July 30, 2008) ......................................... 37

California Jury Instruction (CACI) 430 ................................................ 32

Rules

Fed. R. Civ. P. 56(a) .................................................................. 23

Fed. R. Civ. P. 56(c) .................................................................. 23

Regulations

12 C.F.R. §1024.36(d) .......................................................... 1, 11, 43

12 CFR 1026.36(c)(1)(i) ............................................................... 37

12 CFR 1026.36(c)(3) .................................................................. 41

INTRODUCTION

This case involves wrongful conduct by a lender when the borrower was attempting to pay off his debt, as ordered by the Bankruptcy Court.

In a prior adversary proceeding, the borrower, E. Mark Moon, sued the lender, Milestone Financial, LLC, claiming that Milestone violated the California usury laws and also imposed an illegal "acceleration penalty on Mr. Moon. In May 2022, the Bankruptcy Court entered judgment in favor of Mr. Moon. As part of the Judgment, the Bankruptcy Court ordered Moon to pay off the Milestone loan.

This case focuses on Milestone's actions that delayed payment of the loan, so that Milestone could continue to collect interest while Milestone appealed the judgment.

After entry of judgment, Moon promptly sought a new loan to pay off the Milestone loan, but Milestone prevented this by failing to provide a loan payoff statement as required by Cal. Civil Code §2943 and 15 U.S.C. §1639g. In response to Mr. Moon's request for a payoff statement, Milestone stated that it would *not* provide the statement, and that Mr. Moon would have to contact Milestone and settle the dispute. Milestone also failed to provide other necessary loan information, in violation of 12 C.F.R. §1024.36(d).

1

Milestone's refusals caused Mr. Moon to lose a July 2022 refinancing loan with a 5.9% interest rate. When Mr. Moon was finally able to refinance the loan in April 2023, the interest rate had increased to 7.625%.  Mr. Moon filed this second adversary proceeding to recover the damages caused by Milestone's misconduct.

Milestone filed a Motion for Summary Judgment, claiming that the undisputed facts showed that Moon could not have obtained the July 2022 5.75% loan. Milestone presented a loan expert who observed that the new lender required that Mr. Moon show that he had made timely payments in the 12 months prior to July 2022. The expert also stated that "Fannie Mae" lending guidelines also required timely payments in the prior 12 months. The expert then stated that in his opinion, the lender would have denied the loan because Mr. Moon *had missed some payments in the prior 12 months.*

But the expert (and Milestone) failed to present any *evidence* of any missed payments in the prior 12 months. In contrast to Milestone's failure, Mr. Moon presented evidence (which had been verified by Milestone) that Mr. Moon *had timely made all the payments in the prior 12 months.*

The expert had also suggested that Fannie Mae guidelines provided that there could *never* have been *any* late payment in the entire history of the loan. He suggested that a default in 2017 would have prevented the 2022

2

loan. But the expert's own declaration showed there *was no such Fannie Mae requirement*. The only Fannie Mae requirement was that there be no late payments in the prior 12 months. And the new lender definitely had no requirement that there was *never* any late payment in the entire history of the loan. Milestone's expert misled the Bankruptcy Court.

Nevertheless, the Bankruptcy Court ruled that an old default would have led the new lender to deny the loan in 2022.

The Bankruptcy Court also stated that Mr. Moon had to prove that "but for" the wrongful actions of Milestone, the new lender would have made the July 2022 loan. This was a fundamental legal error. California uses the "substantial factor" test to determine the causation of damages. Milestone's failure to provide the payoff statement could have, by itself, led the lender to deny the loan. Even if the old default had been "a factor," the substantial factor test provides that causation is a factual issue, and it is up to the jury to determine if the wrongful conduct of Milestone was a substantial factor in leading to the denial of the loan.

3

## FACTUAL BACKGROUND

This is the second adversary proceeding between the Moons and Milestone. A summary of the prior adversary case will help in evaluating the current appeal.

### Summary of the Prior Proceeding.[1]

The dealings between the parties began in 2015, when the Moons were in bankruptcy and facing foreclosure on their home. In June 2015, Milestone made a two-year $795,000 loan to the Moons so they could pay off their prior mortgage. Appellant's Appendix, p. 388 (hereinafter APP0388). Full payment of the loan was due on July 31, 2017. The loan was secured by a Deed of Trust on the Moons' home. [*Id.*]

The Moons made most of the monthly payments on the 2015 loan, but missed a couple. In the Summer of 2016, the Moons determined that they would have difficulty paying the loan off by the July 31, 2017 due date, and they asked about an extension. Milestone agreed to extend the loan for two more years. Milestone sent the Moons a document entitled "Settlement Agreement, Indemnity, and First Amendment to Promissory Note Secured by Deed of Trust," which the parties executed on September

---

1  The history of the prior case is also included in the 2023 decision of the Bankruptcy Appellate Panel at 648 B.R. 73.

4

1, 2016. App0396. The agreement extended the due date to July 31, 2019, increased the loan balance to $902,525.34, and changed the interest rate to 11.05%.

By early 2019, the financial situation of the Moons had improved. The Moons located a new lender and negotiated a new 30-year loan in the amount of $1,065,000 with a 5.625% interest rate. Seeking to pay off the more expensive Milestone loan, the Moons requested that Milestone provide a payoff statement.

On April 19, 2019, Milestone sent the payoff demand that included an "acceleration penalty" of $115,515.06, and an interest charge of $210,449.87, for a total demand of $1,288,792.28 to repay the $902,525.34. [Item 1 in Appellant's Request for Judicial Notice "RJN][2] The Moons could not pay the huge $1,288,792.28 demand. The Moons attempted to negotiate a lower amount, but Milestone insisted on payment in full.

In September 2019, Milestone recorded a Notice of Default. RJN #2. Milestone recorded a Notice of Trustee Sale in May 2020. RJN #3. To prevent the trustee from selling their home, the Moons filed for

---

[2] Relevant documents that are not in the current record are included in the Appellant's Request for Judicial Notice.

bankruptcy on September 10, 2020.

The prior case was resolved on cross-motions for summary judgment. The Moons argued that: (1) the 10% acceleration penalty of $115,615.06 was an illegal penalty under Cal. Civil Code §3275, and (2) the 2016 loan extension at 11.05% violated the California usury law at Cal. Civ. Code §1916-1(3). Milestone argued that all of its contract terms were legal, and that the Court should enforce the contract as written.

On April 27, 2022, the Bankruptcy Court issued its final decision, ruling that the 10% penalty violated California law and the 11.05% interest rate violated the usury law. The Court also ruled that Milestone was entitled to "post maturity" interest at the rate of 7% from the July 31, 2019 maturity date of the loan. The Court also ordered that the Moons pay the loan in full by June 24, 2022. RJN #4. The Court entered judgment for the Moons on May 25, 2022. APP0341.

Immediately after the entry of judgment, Milestone filed an appeal to the Bankruptcy Appellate Panel ("BAP"). *Milestone did not want the loan paid off.* Milestone filed a Motion for Stay in the Bankruptcy Court, which the Court denied on June 24, 2022 RJN #5. Milestone then filed a Motion for Stay with the BAP on June 28, 2022 which the BAP denied on August 17, 2022. RJN #6.

The BAP affirmed the judgment in its entirety on January 18, 2023, 648 B.R. 73. Milestone then filed an appeal with the Ninth Circuit, which affirmed the BAP decision in full in an unpublished opinion dated April 16, 2024.

Factual background on the current loan dispute.

The relevant facts in this case began with the Court's ruling in the prior case that set the June 24, 2022 payoff date. The Moons' bankruptcy attorney, Cathy Moran, engaged mortgage broker Robert Schuman to work on a refinancing. The major part of Mr. Schuman's business is obtaining refinance loans for homes of debtors in bankruptcy, and he had been doing this type of refinancing for over 30 years. APP0031. Mr. Schuman sought a loan for Lori Moon, who was not in the bankruptcy with her husband. Mr. Schuman obtained the interest of United Wholesale Mortgage ("UWM"). On May 18, 2022 UWM sent Mrs. Moon a preliminary Loan Estimate, as required by the Truth in Lending laws ("TILA"). APP0037. The estimate was for a $900,000 loan with a 5.829% interest rate. [*Id.*]

By May 26, 2022, the loan was moving forward, and the escrow company, Old Republic Title Company ("ORTC"), sent a request for a payoff statement to Milestone through its attorney, Harris Cohen.

7

APP0526.

Milestone's appeal of the prior judgment, and its Motion for Stay in the Bankruptcy Court delayed the processing of the UWM loan. After the Bankruptcy Court denied the stay on June 24, attorney Moran notified Mr. Schuman that he should restart the refinancing with UWM. APP0063

In the interim, attorney Bernard Kornberg (who was now also representing Milestone), sent a letter to ORTC on June 16, 2022 that Kornberg identified as the payoff statement given in response to the May 26, 2022 request. APP0336-37. The letter noted that Milestone was appealing the judgment and stated that Milestone would not release its lien until Mr. Moon obtained a Bankruptcy Court order allowing payment of the loan.

Mr. Schuman got the stalled UWM loan back on track in July, and on July 14, 2022, Lori Moon signed a new loan application with UWM. APP0065. The next day, July 15, 2022, ORTC sent a new request for a payoff statement to Milestone. APP0067. Also on July 15, 2022, Mr. Schuman sent attorney Joyce Lau (another attorney for Milestone), a "Verification of Mortgage" form ("VOM"), which is another document that the new lender needed from the prior lender in order to refinance the loan. APP0044.

8

After ORTC sent the 7/15/22 request for the payoff statement to Milestone, it made follow-up calls to Milestone on July 19 and July 20 but no one answered the calls. [cite] On July 20, ORTC sent Milestone an e-mail requesting a "status update" on the pending request. APP0061.

On July 25, ORTC was finally able to talk by phone with Milestone. The Milestone employee told ORTC:

> "to contact the borrowers to let them know that the reason Milestone Financial is not processing the payoff due to on going dispute of the amount and the borrower's need to call Milestone Financial to settle the dispute. *[sic]*
> APP0061, top of page.

On August 16, 2022, ORTC was still trying to get a payoff statement and spoke with Milestone again. This time, the Milestone employee advised ORTC that *the owner of Milestone* had expressly instructed the employee to have ORTC tell the borrower to settle the dispute first. APP0059.

ORTC never received a payoff statement from Milestone in July or August 2022.

Mr. Schuman faced a similar problem with his attempt to obtain the VOM. He sent a follow up e-mail to attorney Lau on July 19, asking her to confirm she received his e-mail. Ms. Lau responded, "I received your email last week and forwarded it to my client. I have not heard back though. Will keep you posted." APP0041. However, this was the last Mr. Schuman

9

heard from Ms. Lau, and he did not receive a VOM from her or anyone at Milestone.

Despite the problems, Mr. Schuman continued to try to move the UWM loan forward in July and August 2022. On July 20, UWM issued a new loan estimate for the $900,000 loan with a 5.9% rate. APP0071. On August 8, 2022, UWM issued a conditional loan approval for the loan, seeking the payoff statement, the VOM and requiring that the Moons show timely monthly payments on their loan for the 12 months from July 2021 to July 2022. APP0048. On August 23, UWM issued an updated conditional loan approval, still seeking the missing VOM and payoff statement. APP0054. In late August 2022 however, UWM denied the loan. APP0033. Mr. Schuman stated that the lack of the payoff statement by itself would have led UWM to deny the loan, and that the lack of the VOM by itself would have led UWM to deny the loan. *[Id.]*

Eight months later, in April 2023, Lori Moon was finally able to obtain a $900,000 loan to pay off the Milestone loan. APP0087. However, by this time, interests rates had increased, and the April 2023 loan had an interest rate of 7.625% *[Id.]*, causing a substantial increase in the cost of the loan to the Moons.

10

## PROCEDURAL HISTORY

Debtor, E. Mark Moon, filed the complaint in this case on September 13, 2022. APP0001. After the Court's ruling on Milestone's Motion to Dismiss, Mr. Moon filed the Second Amended Complaint ["SAC"] APP0010. The SAC alleges five causes of action:

1. That Milestone's failure to provide a payoff statement in response to the July 15, 2022 request was a violation of Cal. Civil Code §2943(c), which requires that a lender holding a mortgage on the borrower's property must, within 21 days of a written request, provide the borrower with a payoff statement that sets forth amount that will fully satisfy the loan secured by the mortgage.

2. That Milestone's failure to provide a payoff statement in response to the July 15, 2022 request was also a violation of 15 U.S.C. §1639g, which requires that a creditor of servicer of a home loan provide an accurate payoff statement within 7 days of receipt of a written request.

3. That Milestone violated 12 C.F.R. §1024.36(d)of the Real Estate Settlement Procedures Act (RESPA), by failing to provide the VOM in response to the July 15, 2022 request. (12 C.F.R. §1024.36(d), requires the servicer of a home loan to provide a response to any request for information no later than 30 business days after receiving the request.)

4. That Milestone's violations were a breach of contract, and

5. That Milestone's violations were also a wrongful interference with a prospective economic relationship (the UWM loan).

11

The Moon Motion for Partial Summary Judgment.

On January 26, 2024, Mr. Moon made a motion for partial summary judgment on the first, second and fifth causes of action. APP0021. Moon argued that the undisputed facts demonstrated that Milestone had failed to provide the loan payoff statements mandated by Civ. Code. §2943 and 15 U.S.C. §1639g. Mr. Moon further argued that these same undisputed facts demonstrated that Milestone wrongfully interfered with the prospective UWM loan. APP0028-29.

In response, Milestone claimed that the earlier June 16, 2022 letter qualified as a "response" to the July 15, 2022 request for a payoff statement under §2943, because the June 16, 2022 letter did not contain an expiration date. APP0107. Milestone also claimed that the statute does not permit a borrower to make more than one request for a payoff statement. APP0108, lines 24-27. Milestone also claimed that it did not "receive" the July 15, 2022 request sent by e-mail, because Milestone did not read the e-mail. APP0105-06.

In the Reply, Mr. Moon pointed out that the payoff statement must include a period, *not to exceed 30 days*, that the statement is good for. APP0279. The Reply also pointed out that the letter from an attorney did not comply with §1639g, which provides that only the "creditor" or

12

"servicer" (not a lawyer, loan broker or other agent) is qualified to send a valid payoff statement. APP0280. Finally, the Reply pointed out that the evidence proved that Milestone received the request, because on two occasions (July 25 and August 16), a Milestone employee confirmed receipt of the request. APP0278.

The Bankruptcy Court denied Moon's motion. APP0300. The judge ruled that the June 16, 2022 letter could be a response to the later July 15, 2022 request because the June 16 letter did not contain an expiration date. The judge seemed to accept Milestone's argument that once a lender sends a payoff statement, the lender never has to respond to any further requests. The Court also rejected Moon's argument that only a creditor or servicer can send a qualifying payoff statement under §1639g. The Court stated that this claim was raised for the first time in the Reply, and that, "it appears to be frivolous in any event." APP0302, lines 15-16. The Court also denied the Motion on the intentional interference claim, because the Court found there were disputed facts on this claim.

The Milestone Motion for Summary Judgment

Picking up on the Court's rulings on the Moon motion, Milestone filed its own Motion for Summary Judgment. APP0305. Milestone argued that, pursuant to the Court's earlier Order, Moon's §2943 claim should be

13

dismissed because the June 16, 2022 letter, with no expiration date, was a response to the July 15, 2022 request. APP0317.

Milestone did *not* argue that the June 16, 2022 letter qualified under §1639g. Instead, Milestone argued that the loan, secured by the Moon's personal residence, was not a "consumer loan." Milestone did not present any facts suggesting that this was *not* a consumer loan, but relied on documents that the Moons signed in 2015 to claim the Moons were estopped to claim this was a consumer loan. APP0318-0325. (The Bankruptcy Court rejected this estoppel argument.)

Milestone's motion added a major new argument; Milestone claimed that the undisputed facts showed that Lori Moon would not have obtained the UWM loan in July or August 2022. APP0314-0316. Milestone focused on the requirement in the August 8, 2022 UWM conditional loan approval that the Moons show that they had timely made all the monthly payments in the 12 months prior to the July 2022 loan application. Milestone quoted, and emphasized, the UWM requirement:

> The mortgage on the subject property is not reporting on credit. Verify monthly payment with 1) A VOM. 2) Original Note, OR 3) Current mortgage statement. Provide evidence that all payments in the past 12 months were timely and made by the borrower. If the mortgage was a cash-out and taken out within 30 days of the new note date, this transaction cannot close until 30 days have passed. ** 8/10 need payments covering July 2021 -July 2022. will need actual statements confirming

14

monthly obligation in lieu of spreadsheet provided. The spreadsheet cannot be tied to the mortgage at all. need actual statement **8/23/22 Due to need the mortgage statements. PENDING PAYOFF INFORMATION. (Emphasis added by Milestone).
Milestone Motion APP0315.

Milestone then presented the expert opinion of Mr. Richard S. Wang, a mortgage broker who had been brokering loans since 2002, and who had been brokering loans with UWM for eleven years. APP0560. Mr. Wang *also* focused on the 12-month requirement in para. 15 of his declaration:

"15. The central issue pertains to condition #3002, "... Provide evidence that all payments in the past 12 months were timely and made by the borrower. ... Covering July 2021 - July 2022". APP0564, ¶15.

Mr. Wang went beyond the UWM requirements and quoted guidelines of the federal lending agencies. Mr. Wang stated, in para 16, that the "Freddie Mac" guidelines require a payment history for the 12 months prior to the loan application. APP0564, ¶16. In para. 18 he stated that Fannie Mae does not allow *any* late payments in this 12-month period. ("Fannie Mae explicitly allows 0 [zero] x 60-day lates in the most recent 12 months.") APP0565, ¶18. But these federal guidelines are the *same* as the UWM requirement: that the borrower show it had made timely payments in the prior 12 months.

Mr. Wang presented his expert opinion in para. 17 of his declaration:

17. It is my opinion, based on my professional expertise, that there was no possibility that UWM would approve this loan *as payments had not been timely made within the prior 12 months.* APP0565 ¶17 (emphasis added).

But Mr. Wang presented *no evidence* that the Moons had missed any payments during the prior 12 months. Moreover, there was nothing in the voluminous evidence submitted by Milestone (totaling more than 220 pages), that suggested that the Moons had missed any payments in the 12 month period.

Mr. Wang also stated in para. 20, that there had been a default on the Moon loan in 2017, and implied that under the Fannie Mae guidelines, this 2017 default might cause UWM to deny the loan, even though there was nothing in the UWM requirements about this.

The Moon Opposition to the Motion for Summary Judgment

Mr. Moon's Opposition (APP0573) demonstrated that Mr. Wang's opinion was wrong on the facts; the Moons *had made* all the monthly payments in the prior 12 months. Moreover, the Opposition showed that *Milestone had actually verified* that the Moons had made all the payments in that period. APP0581-0582.

The Opposition recited that in April 2022, the Bankruptcy Court ordered the parties to give the Court a *full history* of the charges and payments that had been made on the loan. (Paragraph 9 of the April 27,

16

2022 Order at RJN #4). To comply with this order, Mr. Moon's attorney, John McDonnell, collected all the payment records and presented this information to Milestone's attorney, Harris Cohen. (McDonnell declaration at APP0592-93). Mr. Cohen verified the payments and put together a spreadsheet that included the information for the monthly payments from November 2020 up to May of 2022. Mr. Cohen and Mr. McDonnell jointly submitted the spreadsheet to the Court. [*Id.*] The spreadsheet showed that the Moon's had made all the monthly payments from July 2021 to May 2022. APP0610.

McDonnell declaration also included documents from Milestone's other attorney, Bernard Kornberg, confirming that that the Moons had also made the June and July payments. APP0597.

Thus, the evidence *verified by Milestone*, demonstrated that the Moons had made all the monthly payments in the 12 months up to July 2022. There was no factual basis for Mr. Wang's opinion.

The Opposition also showed that an old default in 2017 was irrelevant. Mr. Wang's own declaration quoted the Fannie Mae guidelines (in para 18) stating that there can be no late payments, "*in the most recent 12 months.*" APP0565, ¶18. Any missed payments that happened *before* the 12 months had no significance under the Fannie Mae guidelines.

17

Mr. Moon's Opposition also addressed the issues under Civ. Code. §2943 and 15 U.S.C. §1638g. It repeated the argument that §1639g required the "creditor or servicer," not an attorney, to provide the payoff statement. APP0580. The Opposition also pointed out that §1639g expressly requires an *accurate* payoff statement. The June 16, 2022 letter was excessive because it did not include a credit for the payment the Moons had made on June 6, 2022. APP0578-580. And the Moons again pointed out that under §2943(a)(5), the June 16, 2022 expired after 30 days. APP0576.

### The Order Granting the Milestone Motion.

The Bankruptcy Court granted summary judgment in a short 5-page order. APP0716. Despite the new arguments on why the June 16, 2022 letter failed to qualify under both Civ. Code. §2943 and §1639g, the Court simply reaffirmed its prior ruling that the letter qualified, and granted summary judgment on the First and Second Causes of Action. APP0717.

Milestone had never argued that the Moons had *waived* their claim that Milestone violated the RESPA regulations by failing to provide the VOM in July 2022. Yet the Court granted summary judgment on that claim, holding that the prior 2016 loan extension and Settlement Agreement had been a waiver of all claims by both parties, and that the

18

Moons "cannot base a claim on RESPA now when that claim has been waived." APP0717.

The Court also seemed to accept Mr. Wang's incorrect claim that an old default would have led UWM to deny the loan. The Court ruled that the loan had matured in 2019, and that the Moons could not establish that this would *not* have prevented the UWM loan. APP0719.

During oral argument, the Court had stated that the Moons had to prove that "but for" Milestone failure to provide the payoff statement or VOM information, UWM would have granted the loan. (Transcript of 5/24/24 hearing (Docket Entry #77) page 17, lines 1-7). Since the Court accepted the view that the old default would have prevented the loan, the Moons failed the "but for" test. (However, as shown in the legal discussion in section 2 below, under California law, the Court was required to use the "substantial factor" test for causation and not the "but for" test. Under the substantial factor test, if one factor by itself would have caused the harm, then that factor can be the cause of the damages, even if another factor was also involved. California law provides that causation is a factual issue that must be resolved at trial.)

The Court also held that the Moon's broker, Mr. Schuman, had demanded that Milestone sign a "factually inaccurate" VOM. APP0719,

line 20. Mr. Schuman had sent a VOM form to Milestone attorney Joyce Lau, stating that he had filled the form in to the best of his knowledge. APP0624. Ms. Lau never objected to the form. Mr. Schuman had inserted on the form that, "monthly payments of $6,647.50 were agreed in court beginning 11/2/2020 and these have been paid as agreed. The Bankruptcy Court was annoyed by the words, "in court." The Court stated that it had reviewed all the court records related to the Moon case, and that "the payments were not based on an agreement made in court in 2020." APP0720 lines 1-5.The Court stated that Mr. Moon could not claim damages for not receiving a "factually inaccurate VOM." [*Id.*]

Finally, the Court rejected the claim for intentional interference with prospective contract, because the Moons could not prove damages "but for" Milestone's actions.

The Court entered judgment for Milestone on June 18, 2024, and the Moons filed this appeal on June 21, 2024.

## SUMMARY OF ARGUMENT

1. There were no facts supporting the Milestone motion. Milestone presented no actual evidence that UWM would not have made the loan in the Summer of 2022. Milestone's expert's opinion was that UWM would have denied the loan because the Moons had missed some payments *in the*

20

*prior 12 months*, but he presented no evidence of any missed payments. The actual evidence showed that Moons had, in fact, made all the payments in the prior 12 months. Milestone's expert referred to an old 2017 default as possibly being a problem, but the evidence shows that UWM was aware of a prior 2019 default and was unconcerned about it. UWM continued to process the loan with full knowledge of the old default.

2. <u>The Bankruptcy Court was required to follow the "substantial factor" test for causation.</u> The application of the substantial factor test in this case provides that the misconduct of the Defendant, in failing to provide the needed payoff statement and VOM, would be a substantial factor in the denial of the loan, even if some other factor might have also influenced UWM to deny the loan. California law provides that the question of whether certain conduct was a substantial factor in causing damage is a factual issue that must be resolved by the jury at trial.

3. <u>15 U.S.C. §1639g provides that only the "creditor" or "servicer" of a loan is qualified to provide a payoff statement</u>. The Bankruptcy Court failed to follow this law.

4. <u>15 U.S.C. §1639g also requires that the payoff statement be accurate</u>. The June 16, 2022 letter sent by Milestone's attorney demanded an amount in excess of the amount owed at that date.

21

5. <u>A payoff statement sent in June 2022 cannot be a "response" to a request that is not sent until July 2022</u>. The statutes and regulations require that a lender must send a new payoff statement in response to each new written request.

6. <u>A waiver agreement signed in 2016 cannot be a waiver of a claim that did not arise until 2016</u>. A waiver requires an existing right, the waiving party's knowledge of that right, and the party's actual intention to relinquish the right.

7. <u>Milestone' misconduct breached the contract</u>. Under California law, the requirements of Cal. Civil Code §2943, that the lender provide a timely payoff statement, are incorporated in the lending contract.

8. <u>Mr. Schuman did not demand that Milestone sign a factually inaccurate VOM</u>. Mr. Schuman did not request that Milestone sign any document "as is." The information he provided was essentially accurate, and never questioned by Milestone.

LEGAL DISCUSSION

Standards for Summary Judgment

A court reviews a grant of summary judgment *de novo*. *Zetwick v. Cty. of Yolo*, 850 F.3d 436 (9th Cir. 2017).

A party is entitled to summary judgment if the "movant shows that

22

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, then the non-moving party must demonstrate the existence of a genuine dispute of material fact by, "citing to specific parts of material in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *City of Pomona v. SQM N. Am. Corp.* (9th Cir. 2014) 750 F.3d 1036. The court "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the [lower] court correctly applied the substantive law." *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999).

1. There are no facts to support Milestone's claim that UWM would not have made the July 2022 loan.

   A. The parties agree that the only relevant UWM requirement was that the Moons had timely made the monthly payments for the 12 months prior to July 2022.

The August 8, 2022 UWM Conditional Loan Approval states that the

23

borrower must show that it has made timely payments for the 12 months

prior to the July 2022 loan application. APP0051, item #3002.

In its Motion for Summary Judgment, Milestone quoted, and

*emphasized*, this UWM requirement for timely payment over the prior 12

months:

> The mortgage on the subject property is not reporting on credit. Verify monthly payment with 1) A VOM. 2) Original Note, OR 3) Current mortgage statement. *Provide evidence that all payments in the past 12 months were timely and made by the borrower.* If the mortgage was a cash-out and taken out within 30 days of the new note date, this transaction cannot close until 30 days have passed. ** 8/10 need payments covering July 2021 -July 2022. will need actual statements confirming monthly obligation in lieu of spreadsheet provided. The spreadsheet cannot be tied to the mortgage at all. need actual statement **8/23/22 Due to need the mortgage statements. PENDING PAYOFF INFORMATION.  (Emphasis added by Milestone).

APP0315.

Milestone's expert, Mr. Richard Wang, *agreed* that the relevant

requirement was timely payments over the prior 12 months. In para. 15 of

his declaration, he stated:

> " 15. The central issue pertains to condition #3002, "... *Provide evidence that all  payments in the past 12 months were timely and made by the borrower. ... Covering July 2021 - July 2022.*

APP0564, ¶15.

Mr. Wang added some information from the federal lending agencies.

In paragraph 16 of his opinion, he stated that the "Freddie Mac" guidelines

require, "a payment history for the 12-month period prior to the date of the mortgage application." APP0564, ¶16. He also referenced the "Fannie Mae" guidelines, which require the lender to review "12 months of the most recent payment activity." Finally, Mr. Wang stated in paragraph 18 that Fannie Mae requires that there not be any late payments for "the most recent 12 months" up to the date of the loan application ("Fannie Mae explicitly allows 0 [zero] x 60-day lates in the most recent 12 months.") APP0565, ¶18. But all of these federal guidelines are *the same* as the UWM requirement that the Moons show timely payments for the 12 months up to July 2022.

So Milestone's expert *confirmed* that under *both* the UWM conditional approval *and* the government guidelines, the *only* requirement was that the Moons had made timely payments from July 2021 to July 2022.

Mr. Wang then presented his expert opinion in para. 17:

> 17. It is my opinion, based on my professional expertise, that there was no possibility that UWM would approve this loan *as payments had not been timely made within the prior 12 months.* APP0565 (emphasis added).

But Mr. Wang presented *no evidence* that the Moons had missed any payments in the prior 12 months. In fact, there was nothing in the 200 pages of evidence presented by Milestone (APP0332-0366 that even suggested that the Moons had missed a monthly payment during that 12

month period.

On the contrary, all of the evidence submitted to the Bankruptcy Court shows that the Moons made all the monthly payments in the 12 months up to July 2022.

In April 2022, the Bankruptcy Court instructed the parties to provide the Court with a full history of all the charges and payments that had been made on the loan, so the Court could issue a judgment that stated the exact amounts owed by the Moons at the time of judgment. (RJN #4, page 10 ¶9).

To comply with this order, the Moons attorney, John McDonnell, collected all the payment records from the Moons and presented this information to Milestone's attorney, Harris Cohen. APP593-93. Mr. Cohen verified that the payment information was correct. Around May 13, 2022 Mr. Cohen put together a spreadsheet that contained all the information for the payments from November 2020 to May of 2022. APP0610. Mr. Cohen and Mr. McDonnell agreed that Cohen's spreadsheet was correct and submitted it to the court. The spreadsheet shows that the total of all the payments made by the Moons up to May 2022 was $126,302.50. The Court used this stipulated number in calculating the amounts due to each party under the May 25, 2022 Judgment. APP0341.

26

Thus the record of payments *verified* by both parties and *adopted* by

the Bankruptcy Court shows the following payments:

| | |
|---|---|
| 7/7/21 | $6,647.50 |
| 8/5/21 | $6,647.50 |
| 9/10/21 | $6,647.50 |
| 10/6/21 | $6,647.50 |
| 11/9/21 | $6,647.50 |
| 12/9/21 | $6,647.50 |
| 1/10/22 | $6,647.50 |
| 2/11/22 | $6,647.50 |
| 2/25/22 | $6,647.50 |
| 4/14/22 | $6,647.50 |
| 5/10/22 | $6,647.50 |

APP0610.

The McDonnell declaration also included records from Milestone's

other attorney, Bernard Kornberg, which acknowledged the following

payments: (APP0597)

| | |
|---|---|
| June 6, 2022 | $6,647.50 |
| July 13, 2022 | $6,647.50 |

Thus, the evidence *verified by Milestone*, demonstrated that the Moons

made all the monthly payments in the 12 months up to July 2022. The

Moons met all the requirements to obtain the July 2022 UWM loan.

27

B. Milestone's expert misled the court by claiming that the Fannie Mae guidelines would preclude a new loan if there had ever been any late payment in the entire history of the old loan.

1. The Fannie Mae guidelines require timely payments only in the most recent 12 months.

As outlined above, Mr. Wang's opinion included two federal lending guidelines. In para. 16 of his opinion, he presented the guideline that the lender must obtain a payment history "for the 12-month period up to the date of the mortgage application." In para 18 he states that Fannie Mae requires that there be zero late payments, "in the most recent 12 months."

Then, out of the blue, he states in para. 20 that the loan had matured in 2017, "and thus payment was overdue by well over 60 days." He implies that the default in 2017 would have affected the Moons' ability to get the loan in July 2022. But as his own declaration states, the *only* federal requirement was that there had been no late payment "in the most recent 12 months." There is no Fannie Mae requirement that there must never have been a late payment *ever in the history of the old loan*. Any missed payment in 2017 was totally irrelevant. The Moon Opposition pointed this out to the Bankruptcy Court, but the Court apparently overlooked it.

28

## 2. The evidence showed that UWM was unconcerned about an old default.

UWM's August 8, 2022 conditional loan approval shows that UWM was fully aware that there had been a Notice of Default recorded in 2019, and that UWM was completely unconcerned about that default. Page 4 of the conditional loan approval shows that UWM received a title report that disclosed the Notice of Default that Milestone recorded in September 2019. APP0051, item #0207. UWM stated that the title company should remove this as an "exception" in the title policy ("Title company to remove Notice of Default from line item #6 from the exceptions"). [*Id.*] The prior default was not an issue to UWM.

In fact, if an old default had been a "dealbreaker," then the August 8, 2022 UWM document would not even exist!  If an old default disqualified the Moons, then once UWM saw the old default in the title report, it would have *immediately stopped* processing the loan. But after becoming aware of the 2019 default, UWM continued to process the loan and issued the August 8, 2022 conditional loan approval. And UWM continued to process the loan up to at least the August 23, 2022 update of the conditional approval. APP0054. The *only* real requirement was that the Moons show they had made the monthly payments for the prior 12 months. An old default was irrelevant.

   3. The Bankruptcy Court apparently accepted Mr. Wang's false information.

In granting summary judgment, the Bankruptcy Court noted that the UWM conditional loan approval required that the Moons show the "loan is current." APP0719. The Court stated that regardless of whether Milestone provided a payoff statement or a VOM,

> "[N]othing would satisfy UWM's requirement that the Extension be current. The Extension was not current. The Extension was not merely in default. The Extension had long since matured. The facts surrounding the Extension with Milestone are long-settled, and the requirements on the face of UWM's Loan Approval Conditions simply do not align with the Moon's reality."

APP0719, lines 3-19.

The Court seems to accept Mr. Wang's incorrect argument that the loan maturity on 2017 (or 2019) would lead UWM to deny the July 2022 loan. The Court is saying that the prior loan maturity would means that the Moons could not meet UWM's requirement that the loan be "current."

But Milestone's motion (and Mr. Wang) never referred to the UWM requirement that the loan be "current." They never raised this issue, and it was never briefed.

The essential question then is, "*What does UWM mean* by the loan being 'current'"? The answer is provided in UWM's conditional loan approval: "current" means that the borrower had timely made the

30

payments for the prior 12 months.

Like all lenders, UWM requested a payoff statement. The UWM
conditional approval states: "Payoff statements to be provided for all
mortgages being paid (must reflect that loan is current). APP0051, item
#1574. The UWM document then states that "current" means providing
"current statements" showing all payments were made in the prior 12
months.

> The mortgage on the subject property is not reporting on credit.
> Verify monthly payment with 1) A VOM, 2 Original Note, OR 3)
> *Current* mortgage statement. *Provide evidence that all
> payments in the past 12 months were timely and made by the
> borrower.* APP0051, item #3002.

Thus UWM is satisfied that the loan is current if the borrower proves
timely payment over the last 12 months. There is nothing in the UWM
document that suggests that "current" means there must never have been
a prior default.

Even if the UWM document could be viewed as ambiguous, all
inferences must be drawn in favor of the Moons:

> In assessing whether summary judgment is warranted, "a court
> must view the evidence in the light most favorable to the
> opposing party" and "adhere to the fundamental principle that
> at the summary judgment stage, reasonable inferences should
> be drawn in favor of the nonmoving party." *Tolan*, 572 U. S., at
> 657, 660 (2014).

(*N.S. v. Kan. City Bd. of Police Comm'rs* (2023) ____U.S.____ [143 S.Ct.
2422, 2422-2423]

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 48
of 177

2. The Bankruptcy Court Erred by failing to follow the "substantial factor" test for causation under California law, as required by Bank of N.Y. v. Fremont Gen. Corp. (9th Cir. 2008) 523 F.3d 902.

In determining that Milestone's wrongful conduct did not cause

damages to Mr. Moon, the Bankruptcy Court applied the "but for" test.

The Court stated:

> I don't want to over simplify it, but it seems to me that — that if — *if somebody can't establish that there was a loan that would have closed but for Milestone's nonresponse* to someone's satisfaction, to the demands, then that — that would follow. But if there was never any ability or proof that such a loan would happen, then it doesn't matter, it's a no harm, no foul.

Transcript 5/24/24 hearing (Docket Entry #77) page 17, lines 1-7. (emphasis added)

Over 30 years ago, California rejected the "but for" test for causation of

damages, and stated that the correct California law is to determine if the

defendant's wrongful conduct was a "substantial factor" in causing the

harm to the plaintiff. *Mitchell v. Gonzales* (1991) 54 Cal.3d 1041.

> A substantial factor in causing harm *is a factor that a reasonable person would consider to have contributed to the harm*. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

California Jury Instruction (CACI) 430. (emphasis added)

The old "but for" test is not entirely eliminated; it is "subsumed" under

the "substantial factor" test. The California Supreme Court explained, in

*Viner v. Sweet* (2003) 30 Cal.4th 1232 at 1240, that the "but for" test may

be applicable in some situations, but the "substantial factor" test must be used when there are two (or more) *concurrent independent causes*. "[If] two forces are actively operating . ... *and each of itself is sufficient to bring about harm to another*, the actor's negligence may be found to be a substantial factor in bringing it about." *[Id.]*

The case law also states that it is improper to give the "but for" instruction when the "substantial factor" test applies. "The but-for test is inappropriate in cases when two forces are actively operating and each is sufficient to bring about the harm." *Lopez v. The Hillshire Brands Co.* (2019) 41 Cal.App.5th 688. "The 'but for' limitation on proof of causation does not apply if the wrongful conduct would alone have produced the harm even without the contribution by other forces." *State ex rel. Wilson v. Superior Court* (2014) 227 Cal.App.4th 579, 606 , *following*, *In re Ethan C.* (2012) 54 Cal.4th 610, 640.

The California Supreme Court recently confirmed the breadth of the "substantial factor" test: "[The substantial factor test] is a 'relatively broad' standard, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Himes v. Somatics, LLC* (2024) 16 Cal.5th 209, 225.

The case law provides that causation is a question of fact for the jury.

*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 252. The

law was further summarized in *Raven H. v. Gamette* (2007) 157

Cal.App.4th 1017:

> "[C]ausation in fact is ultimately a matter of probability and common sense: '[A plaintiff] is not required to eliminate entirely all possibility that the defendant's conduct was not a cause. It is enough that he introduces evidence from which reasonable [persons] may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no [person] can say with absolute certainty what would have occurred if the defendant had acted otherwise. *If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists. In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case.*'"

*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1029-1030 (emphasis added).

The California Supreme Court has quoted and adopted the above

italicized language. *Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th

291, 308. The key holding is: *If, as a matter of ordinary experience, a*

*particular act or omission might be expected to produce a particular*

*result, and if that result has in fact followed, the conclusion may be*

*justified that the causal relation exists.*[Id.]

In the present case, Milestone failed to provide the payoff statement

that UWM needed, and Milestone failed to provide the VOM that UWM

34

needed. After not getting these documents, UWM denied the loan. The "causal relation" is clear.

Plaintiff's expert, Robert Schuman, testified that the lack of the payoff statement, by itself, would have resulted in a denial of the UWM loan, and that the lack of the VOM, by itself. would have resulted in denial of the UWM loan. APP0013, ¶13.]

As noted above, Milestone has argued (incorrectly) that a default in 2017 could have resulted in the denial of the UWM loan. But even if the Milestone argument is included, there are three *independent concurrent factors*, each of which could be a cause of UWM denying the loan. The Bankruptcy Court was required to apply the substantial factor test for causation. And the Court was further required to have the issue resolved by a jury. The grant of summary judgment was error.

3. Section 1639g requires that the lender or servicer send the payoff statement; a letter from an attorney is not sufficient.

15 U.S.C. §1639g expressly provides that the payoff statement must be sent by the "creditor" or "servicer" of a home loan:

> A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.

The statute includes detailed definitions of who is a "creditor" (15

U.S.C. §1602(g), and who is a "servicer" (15 U.S.C. §1602(dd)(7)).

The case law holds that an attorney for the creditor is *not* a "creditor" or "servicer" under §1639g. "Defendant's counsel does not qualify as a creditor or assignee per TILA's definitions." *Formica v. Parke Bancorp, Inc.* (D.N.J. Nov. 30, 2023, Civil Action No. 21-13867-KMW-SAK) 2023 U.S. Dist. LEXIS 213937, at *8-9). "Fifth Third [the lender] qualifies as a "creditor" under the statute for purposes of the Larkins' home loan. However, *Fifth Third's foreclosure counsel does not*, and there is no argument that Fifth Third's foreclosure counsel is a "servicer of a home loan," an "assignee," or a "servicer." *Larkins v. Fifth Third Mortg. Co.* (S.D. Ohio 2019) 376 F. Supp. 3d 784, 789 (emphasis added.) The statute does not permit an agent to provide the payoff statement. "Critically, none of these provisions [§1639] include the term "agent." *Formica v. Parke Bancorp, Inc.* supra, 9-10.[3]

Moreover, while §1639g allows persons "acting on behalf" of the borrower to *send* a request for a payoff, it provides that only a "creditor" or "servicer" is qualified to *provide* the payoff statement. Mr. Moon's reliance on the express terms of the statute was not "frivolous."

---

[3] Unlike §1639g, Cal. Civil Code §2943 permits an "authorized agent" to provide the payoff statement.

36

Finally, requiring the creditor or servicer to provide the statement makes good sense. As explained in Section 4 below, the statute requires that the amount in the payoff statement be "accurate." There may be many people, such as attorneys, loan brokers or real estate agents, who have some knowledge about the loan, but only the creditor or servicer is likely to know the current *accurate* payoff amount.

4. The June 16, 2022 attorney letter was defective because it contained inaccurate information.

Section 1639g expressly requires that the creditor, "shall send an accurate payoff balance..." The Consumer Financial Protection Bureau has stated that, "payoff statements should be issued according to the best information available at the time." 78 Fed. Reg. 10902 (Feb. 14, 2013). This includes a requirement to credit all payments made by the borrower as of the date the payment is received. 12 CFR 1026.36(c)(1)(i).

The Federal Reserve Board has outlined the dangers posed by an excessive payoff demand.

> [A] servicer's failure to provide accurate payoff statements in a timely fashion can cause substantial injury to consumers. . . . . Consumers may want to refinance a loan to obtain a lower interest rate or to avoid default or foreclosure, but may be impeded from doing so due to inaccurate or untimely payoff statements. These consumers thus incur additional costs and may be subject to financial problems or even foreclosure.

73 Fed. Reg. 44,522, 44,570 (July 30, 2008).

The statute is designed to protect the consumer from inaccurate demands. To promote this protective purpose:

> "[A] court must construe 'the Act's provisions liberally in favor of the consumer' and require absolute compliance by creditors. *In re Ferrell*, 539 F.3d 1186, 1189 (9th Cir. 2008)..."Even technical or minor violations of the TILA impose liability on the creditor."

*Hauk v. JP Morgan Chase Bank United States* (9th Cir. 2009) 552 F.3d 1114, 1118.

The Moons made the $6,647.50 payment for June on June 6, 2022. On June 7, 2022, Moon's attorney, John McDonnell, sent an e-mail to Milestone's attorney, Harris Cohen, about the June 6 payment.

> "Ms. Moran believes that Moon should make his usual monthly payment to Milestone. After he does, you will need to update your payoff demand as of 6/24." APP0592 §6.

Milestone's other attorney, Mr. Kornberg, later confirmed that Milestone received the payment on June 6, 2022 APP 0597.

Thus, both Milestone and Milestone's attorneys knew that Mr. Moon had made the June 6, 2022 payment, and Milestone was required to credit that payment in the attorney's June 16, 2022 letter. Milestone did not do so. Instead, the June 16 letter demanded the principal and all daily interest owed to June 16, 2022, without any credit for the June 6, 2022 payment. APP0336.

This defect in the June 16, 2022 letter was brought to the Court's

attention [APP0580] but the Bankruptcy Court continued to rule that the June 16, 2022 letter qualified under the statute.

California Civil Code §2943 does not contain an *express* requirement that the payoff statement be "accurate. However, §2943(a)(5) *does* require that the payoff statement set forth, "the amounts required *as of the date of preparation* [of the statement]" to fully pay off the loan. Thus the statute requires that all payments received up to the date of the payoff statement must be credited. California case law also states that the payoff statement must be accurate. *Venhaus v. Shultz* (2007) 155 Cal.App.4th 1072, 1080.

The June 16, 2022 letter did not meet the requirements of the statute. This defect under §2943(a)(5) was also brought to the attention of the Court [APP0578], but the Court again ruled that the June 16, 2022 letter complied with the statute.

It must be stressed that the purpose of the payoff statement is *not* to give attorneys a piece of paper to argue about, the purpose is to identify the correct payoff full amount *for the new lender*.

39

5. A June 16, 2022 letter cannot be a valid response to a written request that is not sent until July 15, 2022. The statutes require a new payoff statement in response to each new request.

As outlined above, the Moons established that Milestone never provided *any* response to the written request for a payoff statement that was sent on July 15, 2022. In fact, the evidence showed that Milestone *expressly refused* to respond to the request. On July 25, 2022 the representative at Milestone told the escrow company to, "contact the borrowers let them know that the reason why Milestone Financial is not processing payoff due to on going dispute of the amount and the borrower's need to call Milestone Financial to settle the dispute." [sic] APP0060.

Since Milestone never responded to the July 15, 2022 request, Milestone decided to argue that the prior June 16, 2022 attorney letter could be a proper response because it did not contain an "expiration date." The Bankruptcy Court accepted this. The Court stated that the June 16 letter was adequate, because it did "not purport to expire on the date it was issued." APP0301, line 22. The Court apparently ruled that once the attorney sent the June 16, 2022 letter, Milestone did not have to respond to any future requests for a payoff statement. That is not the law. Both the federal and state statutes require that the lender respond to each new

request for a payoff statement with an updated statement that states the amount due *as of a specific date*.

This is simply a reflection of how a loan works. The borrower makes a new payment each month, and interest on the loan accrues on a daily basis. Thus, a payoff statement sent in late June must account for the payments and interest that occur in June. A payoff statement sent in late July must account for the new payment and additional interest in July.

As noted above, 12 CFR 1026.36(c)(3) provides that the lender must provide a payoff statement showing the amount that is owed at a *specific date*. Likewise, Civ. Code §2943(a)(5) states that the payoff statement must state "the amount owed as of a *specific date*." A lender cannot respond to a request by saying, "I sent you a statement 6 months ago, so I don't need to send you another."

Civ. Code §2943(e)(4) also provides:

> *Each failure* to prepare and deliver the statement, occurring at a time when, pursuant to this section, the beneficiary is required to prepare and deliver the statement, creates a separate cause of action, but a judgment awarding an entitled person a forfeiture, or damages and forfeiture, for any failure to prepare and deliver a statement bars recovery of damages and forfeiture for any other failure to prepare and deliver a statement, with respect to the same obligation, in compliance with *a demand therefor made within six months before or after the demand as to which the award was made*. (emphasis added).

So the lender must respond to *each* request, and "each failure" to

41

respond can result in an award of damages. But there is only one such award for multiple failures that occur over the course of a year.

And Milestone *always knew* that it had to send a new payoff statement in response to any new request. The record shows Milestone sent a new payoff statement on November 28, 2022, December 15, 2022, January 3, 2023, February 7, 2023 and March 24, 2024. APP0597-0606. Milestone's claim that the June 16, 2022 letter covered any and all future requests was simply an attorney's belated argument to come up with some excuse for violating the statutes.

Finally, under California law, a payoff statement will always "expire" after 30 days. Civ. Code §2943(a)(5) states that the payoff statement must include an amount covering "a period of time, *not to exceed 30 days.*" Even if the June 16, 2022 letter was valid, it expired after 30 days. This is why the escrow company sent a new request for a payoff statement on July 15, 2022. APP0067.

6. A waiver agreement signed in September 2016 does not preclude an action for wrongdoing that did not occur until July 2022.

In their third cause of action, the Moons alleged that Milestone had violated the provisions of RESPA by failing to provide *any response* to the repeated requests for a VOM in July 2022. 12 U.S.C. §2605(k) and 12

C.F.R. §1024.36(d), require that a loan servicer provide a response to a request for information no later than 30 business days after receiving the request. In 2022, Milestone was the servicer on its loan to the Moons. The evidence demonstrated that in July 2022, Mr. Schuman sent several requests for a VOM to Milestone (though its attorney Joyce Lau), and Milestone never responded to any of these requests.

The Bankruptcy Court granted summary judgment to Milestone on this issue by ruling that when the Moons signed the September 2016 Settlement Agreement, the Moons had waived their claims for Milestone's violations that took place in 2022. The Court stated:

> As to the third cause of action, the court previously determined in its Order that both Plaintiff E. Mark Moon and Milestone waived their respective arguments as to who deceived whom regarding the personal-versus-business nature of the original loan upon the making of the Extension [in September 2016]. As a matter of law (and of equity and fairness), Mark cannot base a claim on the Real Estate Settlement Procedures Act ("RESPA") now when that claim has been waived.

APP0707, lines 12-19.

The Court is ruling that the Moons' claim for violations of the law in 2022 were waived by an agreement they executed in 2016. That is completely contrary to the law of waiver. "Waiver is the intentional relinquishment of a known right after knowledge of the facts." *City of Ukiah v. Fones* (1962) 64 Cal. 2d 104, 107. "Waiver requires an existing

right, the waiving party's knowledge of that right, and the party's "actual intention to relinquish the right." *Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475. The 2016 document could not be a waiver of RESPA rights that did not exist until 2022.

Also, Milestone *never claimed* that the 2016 agreement waived claims for its violations of the regulations in July 2022. But the Bankruptcy Court found that such a waiver existed.

## 7. Milestone's misconduct was a breach of contract.

Milestone claimed that it's misconduct in July 2022 could not be a breach of contract, because the contract did not require them to provide a payoff statement after the loan matured in July 2019. Milestone presented no law suggesting that a borrower has no right to perform the contract after the loan matures.

Moreover, this argument overlooks the fact that under California law, the terms of statutes in effect when the contract is entered become part of the contract.

> It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.
> *Von Hoffman v. Quincy* (1867) 71 U.S. 535, 550.

This settled rule of law has been repeatedly confirmed over the last 150

44

years. See *Norfolk & W. Ry. v. American Train Dispatchers' Assoc.*(1991) 499 U.S. 117, 130; *Reding v. Texaco, Inc.* (9th Cir. 1979) 598 F.2d 513, 519; *Meriweather Inv. Co. v. Lampton* (1935) 4 Cal.2d 697, 703.

Thus, the requirements of California Civil Code §2943 were made part of the 2015 lending contract, and Milestone was obligated, by this contract, to provide the payoff demand in accordance with the statute. The failure to provide the statement was a breach of the contract.

### 8. Mr. Schuman did not demand that Milestone sign a false Verification of Mortgage.

In its Order granting summary judgment, the Bankruptcy Court included an accusation that the Moons' loan broker, Robert Schuman had "demanded" that Milestone sign a "factually inaccurate" VOM. APP0719 line 19. Mr. Schuman had sent Milestone's attorney, Joyce Lau, a "pre-filled" VOM which stated, "As the loan is in legal dispute, monthly payments of $6,647.50 were agreed in court beginning 11/2/2020 and have been paid as agreed." *[Id.]*

But Mr. Schuman did not demand that Milestone sign the VOM as is, and his statement that the parties agreed in November 2020 to the $6,647.50 amount was accurate: he just mistakenly believed that the parties made the agreement "in court," which was an immaterial error that Milestone never objected to.

45

A. Mr. Schuman did not demand that Milestone sign the document "as is."

Mr. Schuman provided the history on the VOM to the court in his declaration filed January 24, 2024. He included all the e-mails that he sent to Ms. Lau, requesting that she get Milestone to provide a VOM. The first e-mail was sent on July 15, 2022, and stated:

*Hello Joyce,*

*Attached is the "verification of mortgage". <u>I completed it as accurately as possible based on the facts I have</u>. We are close to closing and wrapping this up and in need of the attached documents. I appreciate your assistance on the matter.*
[APP0041]

The e-mail shows that Mr. Schuman attempted to complete the VOM "as accurately as possible..." He is sending it in a friendly fashion to Ms. Lau, and he is not "demanding" that Milestone sign it "as is.'

A few days later, Mr. Schuman sent another friendly e-mail:

*Hello Joyce,*

*I want to confirm you received my email and documents. Did you have all that you need to get the VOM completed?*
[Id.]

Mr. Schuman is offering to provide Ms. Lau with any further items or information Ms. Lau or Milestone needs. This would include correcting any items that Ms. Lau said she did not like.

Ms. Lau's only response was in her July 19, 2022 e-mail:

46

*Hello Robert,*

*I received your email last week and forwarded it to my client. I have not heard back though. Will keep you posted.  Thanks,*
    [Id.]

That was the only information that Mr. Schuman received from Ms. Lau. No one ever claimed the $6,647.50 number was inaccurate, and no one told Mr. Schuman that the words "in court" should be removed.

### B. Mr. Schuman's statement that the parties agreed to the $6,647.50 amount in November 2020 was accurate.

As shown in Section 1 above, the information that the two attorneys submitted to the court in May 2022 showed that the parties had agreed to the $6,647.50 amount in November 2020. Mr. Schuman's only error was his belief that the parties agreed to this "in court." But neither Ms. Lau nor anyone else at Milestone ever objected to this language.

Milestone's only response was that it did not *expressly agree* to the $6,647.50 number. APP0670. But an express agreement is not required; a party may accept an offer by conduct. As stated in Witkin, Summary of California Law (10th Ed.) *Contracts*, §117, a party's agreement, "may be partly written and partly oral statements or conduct." Witkin emphasizes that "consent may be manifested by conduct as well as words." [*Id.*] California Civil Code §1584 expressly provides, "the acceptance of the consideration offered with a proposal, is an acceptance of the proposal."

The evidence establishes that the Moons proposed the $6,647.50 number in November 202o and paid that amount from that time forward. The evidence also showed that Milestone continually accepted that amount. The Moons and Milestone agreed to the $6,647.50 in November 2020.

## CONCLUSION

The Bankruptcy Court erred in granting summary judgment. Milestone presented no facts to support its claim that UWM would not have made the loan in July 2022. The Bankruptcy Court failed to follow the "substantial factor" rule California law for determining causation of damages. Under that rule, the issue of causation should be presented to a jury. This Court should reverse the grant of summary judgment.

Date:  **September 3, 2024**          _____/s/ John McDonnell____
                                            John P. McDonnell, Esq.


## RULE 8015 CERTIFICATION OF COMPLIANCE

This document complies with the word limit of Fed. R. Bankr. Proc. 8015(a)(7)(B), because excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 10,780 words including the words in the footnotes. This word count is based on the word-count tool of the word processor.

Date:  September 3, 2024          _____/s/ John McDonnell____
                                            John P. McDonnell, Esq.

48

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the APPELLANT'S OPENING BRIEF on this date with the Clerk for the District Court for the Northern District of California using the Court's Electronic Filing system. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 3, 2024, at San Francisco, California.

_____ /s/ John McDonnell_____

49

# EXHIBIT "3"

1  MILLER NASH LLP
   Bernie Kornberg
2  Bernie.Kornberg@MillerNash.com
   340 Golden Shore, Suite 450
3  Long Beach, California 90802
   Telephone:    562.435.8002
4  Facsimile:    562.435.7967

5  Attorneys for Defendant and Appellee
   Milestone Financial, LLC
6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                          SAN FRANCISCO DIVISION

11

12  E. MARK MOON, an individual,              Case No. 24-cv-04003-CRB

13              Plaintiff and Appellant,       Appeal From the Bankruptcy Court
                                               Adversary Case No. 22-03106
14        v.
                                               **APPELLEE'S BRIEF**
15  MILESTONE FINANCIAL, LLC, a California
    limited liability company,

16              Defendant and Appellee.
17

18

19

20

21

22

23

24

25

26

27

28

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

                                                              APPELLEE'S BRIEF
                                                              24-CV-04003-CRB

1

## TABLE OF CONTENTS

2                                                                                          **Page**

3   I. JURISDICTIONAL STATEMENT ........................................................ 1

4   II. STATEMENT OF ISSUES PRESENTED; STANDARD OF REVIEW .................................. 1

5   III. STATEMENT OF THE CASE ............................................................ 2

      A.    The Loan ......................................................... 2

6         B.    The Default and the Prior Litigation on the Loan .................................. 2

7         C.    The Post-Judgment Loan Payoff ........................................ 3

      D.    The Current Litigation ................................................ 4

8   IV. SUMMARY OF ARGUMENT .............................................................. 5

9   V. THIS COURT SHOULD AFFIRM THE BANKRUPTCY COURT'S DECISION ................. 6

10        A.    Each Cause of Action Fails as the Undisputed Facts Demonstrated that Mark Moon was Not Damaged by Any Alleged Error by Milestone ................... 6

11             1.    The Bankruptcy Court's Decision ................................. 6

12             2.    Mark Moon's Voluntary Partial Payments are Not Evidence of an Agreed Upon Payment Plan ................................. 10

13             3.    The Failure to Pay the Loan at Maturity Was Not Cured By The Passage of a Year ................................. 13

14             4.    The Substantial Factor Test, to the Extent It Applies, Does Not Change the Outcome ................................. 14

15        B.    Each of Cause of Action Fails on Independent Grounds ..................... 15

16             1.    The First Cause of Action for California Civil Code § 2943(c) ............. 15

17             2.    The Second Cause of Action for 15 U.S.C. §1639g ................. 18

18             3.    The Third Cause of Action for Violation of RESPA ................. 21

           4.    The Fourth Cause of Action for Breach of Contract ................. 22

19             5.    The Fifth Cause of Action for Intentional Interference with Contractual Relations ................................. 22

20  VI. CONCLUSION ................................................................ 24

21

22

23

24

25

26

27

28

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- i -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 69
of 177

1

**TABLE OF AUTHORITIES**

2
                                                               **Page**

3

**CASES**

4

*Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988)................................................ 1

*Daniels v. SCME Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126 (C.D. Cal. 2010).......................... 20

5

*Donell v. Kowell*, 533 F.3d 769 (9th Cir. 2008)................................................................ 1

*Formica v. Parke Bancorp, Inc.*, 2023 WL 8295254 (D.N.J. Nov. 30, 2023).............................. 20

6

*Fox Paine & Co., LLC v. Twin City Fire Ins. Co.*, 104 Cal. App. 5th 1034 (2024) .................... 12

*Galindo v. Financo Fin., Inc.*, 2008 WL 4452344 (N.D. Cal. Oct. 3, 2008)............................. 20

7

*Hahn v. Diaz-Barba*, 194 Cal. App. 4th 1177 (2011)............................................... 23

*Harris v. Whittier Bldg. & Loan Ass'n*, 18 Cal. App. 2d 260 (1936) ........................................ 12

8

*Hunt v. Smyth*, 25 Cal. App. 3d 807 (Cal. Ct. App. 1972)................................................ 12

*In re Moon*, 2024 WL 1635549 (9th Cir. Apr. 16, 2024) ...................................................... 3

9

*In re Moon*, 648 B.R. 73 (B.A.P. 9th Cir. 2023)......................................................... 3

*In re Sienega*, 619 B.R. 405 (B.A.P. 9th Cir. 2020), *aff'd*, 18 F.4th 1164 (9th Cir. 2021)............. 1

10

*Jackson v. Fox*, 2018 WL 8493116 (C.D. Cal. Oct. 9, 2018).................................................. 23

*Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401 (9th Cir. 2011) ................................ 21

11

*Larkins v. Fifth Third Mortg. Co.*, 376 F. Supp. 3d 784 (S.D. Ohio 2019) ................................ 20

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) .................................................................. 18

12

*Mayes v. Bryan,* 139 Cal. App. 4th 1075 (2006) .............................................................. 15

*McSherry v. City of Long Beach*, 584 F.3d 1135 (9th Cir. 2009) ...................................... 1, 9

13

*Phoenix Eng'g & Supply Inc. v. Universal Elec. Co.,* 104 F.3d 1137 (9th Cir. 1997) ................ 23

*Reding v. Texaco, Inc.*, 598 F.2d 513 (9th Cir. 1979) ........................................................ 22

14

*Rosenaur v. Scherer*, 88 Cal. App. 4th 260 (2001) ........................................................... 20

*Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953 (1997) .............................................. 14

15

*Sellman v. Crosby*, 20 Cal. App. 2d 562 (1937) ............................................................... 12

*Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Loc. 996*, 302 F.3d 998

16

    (9th Cir. 2002).......................................................................................... 12

*Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997) ................................................... 13

17

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) .................. 1

*Thorns v. Sundance Properties*, 726 F.2d 1417 (9th Cir. 1984) ............................................ 19

18

*Viner v. Sweet*, 30 Cal. 4th 1232 (2003) ..................................................................... 15

*Von Hoffman v. City of Quincy*, 71 U.S. 535 (1866) ......................................................... 22

19

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (1996).......................... 23

*Yanez v. Plummer*, 221 Cal. App. 4th 180 (2013) ...................................................... 14, 15

20

**STATUTES**

21

12 U.S.C. § 2605 .............................................................................................. 21

12 U.S.C. § 2606 .............................................................................................. 21

22

15 U.S.C. § 1602 .............................................................................................. 18

15 U.S.C. § 1639g .............................................................................................. 18

23

Cal. Civil Code §2943 .................................................................................... 15, 17

**OTHER AUTHORITIES**

24

12 C.F.R. § 1024.36 ........................................................................................... 21

25

**RULES**

Fed. R. Bankr. P. 8002 ........................................................................................ 1

26

**TREATISES**

65 C.J.S. Negligence § 207 .................................................................................. 15

27

28

1

## I. JURISDICTIONAL STATEMENT

2      The bankruptcy court has jurisdiction of matters "arising under title 11 or arising in or

3  related to a case under title 11."  28 U.S.C § 157(b); see also 28 U.S.C § 1334(b).  The adversary

4  proceeding was filed by appellant E. Mark Moon ("Mark Moon") on September 3, 2022, while

5  the bankruptcy case of *In re Mark E. Moon*, Case No. 20-30711, was still open and pending.  AA

6  0001.  Appellee, Milestone Financial, LLC ("Milestone"), does not challenge the bankruptcy

7  court's jurisdiction to hear this adversary proceeding.

8      This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 158(a), (b).  The

9  Judgment for Defendant (the "Judgment") (AA 0733) appealed by Mark Moon constitutes a final

10  judgment in the action for purposes of appeal.  *See Budinich v. Becton Dickinson & Co.*, 486 U.S.

11  196, 200 (1988) ("A 'final decision' generally is one which ends the litigation on the merits and

12  leaves nothing for the court to do but execute the judgment").

13      All appeals were perfected within the proper time period.  Fed. R. Bankr. P. 8002.  The

14  Judgment was entered on June 18, 2024.  AA 0733.  Mark Moon filed his notice of appeal as to

15  the Judgment less than 14 days later on June, 2024.  AA 0736.

16

## II. STATEMENT OF ISSUES PRESENTED; STANDARD OF REVIEW

17      The sole issue raised by this appeal is whether the bankruptcy court correctly granted

18  summary judgment in Milestone's favor.

19      This Court reviews the bankruptcy court's decision to grant summary judgment *de novo*.

20  *In re Sienega*, 619 B.R. 405, 408 (B.A.P. 9th Cir. 2020), *aff'd*, 18 F.4th 1164 (9th Cir. 2021); *see*

21  *also Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008).  In doing so, this Court is not limited by

22  the bankruptcy court's reasoning, but may "may affirm on the basis of any ground supported by

23  the record." *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009).  Thus, "when

24  reviewing a grant of summary judgment, this court sits in the same position as the district court

25  and applies the same summary judgment test that governs the district court's decision.*"  T.W.*

26  *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

27

28

Miller Nash LLP
Attorneys at Law
Long Beach

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 71
of 177

# III.  STATEMENT OF THE CASE

**A.     The Loan**

On or about June 23, 2015, Mark Moon and his wife, Lori H. Moon ("Lori Moon") (and collectively, the "Moons") took out a refinance loan (the "Loan") from Milestone in the amount of $795,000.00, evidenced by a Promissory Note dated June 23, 2015 (the "Note").  AA 0388. The Loan originally had a maturity date of July 31, 2017. AA 0388.  Repayment of the Note was secured by a deed of trust against the real property located at 11 Mandalay Court, Redwood City, CA 94065 (the "Mandalay Property").  AA 0540 at ¶ 2.  As part of the Loan origination, the Moons signed an Affidavit Regarding Loan Purpose, along with other documents, in which they affirmed that the Loan proceeds were for "business, commercial, or investment purposes."  AA 0542 at ¶ 15; AA 0379.

**B.     The Default and the Prior Litigation on the Loan**

The Moons failed to make the Loan payments and Milestone placed the Loan in default. AA 0540 at ¶ 3.  This resulted in the Moons and Milestone entering into the Settlement Agreement, Indemnity and First Amendment to Promissory Note Secured by Deed of Trust (the "Settlement Agreement").  AA 0543 at ¶ 18.  The Settlement Agreement extended the Note's maturity date to July 31, 2019, reduced the interest rate from 11.30% to 11.05%, and excused (but did not forgive) the prior missed payments on the Note.  AA 0396-0399.

The Moons failed to pay the Note balance on the July 31, 2019 maturity date.  AA 0543 at ¶ 4.  Milestone proceeded with foreclosure proceedings as to the Mandalay Property.  AA 0543 at ¶ 4.  Milestone never agreed to any further maturity date extension or any other forbearance or modification of the Loan.  AA 0543 at ¶ 5.

In response to the foreclosure proceedings, the Moons brought litigation in San Mateo Superior Court regarding the validity and amount of the debt.  AA 0011 at ¶ 11.  On September 10, 2020, after losing a motion for a preliminary injunction to stay foreclosure, Mark Moon filed for Chapter 13 bankruptcy.  AA 0010 at ¶ 5.  The case was converted to one under Chapter 11 on November 24, 2020.  AA 0010 at ¶ 5.

The Moons then removed the state court litigation to the bankruptcy court as adversary

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 2 -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 72 of 177

case number 20-03117 (the "Prior Adversary Proceeding").  AA 0011 at ¶ 11.  Both parties filed motions for summary judgment.  AA 0482 at lines 1-2.  After summary judgment, the court granted judgment as to the Moons on a sole cause of action, with the remaining causes of action being abandoned.  AA 0482 at lines 3-9.

The bankruptcy court then entered the Judgment for Plaintiffs (the "Prior Adversary Judgment").  In the Prior Adversary Judgment, the bankruptcy court determined that, amongst other things, that the Note matured on August 1, 2019, that upon the maturity date interest accrued at 7%, and that the Note balance as of May 13, 2022 was $751,009.91 with daily interest of $140.82 accruing thereafter.  AA 0482-0483.  The bankruptcy court further stated in the Prior Adversary Judgment that "[a]ll other terms and conditions of the note, deed of trust, Settlement Agreement, Indemnity and First Amendment to Promissory Note secured by Deed of Trust and other loan documents remain in full force and effect."  AA 0483.

Upon entry of the Prior Adversary Judgment, both the Moons and Milestone appealed the bankruptcy court's decision to the Bankruptcy Appellate Panel for the Ninth Circuit (the "BAP"), which affirmed the decision.  *In re Moon*, 648 B.R. 73 (B.A.P. 9th Cir. 2023).  Both parties then appealed the BAP's decision to the Ninth Circuit, which also affirmed.  *In re Moon*, 2024 WL 1635549 (9th Cir. Apr. 16, 2024).

## C.      The Post-Judgment Loan Payoff

In mid-2022, Lori Moon hired Robert Schuman ("Schuman") of Network Financial Group ("Network Financial") to act as her loan broker to refinance the Loan.  AA 0496 at lines 1-11.  Network Capital transmitted Lori Moon's application for a refinance with United Wholesale Mortgage ("UWM").  AA 0490 at lines 2-12.  UWM provided a conditional approval to Lori Moon.  AA 0494 at lines 11-15.  Mark Moon alleged that the conditional approval was at an interest rate of 4.9%.  AA 0012 at ¶ 17.  Mark Moon personally never applied for a loan with UWM.

Upon receiving the conditional approval, Old Republic Title Company ("ORTC"), Lori Moon's chosen escrow company, sent requests for payoff demands to Milestone on March 26, 2022 and June 2, 2022.  AA 0012 at ¶ 19.  Milestone responded with a payoff demand on June

1   16, 2022.  AA 0336.  Lori Moon was unable to close the loan with UWM as, at the very

2   minimum, she was ineligible for a refinance loan under UWM's underwriting guidelines as Lori

3   Moon was in default on payments on the Loan.  AA 0565 at ¶ 17.

4          In April of 2023, Network Financial transmitted Lori Moon's loan application to Kind

5   Lending, LLC ("Kind Lending").  AA 0490 at lines 15-23.  Kind Lending had less strict

6   underwriting guidelines and the loan was ultimately approved without the requirement of proof of

7   payment history.  AA 0492 at lines 6-12.  ORTC sent a new request for a payoff demand to

8   Milestone and Milestone timely provided a response.  AA 0013 at ¶ 30.  The refinance loan with

9   Kind Lending closed on May 4, 2024.  AA 0013 at ¶ 30.  The Kind Lending Loan has an interest

10  rate of 7.625%.  AA 0013 at ¶ 32.

11  **D.      The Current Litigation**

12         On September 13, 2022, Mark Moon filed this litigation.  AA 0003 at ¶17.

13         The operative complaint in the matter is the Second Amended Complaint (the "SAC").

14  Mark Moon remains the sole plaintiff on the SAC.  AA 0010.  The SAC generally alleges that the

15  sole reason UWM denied the refinance loan was that Milestone did not provide the requested

16  payoff demands and verifications of mortgages.  On that basis, and despite the fact that he was

17  not an applicant and is not a borrower on the Kind Lending loan, Mark Moon asserts he is entitled

18  to the difference in interest between the 4.9% that was part of the UWM conditional loan

19  approval and the 7.625% rate of interest on the Kind Lending loan that Lori Moon obtained.  AA

20  0013 at ¶32.  On that basis, the SAC alleges causes of action for (1) California Civil Code §

21  2943(c); (2) 15 U.S.C. §1639g; (3) Violation of RESPA; (4) Breach of Contract; and (5)

22  Intentional Interference with Contractual Relations.  AA 0013-0015.

23         After filing the SAC, Mark Moon filed a motion for partial summary judgment in which

24  he sought a determination by the bankruptcy court that Milestone had failed to comply with

25  certain statutory requirements for responding to payoff demands.  AA 0021-30.  Milestone

26  opposed the motion (AA 0100) and Mark Moon replied (AA 0273).  After hearing, the

27  bankruptcy court denied the motion in its entirety.  AA 0300.

28         Afterwards, Milestone filed its motion for summary judgment or partial summary

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 4 -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 74
of 177

1   judgment.  AA 0305.  Mark Moon opposed it (AA 0573) and Milestone replied (AA 0638).  After

2   hearing, the bankruptcy court entered an order granting the motion in full.  AA 0716.  The

3   bankruptcy court then entered the Judgment in favor of Milestone and against Moon on the SAC.

4   AA 0733-0734.

5         Mark Moon appeals the Judgment to this Court.  AA 0736.

6

### IV.  SUMMARY OF ARGUMENT

7         This appeal arises out of long-standing litigation between Mark Moon and Milestone

8   regarding the refinance loan he and Lori Moon took out from Milestone in 2015.  In 2022, the

9   bankruptcy court entered the Prior Adversary Judgment which found that the Loan matured in

10   2018 and set forth the amount of debt owed on the Note as of May of 2022.

11         After receiving this judgment, Lori Moon sought to refinance the debt individually.  She

12   applied to UWM for a loan and, in August of 2022, received a conditional approval from UWM

13   that required her to provide evidence that, regarding the Moons' loan with Milestone, "that all

14   payments in the past 12 months were timely and made by the borrower."  Lori Moon could not

15   meet this condition.  The Loan had matured in 2018 and thus was past due and owing each and

16   every day of the prior twelve-month period.  Thus the Moons had failed to meet the condition of

17   timely payments.  Lori Moon was simply ineligible for the loan.

18         Rather than turn to other lenders with different underwriting conditions, Lori Moon, her

19   attorneys and her brokers created a scheme where they would make a payment of $6,647.50 each

20   month during this twelve-month period, then claim this was part of some sort of court ordered or

21   voluntarily repayment plan.  But no such voluntary or involuntary payment plan existed, and

22   these payments were entirely voluntarily partial payments which did not extinguish the

23   requirement to pay the debt in full.  The debt always remained in default.

24         Lori Moon, through her broker, then made numerous requests to Milestone to provide

25   written confirmation that the monthly payments of $6,647.50 were made and constituted timely

26   payments under the Loan.  Milestone provided written responses as required by law, but refused

27   to falsely state to a potential lender that the Moons were current on a loan when they,

28   unambiguously, were not.  As Lori Moon did not meet the conditions for the UWM loan, she was

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 5 -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 75
of 177

1    denied.

2          Mark Moon, *despite not being a borrower on the proposed UWM refinance loan*, brought

3    legal action against Milestone alleging that it had failed to respond to requests for payoff

4    statements and verifications of mortgage as required by law.  This lawsuit was resolved by

5    summary judgment by the bankruptcy court on the basis that, even if Milestone was deficient in

6    its responses, it was a harmless error as Lori Moon was never eligible for the refinance loan with

7    UWM.  As set forth below, there is no ambiguity that this was the correct conclusion, and thus

8    Mark Moon's claims fail for lack of proof of any damages.

9          Alternatively, each claim fails because there was no error in Milestone's responses.

10   Milestone responded to each request for a payoff demand as required by California law.  As to the

11   claims under TILA and RESPA, no responses were needed as the loan is not a consumer loan.

12   Therefore, summary judgment may be affirmed on that alternative basis.

13   **V.  THIS COURT SHOULD AFFIRM THE BANKRUPTCY COURT'S DECISION**

14   **A.    Each Cause of Action Fails as the Undisputed Facts Demonstrated that Mark Moon**
         **was Not Damaged by Any Alleged Error by Milestone**
15

16         **1.    The Bankruptcy Court's Decision**

17         Each of Mark Moon's five causes of action is predicated on the same alleged harm.  Each

18   alleges that, between June and August of 2022, Milestone failed to timely provide a payoff

19   demand, or other request for information, to Mark Moon or his agents, and that by doing so, Mark

20   Moon was unable to close on the UWM loan.  AA 0013-0015.  On that basis, Mark Moon seeks

21   damages representing the difference in interest between the proposed UWM loan of 4.9% and the

22   7.625% rate that Mark Moon received from the Kind Lending loan.  AA 0013 at ¶32.

23         During discovery, Schuman produced a document entitled UWM Loan Approval

24   Conditions.  AA 0511.  During his deposition, he elaborated on the document's meaning.

25         As testified by Schuman, Lori Moon did not directly apply for a loan with UWM, but

26   through her chosen loan broker, Network Financial.  AA 0496 at lines 1-11.  UWM, after receipt

27   of the application, responded with an August 23, 2023 conditional approval and provided with it

28   the Loan Approval Conditions.  This was the last conditional approval provided to Network

1   Financial by UWM.  (AA 0500 at lines 13-15).  The Loan Approval Conditions document

2   provides the conditions necessary to close the loan, including the conditions imposed by any

3   government sponsored entity such as Fannie Mae, Freddie Mac, or the VHA.  AA 0488 at lines 3-

4   10.

5          The UWM Loan Approval Conditions included condition 3002.

6               The mortgage on the subject property is not reporting on credit.
               Verify monthly payment with 1) A VOM.  2) Original Note, OR 3)
7               Current mortgage statement.  **Provide evidence that all payments
               in the past 12 months were timely and made by the borrower.** If
8               the mortgage was a cash-out and taken out within 30 days of the
               new note date, this transaction cannot close until 30 days have
9               passed. ** 8/10 need payments covering July 2021 -July 2022. will
               need actual statements confirming monthly obligation in lieu of
10              spreadsheet provided.  The spreadsheet cannot be tied to the
               mortgage at all.  need actual statement **8/23/22 Due to need the
11              mortgage statements.  PENDING PAYOFF INFORMATION

12          AA 0511 (emphasis added).  Thus there was a clear condition that all payments owed

13   within the prior twelve months must have been timely made by the Moons.

14          During his deposition, Schuman unequivocally stated that the reason the loan was denied

15   was not because Milestone failed to provide a payoff demand.

16               Q:  Well, let's -- okay.  In your view was the UWM mortgage
               denied, because a payoff demand was not provided?
17

18               A: No.

19          AA 0498 at lines 4-7.

20          He then went on to clarify that the loan was denied as, in his view, Milestone did not

21   provide a verification of mortgage (which is different than a payoff demand).  AA 0502 at lines

22   19-25.  However, he later clarified that a verification of mortgage was not necessary so long as

23   Milestone provided proof that "12 months of payments were made," such that condition 3002 was

24   met.  AA 0504 at lines 6-9.

25          More importantly, Schuman confirmed that, if Milestone had provided a verification of

26   mortgage stating that all payments owed for the prior twelve months had not timely been made,

27   the loan would have been denied.

28

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 7 -

APPELLEE'S BRIEF
24-CV-04003-CRB

1

> Q: So if Milestone had provided a verification of mortgage saying the borrower is in default and failed to make payments as agreed, the loan would have been denied?

2

3

> A: Correct.

4

AA 505 at lines 3-6.

5

As set forth by the unanimous testimony of Lori Moon's own loan broker, Lori Moon was

6

never eligible for a loan with UWM.  Pursuant to the Settlement Agreement, the Milestone loan

7

fully matured on July 31, 2017.  AA 397 at § 5.  Milestone never extended the deadline for the

8

Moons to make payments past this date, or otherwise provided an additional forbearance period.

9

AA 0540 at ¶ 5.  Thus, the Loan was in default and had been since at least August 1, 2018.  AA

10

0540 at ¶ 5.

11

Milestone could never have provided UWM any truthful statement that the Moons had

12

timely made all payments owed in the last twelve months, as the Moons were in default on the

13

loan balance for that entire time.  There was no way for Lori Moon to satisfy condition 3002 for

14

UWM as was not eligible for a loan under UWM's program.

15

While Schuman's testimony by itself was sufficient, it was not the only testimony on the

16

issue.  Milestone, to confirm the accuracy of Mr. Schuman's statements, retained its own expert,

17

Richard Wang ("Wang").  Wang is a principal and founder of Veridian Mortgage, LLC.  AA

18

0535-0538.  Wang has been brokering wholesale residential loans since 1993 and has closed over

19

300 loans since 2012 with UWM.  AA 0562 at ¶ 11.  Wang reviewed the relevant documents and

20

conditional approval provided by UWM to Lori Moon.  AA 0562 at ¶ 12.

21

Upon doing so, he stated that the central issue regarding approval here was the

22

requirement of condition 3002 that the lender review "evidence that all payments in the past 12

23

months were timely and made by the borrower. ... Covering July 2021 - July 2022."  AA 0564 at

24

¶ 15.  He concluded that this condition could not be met given that the loan had previously

25

matured.

26

> 17.  It is my opinion, based on my professional expertise, that there was no possibility that UWM would approve this loan as payments had not been timely made within the prior 12 months.

27

28

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

APPELLEE'S BRIEF
24-CV-04003-CRB

1    18. Fannie Mae explicitly allows O x 60-day lates in the most
2    recent 12 months. FHA program guidelines allow a variation of no
     more than 2 x 30-day and 1 x 90 day lates. VA program guidelines
3    allow 1 x 30 day late.

4    19. Per the Loan Estimate, this was a conventional loan (i.e. to be
5    governed by the Freddie Mac and Fannie Mae standards), so could
     not have been approved with even 1 x 60 day late.

6    20. In this case, the entire loan had matured in 2017, and thus
7    payment was overdue by well over 60 days. Further, given the
     history of delinquency, there was no chance of an exception.

8    AA 0565 at ¶¶ 17-20.

9    Lori Moon did not apply with any other lenders after UWM until the Kind Lending

10   application in 2023.  AA 0490 at lines 18-23.  Kind Lending was a newer company and was

11   willing to make an exception as to the payment history that UWM would not.  AA 0492 at lines

12   2-18.

13   Based on the above undisputed facts, the bankruptcy court granted summary judgment as

14   to each cause of action as it concluded that the damage element of each cause of action was not

15   met.[1]  It did so after reviewing the Loan Approval Conditions provided by UWM to Network

16   Financial.  AA 0511.  After reviewing this document, the bankruptcy court made the following

17   findings of fact and conclusion of law.

18   However, the Loan Approval Conditions issued by UWM (Motion
     at 46-1) directly contradict Mark's assertion. The Loan Approval
19   Conditions form states that prior to final approval of the loan, Lori
     or her broker had to provide a payoff statement that "must reflect
20   that loan is current; a verification of monthly payments with "1) A
     VOM, 2) Original Note, OR 3) Current mortgage statement" that
21   are "actual statements confirming monthly obligation." Whether or
     not Milestone responded with an accurate VOM, or Lori provided
22   the note reflecting the Extension, or a current mortgage statement,
     nothing would satisfy UWM's requirement that the Extension be
23   current. The Extension was not current. The Extension was not
     merely in default. The Extension had long since matured. The facts
24   surrounding the Extension with Milestone are long-settled, and the

25

26   [1] Milestone concedes that the bankruptcy court's order is ambiguous if this determination was the
     basis for granting summary judgement as to each cause of action, or just as to the third cause of
27   action for RESPA and fifth cause of action for Tortious Interference with Contract.  Regardless,
     this court may affirm on any independent basis supported by the record. *McSherry*, 584 F.3d at
28   1135.  Milestone submits that an undisputed lack of damages is fatal as to each cause of action
     raised by Mark Moon.

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 9 -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 79
of 177

1   requirements on the face of UWM's Loan Approval Conditions
2   simply do not align with the Moon's reality.

3   AA 0719, at lines 3-18.

4   On that basis, the bankruptcy court determined that any alleged failure of Milestone to

5   provide payoff information was harmless and thus granted summary judgment as to the damages

6   issue.

7   ## 2.   Mark Moon's Voluntary Partial Payments are Not Evidence of an Agreed
        Upon Payment Plan
8

9   Mark Moon does not dispute the central premise of Milestone's argument.  He in fact

10  agrees with it, stating that "under both the UWM conditional approval and the government

11  guidelines, the only requirement was that the Moons had made timely payments from July 2021

12  to July 2022."  AOB p.25.  Rather, Mark Moon makes the bizarre argument that "there was

13  nothing in the 200 pages of evidence presented by Milestone [] that even suggested that the

14  Moons had missed a monthly payment during that 12 month period."  AOB pp.25-26.

15  To make this argument, Mark Moon argues "the evidence verified by Milestone,

16  demonstrated that the Moons made all the monthly payments in the 12 months up to July 2022."

17  AOB p.27.  Milestone does not dispute that the Moons made twelve payments of $6,647.50

18  during this time period.  What Milestone disputes is that the payments were what were owed.

19  Mark Moon misses the point that the loan was fully matured and "payments" were not due, rather

20  the balance was all due and payable at once.

21  The Note states that the original maturity date was July 31, 2018.  AA 0388.  The Note

22  further provides that upon the maturity date, "[t]he entire unpaid Principal Balance, plus accrued

23  interest and other amounts payable under the Loan Documents, shall be due and payable in full on

24  the Maturity Date."  AA 0389 at § 2(a).  The Settlement Agreement extended the maturity date to

25  July 31, 2019, but stated that "at which time all unpaid sums are due and payable in full."  AA

26  0397 at § 5.  Accordingly, as of August 1, 2018, the Note balance was payable in full.  Thus, the

27  payments of $6,647.50 were no more than minimal partial payments of the balance due.

28  Milestone, through its principal William Stuart, provided testimony that no further

1    maturity date extensions, aside from the Settlement Agreement, were provided, either before or

2    after the Previous Adversary Judgment.  AA 0540 at ¶ 5.  He stated that while the Moons did

3    make some payments of $6,647.50, as they assert, that "Milestone accepted these payments, as

4    was its right, but was unaware as to what the intent behind the payments was."  AA 0541 at ¶ 8.

5    He further testified that "Milestone did not direct the Moons to make payments and no payment

6    plan or other forbearance was in place."  AA 0541 at ¶ 9.  The bankruptcy court agreed, finding

7    that "[t]here is no record of any agreement for the Moons to make those payments, and the

8    payments were not based on an agreement made in court in 2020."  AA 0720 at lines 1-3.

9         But this Court does not have to take Milestone or the bankruptcy court's word for it.  In an

10   email by Schuman to Cahthy Moran ("Moran"), Moon's co-counsel, Schuman requested

11   documents from Moon's counsel showing that the $6,647.50 was the required payment owed by

12   the Moons.

13            Ok… the monthly payment you made is $6,647.50. We need
              something showing that is the required payment, and yes, please get
14            copies of the front of the checks, as the bank statements don't show
              who the check is paid to.
15

16   AA 0520.

17   In response, Moran replied that

18            There is no "required payment" since the loan was fully matured. I
              picked a number close to monthly payments on the loan before it
19            matured, and we paid that as "adequate protection" in the
              bankruptcy case. No one ever disputed that it was appropriate.
20

21   AA 0521.

22        Moran then further confirmed, in response to a request by Schumann to "get a copy of that

23   document please," that no such agreement existed.

24            What document?  I can look at stuff generated by Milestone to see
              if I can find acknowledgement of the payments, but there is nothing
25            that fixed or required that number for payment.

26   AA 0521.

27        Accordingly, all parties admit that there was no agreement that the $6,647.50 replaced the

28   obligation to repay the Note at maturity.  The payment due to Milestone on the Note between July

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH                                          - 11 -                          APPELLEE'S BRIEF
                                                                                    24-CV-04003-CRB

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 81
of 177

1   of 2021 and July of 2022 was not a monthly payment of $6,647.50, but the *entire balance of the*

2   *Note.*  And the entire balance of the Note, plus post-maturity interest, *remained due and owing*

3   *every day for the entire relevant twelve-month period.*  Thus, the requirement of condition 3002

4   that the Moons "[p]rovide evidence that all payments in the past 12 months were timely and made

5   by the borrower" was not met.

6       Finally, at the end of his brief, Mark Moon returns to this issue and argues that even if

7   Milestone did not expressly agree to the payment of $6,647.50, it agreed to the payment plan by

8   accepting the payments of $6,647.50.  AOB pp.47-48.  This argument was not raised below, and

9   thus may not be considered here by the Court for the first time.  *Steam Press Holdings, Inc. v.*

10  *Hawaii Teamsters, Allied Workers Union, Loc. 996*, 302 F.3d 998, 1005 (9th Cir. 2002) ("as a

11  general rule courts of this circuit will not consider arguments on appeal that were not properly

12  raised at the lower court level").

13      Regardless, the argument has no merit.  California law is clear that "no implied waiver

14  results from the mere acceptance of [] partial payments."  *Sellman v. Crosby*, 20 Cal. App. 2d

15  562, 565 (1937); *see also Harris v. Whittier Bldg. & Loan Ass'n*, 18 Cal. App. 2d 260, 268 (1936)

16  ("the mere acceptance of interest or a small amount on the principal after the notice of forfeiture

17  is given will not of itself revive the contract, because one may accept payment of part of his

18  indebtedness without thereby waiving his right to receive the balance"); *Hunt v. Smyth*, 25 Cal.

19  App. 3d 807, 819 (Cal. Ct. App. 1972) ("Nevertheless in the absence of partial payments of what

20  is due on an obligation does not discharge the balance, or modify the terms of its payment").

21      Further, the Note provides that "[t]his Note may be amended or modified only by an

22  instrument in writing which by its express terms refers to this Note and which is duly executed by

23  the party sought to be bound thereby."  AA 0391 at § 10.  The parties thus agreed contractually

24  that oral agreements or course of conduct are not a basis to modify the Note.  A contractual

25  integration clause is an enforceable bar to any claim of waiver or modification by course of

26  conduct.  *Fox Paine & Co., LLC v. Twin City Fire Ins. Co.*, 104 Cal. App. 5th 1034 (2024) ("the

27  integration clause in the Houston Casualty policy, which was incorporated into the St. Paul

28  policy, does not allow the policy's terms to be modified or waived except through written

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 12 -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 82
of 177

1    amendment"); *see also Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1535 (1997)

2    ("Supercuts' 'waiver or revocation' theory cannot be reconciled with the integration clauses of

3    the employment contract").  Therefore, even if any evidence of course of conduct was identified

4    in the record, it would not result in a modification of the Note.

5            Finally, this issue was adjudicated by the bankruptcy court in the Prior Adversary

6    Proceeding.  In the Prior Adversary Judgment, the bankruptcy court determined that the Note

7    *matured* on August 1, 2019 and on that date, the Note balance was $718,493.88.  AA 0482 at

8    lines 12-23.  The bankruptcy court further concluded that the balance as of May 13, 2022 was

9    $751,009.91.  AA 0483 at lines 8-16.  The bankruptcy court then ordered that "[i]f payment is not

10   tendered by June 24, 2022, then Milestone may request relief from the automatic stay."  AA 0483

11   at lines 19-20.  There was no payment plan during the twelve-month period, as the Prior

12   Adversary Judgment expressly provided a deadline of June 24, 2022, within the twelve-month

13   period, to pay balance.[2]

14           **3.      The Failure to Pay the Loan at Maturity Was Not Cured By The Passage of a**
                       **Year**
15

16           Mark Moon spends considerable ink arguing that the Court should disregard Wang's

17   testimony.  He asserts that Wang only identified a default in 2018, when the Note matured, and

18   not during the twelve-month time period starting in July of 2021.  He asserts that there is no

19   evidence that a default beyond that twelve-month period would cause UWM to deny a loan

20   modification.  AOB pp.28-31.  Under Mark Moon's interpretation of condition 3002, UWM only

21   required that the Moons make all scheduled payments during the twelve-month lookback period,

22   and that UWM was unconcerned if payments before that period remained due and owing.  In

23   short, Mark Moon asks the Court to accept the ridiculous argument that condition 3002 would

24   preclude a borrower from getting a loan if the borrower misses one regularly scheduled payment

25   within the prior twelve months, but not if the borrower allows the loan to mature, makes no

26   payments, and then waits out the twelve-month period.

27   _____

28   [2] Milestone did not seek relief from stay, despite the non-payment of the balance, due to its
     pending appeal as it was concerned that any pre-appeal foreclosure would result in a reduced
     payoff amount.

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 13 -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 83
of 177

1   Wang provided testimony showing this was not the case.  Wang testified that, in his

2   opinion as an expert (to which there was no objection), for UWM to approve the loan there could

3   not be any payments in the last twelve month which were more than 60 days late.  AA 0565 at ¶

4   20.  Once the loan had matured, the full payment was due, and thus payments remained 60 days

5   late during the relevant twelve-month period.  AA 0565 at ¶ 21.  In short, Wang testified that

6   condition 3002 required the Moons to be current on all payments owed during the twelve months

7   look back period.  Mark Moon provided no countervailing testimony to support his theory.  The

8   bankruptcy court correctly determined the logical interpretation of this clause is the correct one.

9   **4.      The Substantial Factor Test, to the Extent It Applies, Does Not Change the
        Outcome**

10

11   Mark Moon argues that the bankruptcy court erred by applying a "but for" test, and that

12   instead the court should have applied the "substantial factor" test.  Per Mark Moon, under the

13   "substantial factor" test, it does not matter if Lori Moon was never eligible for a loan with UWM,

14   if the acts of Milestone would have caused her to be denied the loan even if she had been eligible.

15   AOB pp.32-34.

16   Initially, it is not clear that the bankruptcy court used a "but for" test at all, as the words

17   "but for" do not appear in the bankruptcy court's order.  But even if it did, the "but for" and

18   "substantial factor" test result in the same outcome.

19   The "substantial factor" test is one used in tort actions to determine causation.  *Yanez v.*

20   *Plummer*, 221 Cal. App. 4th 180, 186 (2013).  California tort law used to follow a strict "but for"

21   test, in which "a defendant's conduct is a cause of the injury if the injury would not have occurred

22   'but for' that conduct."  *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997).

23   California later moved to the substantial factor test, where a "defendant's negligent conduct may

24   combine with another factor to cause harm; if a defendant's negligence was a substantial factor in

25   causing the plaintiff's harm, then the defendant is responsible for the harm; a defendant cannot

26   avoid responsibility just because some other person, condition, or event was also a substantial

27   factor in causing the plaintiff's harm."  *Yanez*, 221 Cal. App. 4th at 187.  Thus "[a] defendant's

28   negligence need not have been the whole cause or the only factor in bringing about the harm; it is

1    enough that her negligence was a substantial factor in causing plaintiff's injuries."  65 C.J.S.

2    Negligence § 207.

3          The "substantial factor" test, however, has an important and well-defined limitation.

4    While it allows for liability when the defendant is at least a partial cause of the legal harm,

5    "conduct is not a substantial factor in causing harm *if the same harm would have occurred*

6    *without that conduct.*"  *Yanez,* 221 Cal. App. 4th at 187 (emphasis added); *see also Mayes v.*

7    *Bryan,* 139 Cal. App. 4th 1075, 1094 (2006) ("No case has been found where the defendant's act

8    could be called a substantial factor when the event would have occurred without it").  Thus the

9    "substantial factor" test is not met if the same result would have occurred without the complained

10   of action.  *Viner v. Sweet*, 30 Cal. 4th 1232, 1244 (2003).

11         As discussed above Lori Moon was not eligible under UWM's lending guidelines.  Even

12   if being denied a loan constitutes a legal "harm", it is one that would have occurred regardless of

13   Milestone's acts based on the Moons substantial and ongoing defaults on the Milestone loan.

14   Therefore, the substantial factor test of causation does not apply.

15   **B.     Each of Cause of Action Fails on Independent Grounds**

16         Aside from the overarching failure to provide causation and damages, the bankruptcy

17   court granted summary judgment as to each cause of action on independent grounds.  The

18   bankruptcy court correctly did so, and this provides an alternative basis for affirmation.

19         **1.     The First Cause of Action for California Civil Code § 2943(c)**

20         Mark Moon's first cause of action is for violation of Civil Code section 2943(c).  Under

21   this section, a lender must "on the written demand of an entitled person . . . prepare and deliver a

22   payoff demand statement to the person demanding it within 21 days of the receipt of the demand

23   Cal. Civil Code §2943(c).  A violation of Civil Code §2943(c) for failure to timely provide a

24   payoff statement permits a plaintiff to recover damages caused by the violation.  Cal. Civil Code

25   §2943(e)(4).

26         The SAC alleges that Milestone failed to respond to payoff demands in June of 2022

27   through August of 2022.  AA 0013-14 at ¶¶ 35-36.  There was a sole request for a payoff demand

28   during June through August of 2022.  On May 26, 2022, a request for payoff demand from

Miller Nash LLP
Attorneys at Law
Long Beach

- 15 -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 85
of 177

1  Michelle Hider at Old Republic Title was made to Harris Cohen, counsel for Milestone.  AA

2  0526-0527.  Milestone responded to this payoff demand 21 days after the demand on June 16,

3  2022.  (AA 0336-0337).  The bankruptcy court correctly concluded that "the June 16, 2022 email

4  and first-class mail letter from Milestone's counsel, Bernard Kornberg, to Michelle Hider, Old

5  Republic Title, satisfied the requirements of California Civil Code Section 2943."  AA 0456 at

6  lines 8-12.[3]

7       Mark Moon argues that the payoff demand did not satisfy the requirements of section

8  2943(c) because it failed to include the June 6, 2022 payment made by the Moons.  AOB 38.

9  Milestone concedes that the payoff demand did omit this payment and thus slightly overstated the

10  Note balance.  However, this error was harmless.  Mark Moon provides no evidence that the

11  UWM loan was denied because the slightly incorrect balance rendered the loan ineligible.

12       Further, the undisputed evidence shows that the error in the payoff balance made no

13  difference.  In response to later requests for payoff demands, Milestone sent payoff demands on

14  January 3, 2023 (AA 0339), February 6, 2023 (AA 0356), February 7, 2023 (AA 0360), and

15  March 24, 2023 (AA 0367).  Each of these subsequent payoff demands included the June 6, 2022

16  payment, plus other payments that were made subsequent to June 16, 2022.  Yet despite this fact,

17  the UWM loan did not close.  Thus, the undisputed evidence shows that the error in accounting in

18  the June 16, 2022 payoff demand did not cause the denial of the UWM loan.

19       Mark Moon also asserts that a July 15, 2022 request for a payoff demand was made by

20  Old Republic Title Company ("ORTC") on Milestone, but that Milestone did not respond to it.

21  The bankruptcy court concluded that this payoff statement was superfluous as the June 16, 2022

22  request did not provide an expiration date, and thus the June 16 payoff demand was still valid.

23  AA 0456 at lines 22-26.  This conclusion is correct, as the payoff demand did not provide an

24  expiration date or otherwise indicate it expired before this date.  (AA 0336-0337).

25       Mark Moon argues that a payoff demand, by law, expires within 30 days as "Civ. Code

26  §2943(a)(5) states that the payoff statement must include an amount covering a period of time,

27

28

---

[3] The bankruptcy court made this finding in its order denying Mark Moon's motion for partial summary judgment.  The bankruptcy court incorporated this conclusion by reference into the order granting Milestone's motion for summary judgment.  AA 0717 at lines 1-11.

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

APPELLEE'S BRIEF
24-CV-04003-CRB

1    not to exceed 30 days." AOB 42. This, however, misstates the statute. The full language is that

2    "The written statement shall include information reasonably necessary to calculate the payoff

3    amount on a per diem basis for the period of time, not to exceed 30 days, during which the per

4    diem amount is not changed by the terms of the note." Cal. Civ. Code § 2943(a)(5).

5    Accordingly, this section only states that the request for a payoff demand may not require that

6    statement be good for longer than 30 days. A payoff demand statement can be for a longer period

7    if the lender elects to do so.

8           Regardless, it does not matter. Thirty (30) days after June 15, 2022, is July 16, 2022.

9    Accordingly, the June 15, 2022 payoff demand was still valid when the new demand was made,

10   and thus can serve as a response. Even if Mark Moon is correct that technically each payoff

11   demand requires a new response, there was no actual harm as a current payoff demand was still

12   outstanding when the new demand was made. There is no evidence that UWM required an

13   updated demand at all. This is nothing more than a red hearing.

14          Finally, while the bankruptcy court declined to rule on it, there was no admissible

15   evidence that the July 15, 2022 request for a payoff demand was delivered. The sole citation to

16   the record by Mark Moon regarding delivery of the July 15, 2022 request is a reference to AA

17   0067. AOB 42. AA 0067 is in turn an email attached to the John McDonnell Declaration in

18   support of Mark Moon's motion for partial summary adjudication. The email shows that the

19   request for the payoff demand was sent solely to kgray@milestonefinancial.net. AA 0067.

20          Milestone provided testimony through William Stuart that it never received this request as

21   Kristy Gray ceased her employment at Milestone in 2018. AA 0541 at ¶ 6. As of 2022, her email

22   address was not monitored as she had not worked for Milestone for 4 years. AA 0541 at ¶ 6.

23   Milestone cannot be held liable for not responding to a request for a payoff demand that was not

24   sent to a valid email address.[4]

25          Finally, Milestone objected to this evidence as the email was sent by a third-party who is

26

27   ────────────────
     [4] It is noteworthy that during the entire time Mark Moon and his counsel were aware that William
     Stuart was the principal of Milestone and had his direct email. It is unclear why they choose to
28   send this demand to an entirely different, dead email address.

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 17 -

APPELLEE'S BRIEF
24-CV-04003-CRB

1  not the declarant and there was no foundation established for its authenticity.  AA 0264.   The

2  bankruptcy court declined to rule on this objection as moot, but it remains valid should this Court

3  consider this document.

4        **2.        The Second Cause of Action for 15 U.S.C. §1639g**

5        Mark Moon's second cause of action alleges a violation of 15 U.S.C. §1639g of TILA.

6  Under that section, "[a] creditor or servicer of a home loan shall send an accurate payoff balance

7  within a reasonable time, but in no case more than 7 business days, after the receipt of a written

8  request for such balance from or on behalf of the borrower."  15 U.S.C. § 1639g.  Mark Moon

9  makes the same allegations regarding the failure to provide payoff demands upon request as he

10  did under the first cause of action.

11        TILA does not apply to this transaction, as TILA expressly only applies to a loan which is

12  "primarily for personal, family, or household purpose."  15 U.S.C. § 1602(i).  The bankruptcy

13  court concluded that the Moons, by entering into the Settlement Agreement, had released all

14  claims that the Loan was for consumer purposes.  AA 0717 at lines 12-22.  This was the correct

15  determination.

16        The Settlement Agreement provides for a broad release of claims "known or unknown

17  claims, disputes, demands, or charges of whatsoever nature."  AA 0402 at § 17.  "Such a release

18  of 'each and every claim' covers all claims within the scope of the language."  *Marder v. Lopez*,

19  450 F.3d 445, 449 (9th Cir. 2006).  Accordingly, Mark Moon released any claim or cause of

20  action that Milestone violated TILA by failing to abide by its requirements when it made the

21  Loan.  This cause of action is barred.

22        Even if that were not the case, the undisputed evidence shows that the Loan was not a

23  consumer loan.  Milestone, as William Stuart testified, does not fund consumer loans.  AA 0542

24  at ¶ 13.  To ensure that it only funds business or investment purpose loans, Milestone provides

25  numerous documents to borrowers, and their brokers, which they must sign stating that the

26  purpose of the loan is for business and investment purposes, as a condition to any funding.

27  Consumers seeking consumer loans borrow elsewhere.  AA 0542-0543 at ¶¶ 13-18.  These

28  documents are as follows.

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 18 -

1.      The Moons and their broker, Mark J. Fournier, signed a Conditional Loan Quote which stated that any loan offered they were only being offered a loan on the condition that it was for "business, investment and/or non-consumer purposes."  AA 0374, AA 0377.

2.      Then, in order to close the loan, the Moons both signed and acknowledged an Affidavit Regarding Loan Purpose, which was made under penalty of perjury, in which they stated that, amongst other things, that "[t]he proceeds of the Loan is or shall be for either business, commercial or investment purposes."  AA 0379.  In doing so, the Moons further represented that "Borrower understands that Broker and lender shall each rely upon and accept as true the representations made in this Affidavit and each such representation shall be conclusively presumed to have been relied on by Broker and lender, regardless of any investigation made or information possessed by Broker and/or lender."  AA 0379.

3.      In the Lender-Broker-Borrower and Disclosure of Agency Relationships, the Moons agreed that "Borrower agrees to use the Loan proceeds strictly for business, commercial or investment purposes."  AA 0383 at § 7.

4.      In the Note itself, the Moons represented and warranted that "Borrower represents and warrants that the proceeds of the loan evidenced by this Note (a) are strictly for business, commercial, or investment purposes ONLY, and (b) will not be used primarily for agricultural, farming personal, family, household or other consumer purposes."  AA 0392 at § 19.

William Stuart further testified that Milestone relies on these documents and will not fund a loan if the borrower does not certify that it is for investment or business purposes.  AA at ¶ 19.  Finally, Milestone was never informed by the Moons, and did not otherwise learn, that the loan being offered was being made for anything other than the promised commercial purpose.  AA at ¶ 20.

Whether a loan "is for a personal or a business purpose requires a case by case analysis." *Thorns v. Sundance Properties*, 726 F.2d 1417, 1419 (9th Cir. 1984).  However, if the evidence before the Court is that the borrower represented to the lender that the loan was for business purposes, and no other evidence is provided that the loan was for consumer purposes, then the correct legal conclusion is that the loan was for non-consumer purposes.  *Daniels v. SCME*

1   *Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126, 1130 (C.D. Cal. 2010) (dismissing a complaint under

2   TILA and RESPA when the borrower stated the loan was for investment purposes and no other

3   evidence of consumer use was alleged); *see also Galindo v. Financo Fin., Inc.*, 2008 WL

4   4452344, at *4 (N.D. Cal. Oct. 3, 2008) (dismissing a complaint when no evidence of consumer

5   purpose was alleged).

6        In contrast, both Mark Moon's Appellant's Brief and the opposition to the motion for

7   summary judgment are bare of any evidence that the Loan was in fact made for consumer

8   purposes.  Therefore, the undisputed evidence before the bankruptcy court, and this Court, is that

9   the Loan was made for commercial purposes.  TILA does not apply.

10       Finally, as discussed above, Milestone did in fact provide a payoff demand to all requests

11  sent to them, just not within the seven-day window set forth by TILA.  Mark Moon does not

12  provide any evidence that the minimal delay in the response caused them any actual damages.

13  Instead, the Moons make the desperate hail mary assertion that TILA prohibits a payoff demand

14  being made by the attorney for the creditor.  AOB 0580.

15       The bankruptcy court rejected this argument as "frivolous."  AOB 0302 at line 16.  And it

16  is.  The two cases Mark Moon cites are for this proposition, *Larkins* and *Formica*, hold that

17  service on the lender's attorney of a request for a payoff demand, when the attorney is not

18  retained for that purpose, does not constitute a proper demand under TILA.  *Larkins v. Fifth Third*

19  *Mortg. Co.*, 376 F. Supp. 3d 784, 790 (S.D. Ohio 2019); *Formica v. Parke Bancorp, Inc.*, 2023

20  WL 8295254, at *3 (D.N.J. Nov. 30, 2023).  It does not invalidate the normal rule in the converse

21  situation that an attorney may act on his client's behalf to provide a payoff demand when so

22  authorized.  *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 283 (2001) ("attorneys are agents of their

23  client").

24       And regardless, there is no evidence that the payoff demand was disregarded because it

25  came from counsel.  Indeed, there is no complaint by Mark Moon regarding the February 7, 2023

26  payoff demand which actually resulted in the refinance loan from Kind Lending.  This demand

27  was equally drafted by counsel.  AA 0360.  Even if TILA did apply, the bankruptcy court

28  correctly granted summary judgment on this cause of action.

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 20 -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 90
of 177

1

### 3.   The Third Cause of Action for Violation of RESPA

2

In his third claim for relief, Mark Moon claims a violation of RESPA on the ground that

3

Milestone allegedly failed to provide a timely response to a qualified written request under

4

RESPA.

5

Like TILA, RESPA does not apply to the "extensions of credit . . . primarily for business,

6

commercial, or agricultural purposes." 12 U.S.C. § 2606(a).  The interpretation of whether a loan

7

is a business purpose or consumer loan for RESPA is, by Congressional mandate, the same as for

8

TILA.  12 U.S.C. § 2606(b); *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 418 (9th

9

Cir. 2011) ("Congress has mandated that the business-purpose exemption under RESPA be the

10

'same as' as that under the Truth in Lending Act").  Accordingly, as the undisputed facts

11

demonstrate, the Loan is exempt from TILA, it is equally exempt from RESPA.

12

Further, even if Milestone had a duty to respond to requests for information, the document

13

at issue did not qualify as one. "[A] qualified written request shall be a written correspondence . .

14

. that . . . provides sufficient detail to the servicer regarding other information sought by the

15

borrower." 12 U.S.C. § 2605(e)(1)(B); see also 12 C.F.R. § 1024.36(a).  The Request for

16

Verification of Rent or Mortgage was sent on July 15, 2022 by Schuman to Milestone.  In it,

17

Schuman sent out *a prefilled form* and requested Milestone to complete any blanks and sign it.

18

AA 0514.  The form, as prefilled, stated that the Milestone loan was current, that there were no

19

late payments, and that a monthly payment of $6,647.50 with the next payment date of 8/1/2022.

20

AA 0515.  Milestone did not return this form signed, as it was patently false.

21

As set forth in section V.A.2, above, to meet condition 3002, Lori Moon was seeking to

22

manufacture a false narrative to UWM that Milestone and the Moons had agreed to a payment

23

plan of $6,647.50 a month.  Milestone properly refused to make false representations to a third-

24

party lender regarding the loan status.  The bankruptcy court thus correctly concluded that "Mark

25

[Moon] cannot plausibly argue that he was damaged by Milestone's failure to sign a factually

26

inaccurate VOM."  AA 0720 at lines 3-5.  Summary judgment was proper as to this cause of

27

action.

28

1

### 4.      The Fourth Cause of Action for Breach of Contract

Mark Moon's fourth cause of action asserts that "Defendant's refusal to supply the payoff information necessary to satisfy Plaintiff's obligation to Defendant is a breach of the contract between Plaintiff and Defendant, and a breach of the covenant of good faith and fair dealing made a part of every contract governed by the laws of the State of California."  AA 0015 at ¶ 48.

As concluded by the bankruptcy court, this cause of action fails as nothing in the Note (AA 0388), the Settlement Agreement (0396), the Prior Adversary Judgment (AA 0482) requires Milestone to provide a payoff demand.

The sole argument raised by Mark Moon in response is that under *Von Hoffman v. City of Quicy* and its progeny, "the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms."  AOB 44.  But this statement was made regarding a challenge to a law that it violated Article I, Section XI of the U.S. Constitution which prohibits any "law impairing the obligation of contracts."  *Von Hoffman v. City of Quincy*, 71 U.S. 535, 549 (1866). The *Hoffman* case only holds that "a contract cannot be impaired, within the meaning of article I, s 10 of the Constitution, by a statute enacted prior to the making of the contract."  *Reding v. Texaco, Inc.*, 598 F.2d 513, 519 (9th Cir. 1979).  It does not stand for the incredibly overbroad proposition that any contract also includes an enforceable agreement to abide by all laws in place at the time of its making.

And regardless, even if the Court were to interpret the requirement of providing a payoff demand upon request into the Note and the Settlement Agreement, that requirement was met. The undisputed evidence shows that Milestone provided a payoff demand on June 16, 2022 (AA 0336), January 3, 2023 (AA 0339), February 6, 2023 (AA 0356), February 7, 2023 (AA 0360), and March 24, 2023 (AA 0367).  Despite this fact, the UWM loan did not close.  There is no breach and no damages.

### 5.      The Fifth Cause of Action for Intentional Interference with Contractual Relations

Mark Moon's fifth cause of action is for Intentional Interference with Contractual

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 22 -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 92 of 177

1   Relations.  It asserts that Milestone's acts interfered with the potential economic relationship

2   between Lori Moon and UWM.  AA 0015 at ¶ 51.  Mark Moon makes no argument in his

3   Appellant's brief as to error by the bankruptcy court as to this cause of action.  The burden was

4   on him to do so in the appeal.  *Phoenix Eng'g & Supply Inc. v. Universal Elec. Co.,* 104 F.3d

5   1137, 1142 (9th Cir. 1997); *Jackson v. Fox*, 2018 WL 8493116, at *13 (C.D. Cal. Oct. 9, 2018)

6   ("the burden is on appellant to demonstrate error from the record; error will not be presumed").

7   As Mark Moon does not argue for any error, this Court has no basis to reverse.

8        Further, the bankruptcy court was correct.  This cause of action fails as a claim for

9   interference with contract requires "a valid contract between plaintiff and a third party."  *Hahn v.*

10  *Diaz-Barba*, 194 Cal. App. 4th 1177, 1196 (2011).  As the UWM loan never closed, no contract

11  existed.  Further, Mark Moon lacks standing to assert this claim, as he was never intended to be a

12  party to the UWM loan.

13       Assuming that Mark Moon instead meant to plead a claim for intentional interference with

14  prospective economic damage, the elements of the tort of intentional interference are "(1) an

15  economic relationship between the plaintiff and some third party, with the probability of future

16  economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3)

17  intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual

18  disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the

19  acts of the defendant."  *Westside Ctr. Assocs. v. Safeway Stores 23, Inc*., 42 Cal. App. 4th 507,

20  521–22 (1996).

21       The bankruptcy court granted summary judgment on this issue as "[a]s a matter of law,

22  Mark cannot show, and thus prove damages, that it was Milestone's actions and not the very clear

23  UWM requirements, that prevented Lori from refinancing with the creditor of her choice."  AA

24  0720 at lines 18-21.  As set forth in section V.A, above, the bankruptcy court was correct to do

25  so.

26       Finally, this cause of action also fails as Mark Moon failed to introduce evidence of an

27  affirmative act.  The allegation here is that Milestone interfered with Lori Moon's loan by failing

28  to provide payoff demands and verifications of mortgage.  AA 0015 at ¶ 53.  But this is not an

1  allegation of an improper act, but of inaction.  No case cited by Mark Moon, or otherwise located

2  by Milestone, provides this element can also be met by an omission.  Accordingly, this element is

3  also not met.

4                                    **VI.  CONCLUSION**

5          For the reasons stated above, this Court should affirm the bankruptcy court's decision in

6  entering the Judgment.

7

8  Dated: October 10, 2024                            MILLER NASH LLP

9

10                                         By: */s/ Bernie Kornberg*
                                               Bernie Kornberg

11
                                               Attorneys for Defendant
12                                             Milestone Financial, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Miller Nash LLP
Attorneys at Law
Long Beach

- 24 -

APPELLEE'S BRIEF
24-CV-04003-CRB

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 94
of 177

1

## **PROOF OF SERVICE**

2

I, Bernie Kornberg, declare:

3

I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 340 Golden Shore, Suite 450, Long Beach, California 90802.

4

5

On October 10, 2024, I electronically filed the attached document:

6

APPELLEE'S BRIEF

7

with the Clerk of the court using the CM/ECF system which will then send a notification of such filing to the following:

8

9

John Patrick McDonnell                    Cathleen Cooper Moran
Law Offices of John P. McDonnell          Moran Law Group Inc.
jpmcdon@aol.com                           cathy@moranlaw.net

10

11

12

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

13

Executed on October 10, 2024, at Long Beach, California.

14

15

16

/s/ Bernie Kornberg

17

18

19

20

21

22

23

24

25

26

27

28

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

- 25 -

APPELLEE'S BRIEF
24-CV-04003-CRB

# EXHIBIT "4"

1   MORAN LAW GROUP, INC.
    CATHLEEN COOPER MORAN, I.D. #83758
2   RENÉE C. MENDOZA, I.D. #139939
    643 Bair Island Road, Suite 403
3   Redwood City, CA 94063
    Tel.: (650) 694-4700
4   Fax: (650) 368-4818
    E-Mail: Cathy@moranlaw.net
5
    Attorneys for Debtor: Mark E. Moon
6
    John P. McDonnell, Esq. (State Bar No. 77369)
7   Law Offices of John P. McDonnell
    295 89th Street, Ste. 200
8   Daly City, CA 94015-1655
    Telephone: 650-991-9909
9   Facsimile: 650-449-7789
    JPMcDON@aol.com
10
    Attorney for Plaintiff
11
                    UNITED STATES BANKRUPTCY COURT
12
        FOR THE NORTHERN DISTRICT OF CALIFORNIA DIVISION 3
13

14  E. MARK MOON                    )        Chapter 11
                                     )
15             Plaintiff,            )        Bankruptcy No. 20-30711
                                     )        Adversary No. 22-03106
16        v.                         )
                                     )
17  MILESTONE FINANCIAL, LLC, a California )
    Limited Liability Company        )
18                                   )        Hon. Dennis Montali
               Defendant.            )
19  _____ )

20                  **SECOND AMENDED COMPLAINT**

21        Debtor and Plaintiff Mark Moon alleges as follows:

22        1.  The Court has jurisdiction over this matter pursuant to 28 United States Codes

23  Sections 157 and 1334.

24        2.  This matter is brought as an adversary proceeding pursuant to Rule 7001-1, 2, and 7.

25        3.  This adversary proceeding is a core proceeding based on 28 United States Code

26  Sections 157(b)(2)(A), (D), and (O).

27        4.  Venue is proper in this district pursuant to 28 United States Code Section 1409.

28        5.  The Debtor filed a voluntary petition under title 11 United States Code Chapter 13 on

1

Case 22-03106  Doc# 96-4  Filed 01/28/25  Entered 01/28/25 16:35:16  Page 97 of 177

9/10/2020 and converted his case to Chapter 11 on 11/24/2020.

6. Among the assets of the estate is a single family home at 11 Mandalay Court, Redwood City, CA. At the commencement of the case, the Property was subject to a lien in favor of Defendant Milestone Financial LLC ("Milestone").

7. Milestone made a loan to Mr. Moon for $795,000 in 2015, and this loan was for personal purposes and was secured by Mr. Moon's personal residence (the "2015 Loan"). Milestone made an extension of this loan in September 2016.

8. Plaintiff alleges on information and belief that Milestone is a "creditor" within the meaning of the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et seq. [RESPA].

9. Plaintiff further alleges on information and belief that at all times mentioned herein, Milestone was the loan servicer on the 2015 Loan within the meaning of RESPA.

10. Plaintiff alleges on information and belief that the 2015 Loan and extension are subject to the Home Ownership and Equity Protection Act of 1994 (HOEPA).

11. Litigation challenging the extent and validity of Milestone's lien and deed of trust was pending in the Superior Court of San Mateo County at the commencement of this bankruptcy case. That action was removed to this court and litigated to judgment as Adversary No. 20-03117.

12. The Adversary Judgment (the "Judgment") in case No. 20-03117, entered May 25, 2022 as Docket #88, fixed the amounts owed to Milestone as of May 13, 2022. Milestone appealed that Judgment to the Bankruptcy Appellate Panel.

13. The Judgment included a provision that if the loan was not paid off by June 24, 2022, the court would entertain a motion for relief from stay from Milestone.

14. Milestone sought a stay of the Judgment pending appeal in this court, which was denied.

15. Milestone's also sought a stay of the Judgment pending appeal at the Bankruptcy Appellate Panel, which was likewise denied in August 2022.

16. The Bankruptcy Appellate Panel eventually denied Milestone's appeal in January 2023, and affirmed the Bankruptcy Court's May 25, 2022 Judgment. Milestone subsequently

1  filed a further appeal with the Ninth Circuit Court of Appeal. Milestone did not seek a stay of

2  judgment in the Ninth Circuit. The appeal to the Ninth Circuit remains pending.

3      17. In May 2022, Moon engaged an experienced mortgage broker who identified a

4  lender who would make a conventional, 30-year, fixed interest rate loan to Lori Moon, Debtor's

5  non-filing spouse, sufficient to satisfy Milestone's loan. The amount of this Loan was $900,000

6  and the interest rate on the loan was approximately 5.9%.

7      18. In order to obtain a loan commitment, Moon was required to submit a payoff

8  demand from Milestone, his existing lender. Moon was also required to provide a statement

9  from his existing lender verifying the payments that Moon had made in the recent past.

10      19. On May 26, 2022, Old Republic Title Company sent Milestone a request for a

11  payoff demand. Old Republic sent a second payoff request to Milestone on June 2, 2022.

12  Milestone's Attorney, Mr. Kornberg, testified that Milestone received these notices, (Kornberg

13  Decl. at Docket entry 101, and Exhibit 101-1, in Adversary Proceeding 20-03117.)

14      20. Milestone failed to provide a proper payoff statement in response to either the May

15  26, or June 2, 2022 payoff requests.

16      21. In June and July 2022, Old Republic Title Company sent several additional requests

17  to Milestone for a payoff demand, as shown in the e-mails and notes of escrow personnel at Old

18  Republic Title, where the escrow for the refinance loan was pending, attached as Exhibit A.

19  Moon also made a further request for a payoff demand to Milestone on August 10, 2022.

20      22. Beginning in early July 2022, the mortgage broker, acting on behalf of Mr. Moon,

21  sent requests to Milestone, through its attorney, for information confirming the recent payments

22  on the loan and for information requested in a "Verification of Mortgage" (VOM). Milestone's

23  attorney sent the information requests to Milestone. The mortgage broker sent these information

24  requests at least four times in July and August 2022.

25      23. In August 2022, Moon still had a 30-year, fixed interest rate loan approved for

26  $900,000 at 5.9%.

27      24. Milestone never provided a payoff demand in response to the requests in July and

28  August by Old Republic for such a payoff demand.

25. Milestone never provided any response to the requests for information made by the mortgage broker in July and August, 2022.

26. As a result of Milestone's failure to provide a payoff demand in July and August 2022, Mrs. Moon was not able to obtain the $900,000 loan at 5.9% in the Summer of 2022.

27. As a result of Milestone's failure to provide the information requested by the mortgage broker July and August 2022, Mrs. Moon was unable to obtain the $900,000 loan at 5.9% in the Summer of 2022.

28. After the Moons unable to obtain the loan in August, 2022, Mr. Moon filed the initial complaint in this action on September 13, 2022.

29. In April 2023, the mortgage broker was able to obtain a new 30-year loan for $900,000. The interest rate on the loan is 7.625%.

30. In or about April 2023, Old Republic sent another request for a payoff demand to Milestone. This time, Milestone provided a payoff demand to Old Republic. In or around April 2023, Milestone also provided the information required by the VOM. The Moons obtained the new loan at 7.625%. The payoff of the Milestone loan closed on or about May 4, 2023.

31. The original 5.9% loan in the Summer of 2022 would have had a monthly payment of $5,338.23, with total interest of $1,021,762.79 to be paid over the 30 years of the loan.

32. The eventual 7.625% loan that Mrs. Moon obtained in April 2023 has a monthly payment of $6,370.14, with total interest of $1,393,250.40 to be paid over the 30 years of the loan. The increase in the interest amount is $371,487.61. This is a community property debt.

FIRST CAUSE OF ACTION
(California Civil Code §2943(c))

33. Plaintiff incorporates the allegations of each paragraph above.

34. California Civil Code §2943(c) provides that a secured lender must provide a payoff demand withing 21 days of a request for such a demand. Plaintiff was entitled to a payoff statement from Milestone within 21 days of each or the requests for a payoff demand set forth above.

35. During June of 2022, Defendant failed to provide a proper payoff demand required

by California law.

36.  During July and August of 2022, Defendant repeatedly failed to provide the payoff demand required by California law.

37.  Plaintiff has incurred damages, and continues to incur damages as a result of Defendant's failure.

SECOND CAUSE OF ACTION
(15 U.S.C. §1639g)

38.  Plaintiff incorporates the allegations of each paragraph above.

39.  15 U.S.C. §1639g provides that a creditor on a home loan must provide an accurate payoff demand no later than seven business days following the receipt of a written payoff demand.

40.  During June, of 2022, Defendant failed to provide a timely or proper payoff demand required by Federal law.

41.  During July and August of 2022, Defendant repeatedly failed to provide the payoff demand required by Federal law.

42.  Plaintiff has suffered damages and continues to suffer damages, as a result of Defendant's violation.

THIRD CAUSE OF ACTION
(Violation of RESPA)

43.  Plaintiff incorporates the allegations of each paragraph above.

44.  RESPA provides, at 12 U.S.C. §2605(k), that a loan servicer must comply with any regulations promulgated by Consumer Financial Protection Bureau.  Such regulations include 12 C.F.R. §1024.36(d), which provides that a loan servicer must provide a response to a request for information no later than 30 business days after receiving the request.

45.  During July and August of 2022, Milestone repeatedly failed to provide a timely response to the requests for information made by the mortgage broker.

46.  Plaintiff has suffered damages and continues to suffer damages, as a result of Defendant's violation.

**FOURTH CAUSE OF ACTION**
(Breach of Contract)

47. Plaintiff incorporates the allegations of each paragraph above.

48. Defendant's refusal to supply the payoff information necessary to satisfy Plaintiff's obligation to Defendant is a breach of the contract between Plaintiff and Defendant, and a breach of the covenant of good faith and fair dealing made a part of every contract governed by the laws of the State of California.

49. Plaintiff has been damaged and continues to be damaged by Defendant's breach.

**FIFTH CAUSE OF ACTION**
(Intentional Interference with Contractual Relations)

50. Plaintiff incorporates the allegations of each paragraph above.

51. In July and August of 2022, there existed a relationship between Plaintiff, his spouse and a third-party lender that contained the probability of providing economic benefit to Plaintiff. At such time, Plaintiff and his spouse were in the process of obtaining a new 30-year loan at an interest rate of 5.9%.

52. Defendant Milestone was aware of this relationship.

53. Defendant Milestone intentionally engaged in the wrongful acts of violating state and federal laws by failing to timely provide a payoff demand, and violating federal regulations by failing to provide timely information as required by federal regulations. Defendant intended to interfere with Plaintiff and his spouse obtaining a new loan, so that Defendant could continue to collect interest on its 2015 Loan at 7% as ordered in the Bankruptcy Court Judgment.

54. The wrongful acts of Defendant disrupted the relationship, and Plaintiff and his spouse were unable to obtain the loan at the 5.9% interest rate.

55. Defendant's wrong acts have caused economic harm to Plaintiff, in that he and his spouse were not able to obtain the 30-year loan at a 5.9% interest rate and instead had to obtain a 30-year loan at a 7.625% interest rate.

///

///

6

1       56. The wrongful acts of the Defendant were willful and oppressive, fraudulent or

2 malicious, and Plaintiff is therefore entitled to exemplary and punitive damages under California

3 Civil Code §3294.

4

5 WHEREFORE, Plaintiff prays for relief as follows:

6       A. For compensatory damages according to proof;

7       B. For exemplary and punitive damages as provided by state law;

8       C. For statutory penalties as provided by state and federal statutes;

9       D. For costs of suit, including reasonable attorneys fees pursuant to contract

10       E. For attorneys fees pursuant to 12 U.S.C. §2605(f); and

11       F. For such other and further relief as the court deems just.

12

13 Dated: January 22, 2024            /s/ John McDonnell

14                                 JOHN P. McDONNELL, ESQ.
                                Attorney for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATE BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA


In Re: Mark E. Moon vs.                     Chapter 11
      Milestone Financial, LLC
                            Bankruptcy No. 20-30711 DM

                            Adversary No.


EXHIBIT A

On **8/17/2022** at **5:30 PM, CSD-CPU\BDoyle** posted (WT)
(and emailed jbuchanan@ortc.com): REGARDING MILESTONE
FINANCIAL PAYOFF: Per lender they will not process our
payoff request as the borrower needs to call to settle an
ongoing dispute. CPU task has been closed.

On **8/16/2022** at **3:47 PM, CSD-CPU\mariam** posted (WT):
REGARDING MILESTONE FINANCIAL PAYOFF: Called 650-316-
8970 spoke with Jill who stated this loan is under dispute and
they are no able to provide payoff statement at this time, to
reach out to the borrower. I asked if she can provide
something in writing reason why payoff can not be
processed, Jill will ask to see what can be done but owner is
out traveling and he had instructed the rep to refer us back
to the borrower to call to settle the dispute first.

On **8/16/2022** at **3:29 PM, CSD-CPU\mariam** posted (WT):
REGARDING MILESTONE FINANCIAL PAYOFF: Called (800)
391-0595 entered option 2 no one answered call went to
voicemail, left detailed message requesting status of payoff
requested 8/10. Task to follow up 8/17.

On **8/16/2022** at **3:47 PM, CSD-CPU\mariam** posted (WT): REGARDING
MILESTONE FINANCIAL PAYOFF: Called 650-316-8970 spoke with Jill who stated
this loan is under dispute and they are no able to provide payoff statement at
this time, to reach out to the borrower. I asked if she can provide something in
writing reason why payoff can not be processed, Jill will ask to see what can be
done but owner is out traveling and he had instructed the rep to refer us back
to the borrower to call to settle the dispute first.

On **8/16/2022** at **3:29 PM, CSD-CPU\mariam** posted (WT): REGARDING
MILESTONE FINANCIAL PAYOFF: Called (800) 391-0595 entered option 2 no one
answered call went to voicemail, left detailed message requesting status of
payoff requested 8/10. Task to follow up 8/17.

On **8/16/2022** at **2:48 PM, CSD-CPU\mariam** posted (WT): REGARDING
MILESTONE FINANCIAL PAYOFF: Called (800) 391-0595 and auto stated call can
not be completed as dialed to check the number and try again. Called (800)
342-1146 and need an extension as I do not have an extension call dropped.

On **8/15/2022** at **12:28 PM**, **CSD-CPU\jmeza** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Called (800) 391-0595 and system said call cannot be completed at this time and call ended. Will try again tomorrow.

On **8/12/2022** at **2:26 PM**, **CSD-CPU\jmeza** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Called (800) 391-0595 and system said call cannot be completed at this time. Will try again Monday morning.

On **8/12/2022** at **11:08 AM**, **CSD-CPU\jmeza** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Called (800) 391-0595 and system said call cannot be completed at this time and try again later. Will try again this afternoon.

On **8/11/2022** at **11:10 AM**, **CSD-CPU\mchea** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Called 800-391-0596 and left a detailed voice message along with escrow number, property address, and callback number. Task to follow up 8/12

On **8/10/2022** at **9:22 AM**, **CSD-CPU\mchea** posted (WT): REGARDING MILESTONE FINANCIAL: Ordered via email kgray@milestonefinancial.net P.800-391-0595. Tasked to follow up 8/11

On **8/3/2022** at **12:48 PM**, **CSD-CPU\kcaporusso** posted (WT) (and emailed jbuchanan@ortc.com): REGARDING STALLED MILESTONE FINANCIAL PAYOFF: hello! Task has been closed as our email received no response. If this task is still needed, please assign a new task or email cpu.csd@ortc.com. Thank you!

On **8/1/2022** at **10:24 AM**, **CSD-CPU\kcaporusso** posted (WT) (and emailed jbuchanan@ortc.com): REGARDING STALLED MILESTONE FINANCIAL PAYOFF: the CSD-CPU is unable to process your request for the following reason: Called P:(800) 391-0596 opt 2 spoke to Jill for status. Rep stated to contact the borrowers let them know that the reason why Milestone Financial is not processing payoff due to on going dispute of the amount and the borrower's need to call Milestone Financial to settle the dispute. Please have borrowers call Milestone Financial and advise CPU how to proceed. Once this information is available, please email cpu.csd@ortc.com Thank you!

On **7/27/2022** at **2:02 PM**, **CSD-CPU\SPhillips** posted (WT) (and emailed jbuchanan@ortc.com): REGARDING STALLED MILESTONE FINANCIAL PAYOFF: the CSD-CPU is unable to process your request for the following reason: Called P:(800) 391-0596 opt 2 spoke to Jill for status. Rep stated to contact the borrowers let them know that the reason why Milestone Financial is not processing payoff due to on going dispute of the amount and the borrower's need to call Milestone Financial to settle the dispute. Please have borrowers call Milestone Financial and advise CPU how to proceed. Once this information is available, please email cpu.csd@ortc.com Thank you!

On **7/25/2022** at **2:33 PM**, **CSD-CPU\kcaporusso** posted (WT) (and emailed jbuchanan@ortc.com): REGARDING STALLED MILESTONE FINANCIAL PAYOFF: the CSD-CPU is unable to process your request for the following reason: Called P:(800) 391-0596 opt 2 spoke to Jill for status. Rep stated to contact the borrowers let them know that the reason why Milestone Financial is not processing payoff due to on going dispute of the amount and the borrower's need to call Milestone Financial to settle the dispute. Please have borrowers call Milestone Financial and advise CPU how to proceed. Once this information is available, please email cpu.csd@ortc.com Thank you!

Case: 22-03100   Doc# 31-4   Filed: 01/29/2021   Entered: 01/29/2021 23:54:53   Page 106 of 147

On **7/25/2022 at 2:04 PM, CSD-CPU\mariam** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Called P:(800) 391-0596 opt 2 spoke to Jill for status. Rep stated to contact the borrowers let them know that the reason why Milestone Financial is not processing payoff due to on going dispute of the amount and the borrower's need to call Milestone Financial to settle the dispute.

On **7/22/2022 at 1:20 PM, CSD-CPU\egoveia** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Called P:(800) 391-0596 opt 2 for status. Spoke to rep Angie who said she would call us back with info on the account. Tasked to follow up 7/25.

On **7/20/2022 at 1:47 PM, CSD-CPU\gsalas** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Sent a status update request to email kgray@milestonefinancial.net and admin@milestonefinancial.net Tasked to follow up 7/22

On **7/20/2022 at 11:18 AM, CSD-CPU\jmeza** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Called (800) 391-0595 and no answer. System said to try again later. Will try again this afternoon.

On **7/19/2022 at 12:40 PM, CSD-CPU\jmeza** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Called (800) 391-0595 and no answer. System said to try again later. Will try again tomorrow morning.

On **7/19/2022 at 10:58 AM, CSD-CPU\jmeza** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Called (800) 391-0595 twice and no answer. System said to try again later. Will try again this afternoon.

On **7/15/2022 at 11:57 AM, CSD-CPU\gsalas** posted (WT): REGARDING MILESTONE FINANCIAL PAYOFF: Sent request to email kgray@milestonefinancial.net Phone: (800) 391-0595 Tasked to follow up 7/19 to confirm received

[Quoted text hidden]

# EXHIBIT "5"



**PROMISSORY NOTE**

$795,000.00

Los Altos, California

June 23, 2015

CERTIFIED TO BE A TRUE COPY AND CORRECT COPY Title Company notary public

BY:

FOR VALUE RECEIVED, the undersigned, **E. MARK MOON AND LORI H. MOON** ("Maker" or "Borrower"), having an address at, 11 Mandalay Court, Redwood City, CA 94065, promises to pay to the order of **MILESTONE FINANCIAL, LLC,** a California limited liability company dba Alviso Funding ("Lender"), authorized to do business in the State of California (Lender and its successors and assigns who become holders of this Note are hereinafter collectively referred to as "Holder"), the principal sum of **SEVEN HUNDRED NINETY-FIVE THOUSAND AND 00/100ths DOLLARS ($795,000.00),** together with interest thereon from the date of this Note up to, but not including, the date the Loan is paid in full, at a rate per annum equal to the Interest Rate, except as otherwise provided.

1.    Definitions. The following terms shall have the meanings set forth below. Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the other Loan Documents.

Business Day: Any day of the week on which commercial banks are authorized to be open (other than Saturdays) or not required by Laws to close in the state the Property is located or in the state where payments made by Maker are received.

Deed of Trust: That certain Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents and Proceeds of even date herewith executed by Maker as "Trustor" to the benefit of Lender as "Beneficiary" as security for repayment of this Note.

Default Rate: A rate of interest per annum equal to the lesser of (i) the maximum rate allowed to be charged by Holder under applicable law, or (ii) the sum of the then-current Interest Rate plus six (6) percentage points.

Interest Rate: A rate of interest equal to **ELEVEN AND 30/100THS** percent **(11.30%)** per annum.

Loan Documents: This Note, the Deed of Trust, and all other security and other agreements executed by Maker in connection with the Loan.

Maturity Date: **JULY 31, 2017**.

Monthly Due Date: The due date for monthly payments of principal and interest on this Note pursuant to Section 2 below.

Note: This Promissory Note.

Principal Balance: The principal balance of this Note from time to time outstanding.

Moon - Note

1

2.    Payments.

(a)    Commencing on the **FIRST (1st) DAY of AUGUST, 2015**, and continuing on the **FIRST (1st) DAY** of each calendar month thereafter through and including the **THIRTY-FIRST (31st) DAY of JULY, 2017**, interest only payments in the amount of **SEVEN THOUSAND FOUR HUNDRED EIGHTY-TWO DOLLARS AND 94/100THS. ($7,482.94)** shall be due and payable. The entire unpaid Principal Balance, plus accrued interest and other amounts payable under the Loan Documents, shall be due and payable in full on the Maturity Date.

(b)    In addition, at the close of escrow for the Loan (the "Close of Escrow"), Maker shall pay to Lender an amount equal to all interest (if any), at the Interest Rate, on the Principal Balance for the period from and including the Close of Escrow through and including **FIRST (1st) DAY of JULY, 2015.**

(c)    **THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH HEREIN** MAKER HEREBY ACKNOWLEDGES AND AGREES THAT A SUBSTANTIAL PORTION OF THE ORIGINAL PRINCIPAL SUM EVIDENCED BY THIS NOTE WILL MAY BE OUTSTANDING AND DUE ON THE MATURITY DATE IN THE FORM OF A BALLOON PAYMENT. MAKER HAS REVIEWED AN AMORTIZATION SCHEDULE FOR THE LOAN AND UNDERSTANDS THE AMOUNT WHICH WILL BE OWED ON THE MATURITY DATE.

(d)    MAKER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE TOGETHER WITH ANY UNPAID INTEREST, COSTS AND OTHER SUMS DUE UNDER THE LOAN DOCUMENTS ON THE MATURITY DATE. MAKER UNDERSTANDS THAT HOLDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. MAKER UNDERSTANDS THAT IT WILL BE REQUIRED TO PAY THE BALLOON PAYMENT FROM OTHER RESOURCES THAT MAY BE AVAILABLE TO IT.]]

3.    Treatment of Payments.

(a)    All payments under this Note shall be made, without offset or deduction, (i) in lawful money of the United States of America at the following address (or such other address as Holder may notify Maker of from time to time), (ii) in immediately available federal funds, and (iii) if received by Holder prior to 2:00 p.m. local time at such place, shall be credited on that day or else, at Holder's option, shall be credited on the next Business Day:

> c/o INCS
> 1204 Cleveland Avenue
> Mount Vernon, WA 98273

(b)    The Interest Rate shall be calculated on a 365-day year basis, by applying the then-current Interest Rate over the number of days in a year, multiplied by the outstanding Principal Balance, multiplied by the actual number of days the Principal Balance is outstanding. Payments from Maker to Holder under this Note shall be applied first to any expense reimbursements under the Loan Documents, then to any Late Charges, then to accrued and unpaid interest and the balance to the Principal Balance due thereon.

Moon - Note                    2

(c)     Maker shall not send Holder payments marked "paid in full", "without recourse", or similar language. If Maker sends such a payment, Holder may accept it without losing any of Holder's rights under this Note, and Maker will remain obligated to pay any further amount owed to Holder.

(d)     Maker shall pay a fee to Holder in the amount of $25.00 if Maker makes a payment and the check or preauthorized charge with which Maker pays is later dishonored. Thereafter, Holder, at its option, may elect to demand that all remaining payments due under this Note shall be paid in the form of certified funds, wire, cashier's check or money order.

(e)     If Holder elects to periodically provide to Maker any statements setting forth the transactions arising hereunder or the outstanding Principal Balance (without undertaking any duty or obligation to do so), then each statement shall be considered correct and binding upon Maker, absent manifest error, as an account stated, except to the extent that Holder receives, within thirty (30) days after the mailing of such statement, written notice from Maker of any specific exceptions by Maker to that statement.

4.     Late Charges; Default Rate.

(a) If Maker fails timely to pay any sum due and payable under this Note within ten (10) days after the date due, a late charge equal to ten percent (10.000%) of each such sum (the "Late Charge") shall be immediately due and payable. Maker acknowledges and agrees that its failure to make timely payments will result in Holder incurring additional expense in servicing the Loan, that it is extremely difficult and impractical to ascertain the extent of such damages and that the Late Charge represents a fair and reasonable estimate, considering all of the circumstances existing on the date of the execution of this Note, of the costs that Holder will incur by reason of such late payment. Acceptance of any Late Charge shall not constitute a waiver of the default with respect to the late payment, and shall not prevent Holder from exercising any of the other rights or remedies available hereunder or at law or in equity. Maker need pay a Late Charge only once with respect to any specific late payment.

(b) Maker further acknowledges and agrees that during the time that any payment of principal, interest or other amount due under this Note shall be delinquent (including without limitation any balloon payment), Holder will incur additional costs and expenses attributable to its loss of use of the money due and to the adverse impact on Holder's ability to meet its other obligations and avail itself of other opportunities. Maker agrees that it is extremely difficult and impractical to ascertain the extent of such expenses, and Maker therefore agrees that upon the occurrence of an Event of Default, interest at the Default Rate shall accrue on the Indebtedness, regardless of whether there has been an acceleration of the maturity of the Indebtedness.

5.     Event of Default. The occurrence of an Event of Default under any Loan Document shall constitute an Event of Default under this Note. Upon the occurrence of an Event of Default, including the failure of Maker to observe the provisions of Paragraph 4.2 of the Deed of Trust, Holder, at its option, may cause the Principal Balance, together with all unpaid accrued interest and any other sums evidenced or secured by this Note or any Loan Document, to be immediately due and payable, without further presentment, demand, protest or notice of any kind, by so notifying Maker in writing.

6.     Security. This Note is secured by the Deed of Trust and the other Loan Documents, which contain provisions for the acceleration of the maturity of this Note upon the occurrence of certain described events.

Moon - Note                                              3

7.     <u>Holder's Rights; No Waiver by Holder</u>. The rights, powers and remedies of Holder under this Note shall be in addition to all rights, powers and remedies given to Holder under the Loan Documents and any other agreement or document securing or evidencing the Indebtedness or by virtue of any statute or rule of law, including the California Uniform Commercial Code. All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently in Holder's sole discretion without impairing Holder's security interest, rights or available remedies. Any forbearance, failure or delay by Holder in exercising any right, power or remedy shall not preclude further exercise thereof, and every right, power or remedy of Holder shall continue in full force and effect until such right, power or remedy is specifically waived in a writing executed by Holder. Maker waives any right to require Holder to proceed against any Person or to exhaust all or any part of the Property or to pursue any remedy in Holder's power.

8.     <u>Maker's Waivers</u>. Maker and any endorsers of this Note, and each of them, hereby waive diligence, demand, presentment for payment, notice of non-payment, protest and notice of protest, and specifically consent to and waive notice of any renewals or extensions of this Note, whether made to or in favor of Maker or any other person or persons. Maker and any endorsers of this Note expressly waive all right to the benefit of any statute of limitations and any moratorium, reinstatement, marshaling, forbearance, extension, or appraisement now or hereafter provided by the Constitution and the laws of the United States and of any state thereof, as a defense to any demand against Maker or any such endorsers, to the fullest extent permitted by law.

9.     <u>Transfers by Holder</u>. This Note, and/or any interest in this Note and/or the Loan Documents may be hypothecated, transferred or assigned by Holder without the prior consent of Maker.

10.     <u>Amendment</u>. This Note may be amended or modified only by an instrument in writing which by its express terms refers to this Note and which is duly executed by the party sought to be bound thereby.

11.     <u>Successors and Assigns</u>. This Note shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and permitted assigns.

12.     <u>Governing Law/Venue</u>. This Note shall be governed by and construed in accordance with the laws of the State of California, in accordance with the internal laws of the State of California, without regard to conflicts of laws and principles. In the event of any action or proceeding arising out of or in connection with this Note, Maker agrees upon Holder's request to submit to the jurisdiction of the courts of Santa Clara County, California.

13.     <u>Time</u>. Time is of the essence with respect to each and every term and provision of this Note.

14.     <u>Usury</u>. Notwithstanding any provision herein, the total liability for payments in the nature of interest, additional interest, or other charges, under this Note or any other Loan Document, shall not exceed the applicable limits imposed by any applicable state or Federal interest rate laws. If any such payments in the nature of interest, additional interest, and other charges made hereunder or under any other Loan Documents are held to be in excess of the applicable limits imposed by any applicable state or Federal laws, it is agreed that any such amount held to be in excess shall be considered payment of principal and the Principal Balance shall be reduced by such amount in the inverse order of maturity so that the total liability for payments in the nature of interest, additional interest and other charges, shall never exceed the applicable limits imposed by any applicable state or Federal interest rate laws in compliance with the desires of Holder and Maker as set forth herein.

Moon - Note             4

15. Notices. All notices, consents and other communications required or permitted by this Note shall be in writing and shall be given in the manner set forth in the Deed of Trust.

16. Attorneys' Fees. Maker agrees to pay all costs, including actual attorneys' fees and expenses incurred in good faith (including court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses), incurred by Holder in enforcing payment or collection of this Note or the terms of any Loan Document, whether or not suit is filed, including without limitation fees in obtaining legal advice regarding Holder's rights and remedies, and all costs and fees incurred in obtaining relief from any stay or injunction.

17. General Partner Liability. Notwithstanding any contrary provision of applicable law, each general partner in any partnership that is a constituent part of Maker or is a constituent part of any constituent entity of Maker, agrees that Holder need not exhaust the partnership assets of such partnership before executing upon the assets of such general partner in satisfaction of the obligations evidenced hereby or by any other document, instrument or agreement entered into by such partnership in connection with the loan evidence by this Note, but may execute upon such general partner's assets prior to, at the same time as, or after executing upon the partnership assets of such partnership. Each such general partner shall be jointly and severally liable for such obligations with all other persons and entities liable therefor. Upon Holder's request, Maker shall cause each and every person or entity becoming a general partner after the date of this Note to execute an instrument agreeing to the provisions of this Section 17.

18. Joint and Several Liability. If Borrower consists of more than one person and/or entity, the liability of each such person and/or entity under this Note shall be joint and several.

19. Representations and Warranties. Borrower represents and warrants that the proceeds of the loan evidenced by this Note (a) are strictly for business, commercial, or investment purposes ONLY, and (b) will not be used primarily for agricultural, farming personal, family, household or other consumer purposes. Maker acknowledges that this Note was negotiated and arranged by a licensed California real estate broker.

20. Due on Sale Provisions. The Deed of Trust contains the following provisions:

"Prohibited Transfers. Trustor shall not participate in, and shall not cause, allow or otherwise permit, a Transfer without the prior written consent of Beneficiary, which consent may be given or withheld for any reason (or for no reason) or given conditionally (including a requirement that the permitted transferee assume in writing, in form and substance satisfactory to Beneficiary in its sole discretion, all of Trustor's Obligations under the Loan Documents and agree to be bound thereby), as determined by Beneficiary in its sole and absolute discretion, and any default under, failure to observe, or breach of the provisions of this Paragraph 4.2 shall constitute an immediate Event of Default hereunder and, at the option of Beneficiary, Beneficiary may accelerate the Indebtedness whereby the entire Indebtedness (including any Prepayment Premium) shall become immediately due and payable. Any assumption of Trustor's obligations hereunder shall not, however, release any Loan Party from any liability under the Loan Documents. Consent to any such Transfer by Beneficiary shall not be deemed a waiver of Beneficiary's right to require such consent to any further or future Transfers.

Moon - Note

5

Transfer: Any of the following:

(i) a sale, conveyance, assignment, transfer, alienation, or other disposition of the Property, of any kind (other than Leases), or any other transaction the result of which is, directly or indirectly, to divest Trustor of any portion of or interest in its title to the Property, voluntarily or involuntarily;

(ii) a mortgage, conveyance of security title, or encumbrance of the Property, or any interest therein in any manner (whether direct or indirect, voluntary or involuntary, but excluding the imposition of mechanics' or materialman's liens);

(iii) a merger, consolidation or dissolution involving, or the sale, transfer or assignment of all or substantially all of, the assets of Trustor, or any general partner or member of Trustor;

(iv) an assignment, transfer, pledge, voluntary or involuntary sale, or encumbrance (at one time or over any period of time) of ten percent (10%) or more of (A) the beneficial interest in Trustor, (B) the voting stock or beneficial interest of any corporation or limited liability company which is a general partner or member of Trustor, or any corporation or limited liability company directly or indirectly owning ten percent (10%) or more of any such corporation or limited liability company, or (C) the ownership interest of any owner of ten percent (10%) or more of the beneficial interests of Trustor if Trustor is a trust;

(v) a transfer of any general partnership, managing member or controlling interest in Trustor, in an entity which is in Trustor's chain of ownership and which is derivatively liable for the obligations of Trustor, or in any entity that has the right to participate directly or indirectly in the control of the management or operations of Trustor;

(vi) a conversion of any such general partnership interest to a limited partnership interest;

(vii) a change, removal, or resignation of any general partner of Trustor if Trustor is a partnership; or

(viii) a change, removal, or resignation of any managing member (or if no managing member, any member) of Trustor if Trustor is a limited liability company."

21. **REVIEW BY LEGAL COUNSEL. Maker warrants, covenants and acknowledges to Lender that each person executing below on behalf of the Maker has obtained legal counsel and advice of their own choice, and has had such counsel review this document prior to executing below. Each fully understands their rights and obligations hereunder, and each party has read and reviewed all the terms and conditions of this Note and the each of the Loan Documents, and each party is entering into this Note freely and voluntarily and in the absence of fraud, undue influence, coercion or duress of any kind.**

**Do not sign this Note, the Deeds of Trust and/or any of the other Loan Documents until you have read and understood all the information contained in this document. Review this and all legal documents with an attorney and/or accountant of your choice.**

Moon - Note

6

22.   Prepayment.

   (a)  If for any reason the Principal Balance or any portion thereof is paid prior **the Maturity Date,** whether voluntarily, involuntarily, by operation of law, acceleration, including acceleration on account of an Event of Default and/or a violation of Paragraph 4.2 of the Deed of Trust, or otherwise, Maker shall pay to Holder, together with the amount being prepaid and any unpaid accrued interest, a prepayment charge (the "Prepayment Premium") equal to **$0.00**. [[Thereafter, Maker may prepay all or any portion of the Principal Balance without payment of any Prepayment Premium.]]

   (b)  Maker shall have the right voluntarily to prepay all or any portion of the Principal Balance, together with accrued interest thereon, but only if Maker gives Holder not less than thirty (30) days' prior written notice of its intention to prepay, and delivers to Holder, on or before the date of prepayment, the Prepayment Premium as calculated above (if any), together with the amount being prepaid and all accrued interest and other sums due under the Loan Documents.

   (c)  Maker acknowledges that (i) the Prepayment Premium represents the reasonable estimate of Holder and Maker of a fair average compensation for the loss that may be sustained by Holder due to the payment of any of the Principal Balance prior to the Maturity Date; and (ii) the Prepayment Premium shall be paid without prejudice to the right of Holder to collect any other amounts provided to be paid hereunder or under the other Loan Documents.

   (d)  Maker hereby expressly waives any right it may have under California Civil Code Section 2954.10 to prepay this Note, in whole or in part, without payment of the Prepayment Premium, upon acceleration of the Maturity Date of this Note, and agrees that if for any reason, a prepayment of any or all of this Note is made, whether voluntarily, involuntarily or upon or following any acceleration of the Maturity Date of this Note by Holder, then Maker shall pay the Prepayment Premium calculated pursuant to Paragraph 22(a) above. By initialing this provision in the space provided below, Maker hereby declares that Holder's agreement to make the Loan at the Interest Rate and for the term set forth in this Note constitutes adequate consideration, given individual weight by Maker, for this waiver and agreement.

INITIALS OF MAKER:  ╱‾‾‾

IN WITNESS WHEREOF, Maker has caused this Note to be executed and delivered effective as of the date first written above.

**MAKER:**

_____
**E. MARK MOON**

_____
**LORI H. MOON**

# EXHIBIT "6"

## SETTLEMENT AGREEMENT, INDEMNITY AND
## FIRST AMENDMENT TO PROMISSORY NOTE SECURED BY DEED OF TRUST

This SETTLEMENT AGREEMENT, INDEMNITY AND FIRST AMENDMENT TO PROMISSORY NOTE SECURED BY DEED OF TRUST (hereinafter the "Agreement") is made and entered into on this **26th day of August, 2016**, by and between **Milestone Financial LLC**, a California limited liability company (hereinafter, "Lender") on the one hand, and **E. Mark Moon and Lori H. Moon** individuals (hereinafter, the "Borrower") on the other hand, in connection with that certain Promissory Note **dated June 23, 2015**, executed by Borrower in favor of Lender, having an original principal face amount of **$795,000.00** (hereinafter the "Note"). The Note is secured by a **Deed of Trust, Security Agreement and Fixture Filing with Assignment if Rent and Proceeds** of equal amount recorded on **June 26, 2016** in the **San Mateo County Recorder's Office** as Instrument Number: **2015-067220** (hereinafter, the "Deed of Trust") encumbering that property commonly known as **11 Mandalay Court, Redwood City, CA 94065** (hereinafter, the "Property"). Lender and Borrower are collectively referred to herein as the "Parties".

## RECITALS:

WHEREAS, the Note and Deed of Trust were arranged through a California licensed real estate broker known as **Bluewater Funding Inc.**, of **Alameda, California**;

WHEREAS, Lender is the sole owner and holder of the Note and the sole beneficiary of the Deed of Trust;

WHEREAS, Borrower remains the sole owner of the Property as set forth in the Deed of Trust and has not allowed any other debts, liens or encumbrances to be recorded against the Property, since the Deed of Trust was recorded.

WHEREAS, the Note matures on **July 31, 2017** (the "Maturity Date") and Lender has demanded that Borrower honor the payment obligations which Borrower indicates cannot/will not be done. Borrower asserts that they are unable to pay off or refinance the loan on or before said Maturity Date. Borrower's failure to pay Lender on or before the Maturity Date would result in Lender commencing foreclosure proceedings which could result in negative credit consequences for the Borrower and the loss of Borrower's equity in the Property. Lender also understands that action taken by it to foreclose on the Property might also induce Borrower to file for bankruptcy or commence litigation which would delay and add to Milestone's collection costs, for which ultimately Borrower could be liable.

WHEREFORE, in consideration of avoiding the expenses and uncertainties involved in foreclosing on the Property and the risks and negative effects associated with it and possible bankruptcy or litigation, the Parties desire to resolve any and all issues and disputes between them, with the Lender agreeing to extend the Maturity Date and lower the interest rate in the Note, and Borrower agreeing to the terms below including indemnification of Lender and a full release of any claims against Lender and all those persons and entities referenced as "Released Parties" in **Paragraph 16**, below. Accordingly, on the basis of the foregoing and in consideration of the covenants and agreements set forth below, the Parties agree as follows:

## AGREEMENTS:

**1.    Borrower certifies, represents, acknowledges and warrants to Lender that he/she/it has reviewed this Agreement with a competent Attorney and CPA prior to execution below, and has also reviewed and agrees with all the accounting relating to the Note prepared by the current servicing (collection) agent, INCS.**

**2.    Borrower further certifies, represents, acknowledges and warrants that Borrower's attorney has had an opportunity to thoroughly evaluate the contents of this Agreement and that there are no deficiencies, inaccuracies, provisions or omissions of any kind associated with it which would in any way entitle Borrower to argue that the Agreement or any of its provisions are invalid, unenforceable or unconscionable in whole or in part.**

3.    Lender enters into this Agreement solely to accommodate the needs of Borrower and despite its wishes that the current Note and associated loan documents be honored.  Lender does not wish to be at any risk whatsoever.  Therefore, Borrower hereby agrees to indemnify, defend through counsel of Lender's choice, and hold harmless Lender (and all of those persons and entities referenced below as "Released Parties") from and against any and all claims, losses, demands, liabilities, damages, penalties, fines and expenses of any kind of nature, including without limitation, all costs of litigation, attorney's fees, and expert fees which Lender, as well as any other persons or entities benefitted by Borrower's general release set forth below, and Lender's successors or assigns, may directly or indirectly sustain or suffer as a consequence of entering into this Agreement, as a consequence of any claim, liability, loss, demand, damage, penalty, expense, cost, attorney fee, expert fee based in whole or in part on any alleged or actual invalidity, unenforceability, and/or unconscionability of this Agreement or any  provision contained within it, or relating in any way to the Note, Deed of Trust or the Property.  This indemnification agreement to defend and agreement to hold harmless extends to any and all claims brought or originated through Borrower or any other person or entity whatsoever including but not limited to any government agency.

4.    As of **September 1, 2016**, Borrower admits to and acknowledges owing Lender the unpaid principal balance of **Nine Hundred Two Thousand Five Hundred Twenty-Five & 34/100ths Dollars ($902,525.34)** (the "Total Payoff").

5.    The Maturity Date of the Note is hereby extended to **July 31, 2019**, at which time all unpaid sums are due and payable in full.

6.    Effective **September 1, 2016**, the interest rate of the Note shall be adjusted from **11.30%** to **11.05%**.

7.    As consideration for Lender entering into this Agreement and extending the Maturity Date and reducing the interest rate, Borrower shall pay to Lender the sum of **$6,008.71**. Borrower understands that by Lender agreeing to extend the Maturity Date of the Note, Lender will forego receiving fees by The Maturity Date to originate a new loan, and will receive less in interest payments.

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 118 of 177

## AGREEMENTS:

**1.     Borrower certifies, represents, acknowledges and warrants to Lender that he/she/it has reviewed this Agreement with a competent Attorney and CPA prior to execution below, and has also reviewed and agrees with all the accounting relating to the Note prepared by the current servicing (collection) agent, INCS.**

**2.     Borrower further certifies, represents, acknowledges and warrants that Borrower's attorney has had an opportunity to thoroughly evaluate the contents of this Agreement and that there are no deficiencies, inaccuracies, provisions or omissions of any kind associated with it which would in any way entitle Borrower to argue that the Agreement or any of its provisions are invalid, unenforceable or unconscionable in whole or in part.**

3.     Lender enters into this Agreement solely to accommodate the needs of Borrower and despite its wishes that the current Note and associated loan documents be honored.  Lender does not wish to be at any risk whatsoever.  Therefore, Borrower hereby agrees to indemnify, defend through counsel of Lender's choice, and hold harmless Lender (and all of those persons and entities referenced below as "Released Parties") from and against any and all claims, losses, demands, liabilities, damages, penalties, fines and expenses of any kind of nature, including without limitation, all costs of litigation, attorney's fees, and expert fees which Lender, as well as any other persons or entities benefitted by Borrower's general release set forth below, and Lender's successors or assigns, may directly or indirectly sustain or suffer as a consequence of entering into this Agreement, as a consequence of any claim, liability, loss, demand, damage, penalty, expense, cost, attorney fee, expert fee based in whole or in part on any alleged or actual invalidity, unenforceability, and/or unconscionability of this Agreement or any  provision contained within it, or relating in any way to the Note, Deed of Trust or the Property.  This indemnification agreement to defend and agreement to hold harmless extends to any and all claims brought or originated through Borrower or any other person or entity whatsoever including but not limited to any government agency.

4.     As of **September 1, 2016**, Borrower admits to and acknowledges owing Lender the unpaid principal balance of **Nine Hundred Two Thousand Five Hundred Twenty-Five & 34/100ths Dollars ($902,525.34)** (the "Total Payoff").

5.     The Maturity Date of the Note is hereby extended to **July 31, 2019**, at which time all unpaid sums are due and payable in full.

6.     Effective **October 1, 2016**, the interest rate of the Note shall be adjusted from **11.30%** to **11.05%**.

7.     As consideration for Lender entering into this Agreement and extending the Maturity Date and reducing the interest rate, Borrower shall pay to Lender the sum of **$6,008.71**. Borrower understands that by Lender agreeing to extend the Maturity Date of the Note, Lender will forego receiving fees by The Maturity Date to originate a new loan, and will receive less in interest payments.

## 8.  LATE CHARGES.

Should any payment due hereunder not be received on or before the TENTH (10th) day after its due date (the "Grace Period"), Borrower shall immediately pay to Lender, without notice or demand by Lender, a late charge calculated at TEN PERCENT (10.00%) of any payment amount then due, including the final (balloon) payment. Borrower will pay this late charge only once on any late payment. Borrower agrees that Lender will incur administrative costs and other damages not compensated by payment of interest as a result of any payment not being made when due, and acknowledges that calculation of actual damages is extremely difficult and impracticable and that the foregoing amount is a reasonable estimate of these damages. This late charge represents a fair and reasonable estimate, considering all of the circumstances existing on the date of the execution of this Note, of the costs that Lender will incur by reason of such late payment.  Acceptance of any late charge shall not constitute a waiver of the default with respect to the late payment, and shall not prevent Lender from exercising any of the other rights or remedies available hereunder or at law or in equity.

9.    Commencing **October 1, 2016**, based on a Total Payoff of **$902,525.34** due under the Note, Borrower shall make **interest-only** payments each month to Lender, in the amount of **Eight Thousand Three Hundred Ten and 75/100ths Dollars ($8,310.75)**, and continuing monthly thereafter until the Note is paid in full, unless the interest rate is increased in accordance with the default provisions contained in the Note is accelerated by reason of Borrower's default.

All payments are made payable to and mailed to:

**INCS**
**Attention: Payment Processing**
**1204 Cleveland Avenue**
**Mount Vernon, WA  98273**
**360-336-5213**

10.    **SERVICER ADJUSTMENTS.**

Payment under the Note is or will be serviced and its payments collected by INCS of Mount Vernon, WA. The Parties hereto hereby direct INCS to carry out the following:

**A.    Adjust up or down the Total Payoff set forth above in Paragraph 4 to include or credit any unpaid or prepaid interest, advances, late fees, costs and other amounts which are not included or reflected in said Balance.**

**B.    Adjust the interest-only payment set forth above in Paragraph 9 to reflect any adjustments in the Total Payoff set forth above in Paragraph 9.**

**C.    Deliver to Borrower a new payment book with updated payment coupons reflecting the changes in the Note and the new Total Payoff.**

E. Moon - Settlement Agreement, Indemnity and First Amendment To Promissory Note Secured by Deed of Trust

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 120 of 177

11.  **WARRANTY THAT TITLE HAS NOT CHANGED.**

Borrower certifies, represents, acknowledges and warrants to Lender that, since the recording date of the Deed of Trust, Borrower has not allowed, voluntarily or involuntarily, any change to the title in and to the Property, including without limitation, the further encumbering of debt against the Property, or the transferring of any interest in the Property.

12.  **THIS AGREEMENT IS NEITHER A LOAN NOR A FORBEARANCE.**

Borrower and Lender fully understand, and it is their intent, that the true purpose of this Agreement is NOT to be either a loan nor a forbearance; but instead to be a settlement, to resolve all outstanding disputes, and to avoid foreclosure and collection proceedings which could result in Borrower losing the Property and any equity which Borrower may still retain in the Property.

13.  **LENDER REMEDIES ON DEFAULT.**

Upon any default under the Note, the Deed of Trust and/or this Agreement, the Lender may, at its option, without demand or notice, impose any of the following remedies against Borrower, including any remedies set forth the Deed of Trust:

A.    Advance for reimbursement by Borrower any and all costs of collection, including but not limited to, reasonable attorney's fees incurred on account of such collection activities, whether or not suit is filed herein, to the extent not prohibited by applicable law, with all such sums becoming a part of the indebtedness and secured by the Deed of Trust.

B.    Exercise any legal right or remedy under the Note, the Deed of Trust, this Agreement and any of the other loan documents, regardless of any prior forbearance. No waiver of this right shall be effective unless in writing. Consent by the Lender to one transfer, conveyance or alienation of the Property shall not constitute a waiver of the right to require such consent to succeeding transactions.

C.    Demand payment of the entire principal balance, together with all accrued but unpaid interest, advances, fees, costs and other sums due thereon, with all such sums becoming immediately due and payable.

D.    Increase the interest rate on the entire unpaid principal balance by nine percentage points (9.00%) **above** the interest rate then in effect at the time of default (the "Default Rate") payable as follows:

    (i)    From and after expiration of the grace period for the last scheduled monthly payment; OR

    (ii)   From and after the date the entire unpaid principal balance hereof shall have become due and payable, whether by acceleration, at maturity or otherwise, until the Note shall be paid full; OR

(iii) From and after the date of filing of Notice of Default until Borrower has cured such default in its entirety in accordance with the provisions of the California Civil Code.

(iv) If the Default Rate exceeds that rate allowed by law, then the maximum rate of interest, if any, may be collected by Lender.

## 14. **WAIVER OF JURY TRIAL.**

Borrower agrees, in any litigation arising out of or relating to the Note, Deed of Trust or this Agreement in which Lender is an adverse party, to waive a trial by jury and in any arbitration or litigation arising out of or relating to the Note or the Agreement, to waive the right to interpose any setoff, defense or counterclaim of any nature or description.

## 15. **NO OUTSTANDING CLAIMS BY BORROWER.**

Borrower acknowledges, certifies, warrants and represents that he/she/it has no outstanding claims, disputes, or offsets, pending or threatened against the Lender or individuals and entities identified above as "Released Parties", for any reason including but not limited to claims or disputes relating to or regarding the Note, the Deed of Trust or any related loan documents; or concerning any accountings performed by Lender and its servicing (collection) agent, including INCS. Borrower and further certifies, warrants, represents and acknowledges that the Note, Deed of Trust, related loan documents and this Agreement are valid and enforceable .as are each of the provisions contained within them. Borrower understands that Lender and its successors have and will rely upon the acknowledgments, warrants, representations and certifications set forth in this Agreement.

## 16. **BORROWER'S GENERAL RELEASE.**

In consideration of the compromises, mutual covenants and agreements set forth herein, Borrower, on Borrower's own behalf and on behalf of any affiliated corporations, organizations, partnerships, joint ventures, officers, directors, members, agents, trusts, trustees, beneficiaries, shareholders, employees, successors, assigns, insurers, and attorneys, and all persons acting at his/her/its direction (collectively the "Releasing Parties"), does hereby release, relieve, discharge and forever hold harmless Lender, INCS of Mount Vernon, WA, or any other loan servicer utilized by Lender for collection under the Note, and their affiliated corporations, organizations, partnerships, joint ventures, officers, directors, employees, agents, directors, trustees, trust beneficiaries, shareholders, members, including, but not limited to, **William R. Stuart, Carolyn T. Stuart, Zoe Hamilton, Bear Bruin Ventures, Inc.** (including any successor thereto), and Lender's employees, contractors, beneficiaries, partners predecessors and successors in interest, assigns, attorneys, and insurance carriers (collectively, the "Released Parties") from any and all known and unknown claims, complaints, demands, disputes, lawsuits, causes of action (whether at law or in equity), losses, liabilities and damages (including attorneys' fees) of any kind or nature and description whatsoever, whether known or unknown, suspected or claimed, which Releasing Parties have or may claim to have against any of the Released Parties from the beginning of time to and including the date of this Agreement including, without limitation, any and all known and unknown claims, complaints, demands, disputes, lawsuits, causes of action, losses, liabilities and

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 122 of 177

damages (including attorneys' fees ) relating to or arising from this Agreement (including negotiations, communications, statements, omissions or conduct in any way relating to implementation of this Agreement), the Note, the Deed of Trust, related loan documents ( including all accountings of sums due), and/or related to the Property.

It is the intention of Borrower, and Borrower hereby represents, warrants and agrees that this release and the attendant waiver of Section 1542 of the Civil Code of the State of California is binding on Borrower as well as his/her/its employees, legal representatives, successors, or assigns or any person claiming through them, and that this Agreement binds any of Borrower's affiliated corporations, organizations, partnerships, joint ventures, officers, directors, members, agents, trusts, trustees, beneficiaries, shareholders, employees, successors, assigns, insurers and attorneys as well as all persons acting at Borrower's direction or on Borrower's behalf as well as Borrower's heirs, legal representatives, and the assigns of the aforementioned parties, individuals, and entities, including those persons and entities on whose behalf Borrower releases rights hereinabove.

17.  **BORROWER'S SPECIFIC WAIVER OF CC SECTION 1542.**

For and in consideration of the mutual covenants, agreements, and releases contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and except for the express obligations, terms and conditions set forth in this Agreement, Borrower voluntarily and knowingly, on Borrower's own behalf, executes this release with the express intention of waiving rights under Section 1542 of the Civil Code of the State of California. Borrower expressly releases and discharges the Released Parties from any and all known or unknown claims, disputes, demands, or charges of whatsoever nature, and from any and all known or unknown damages, claims, or causes of action either at law or in equity which Borrower or any person claiming through him/her/it may now have or may hereinafter have, whether the same be known to Borrower or which may hereafter arise, develop, or be discovered, from the beginning of time to and including the date of this Agreement, including, without limitation thereto, any claims, damages, liabilities, losses, or charges in any way relating to or arising from this Agreement (including negotiations, communications, statements or omissions in any way relating to implementation of this Agreement), the Note, the Deed of Trust, and related loan documents, including all accounting of sums due, and/or related to the Property.

Borrower hereby expressly waives all rights which they might otherwise have by virtue of Section 1542 of the Civil Code of the State of California with regard to the claims released herein, which Section reads as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

E. Moon - Settlement Agreement, Indemnity and First Amendment To Promissory Note Secured by Deed of Trust

18. **CONSENT TO MANDATORY ARBITRATION.**

**A. SPECIFICALLY AND EXPRESSLY EXCLUDING THE RIGHTS, REMEDIES, PROCEEDURES AND COMPLAINTS SET FORTH IN SUBSECTION B, BELOW,** ALL proceedings, disputes, claims or controversies arising out of or relating to this Agreement, Deed of Trust, the Note, the Loan, the Loan Documents, and the Property or in connection with any contract or any other matter between and among the Parties (and Associated Lender Individuals and Entities, as defined in subparagraph D, below), or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this mandatory arbitration proceeding, shall be determined by arbitration in the County of Santa Clara, CA before three (3) arbitrators. The arbitration shall be administered by JAMS pursuant to its current Comprehensive Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. The award of the arbitrators shall be binding, and conclusive on the Parties and Associated Lender Individuals and Entities, as defined in subparagraph D, below. A judgment confirming the award may be given by the Superior Court of Santa Clara County.

**B. RIGHTS, REMEDIES, PROCEDURES AND/OR COMPLAINTS NOT SUBJECT TO MANDATORY ARBITRATION.**

**Notwithstanding the Mandatory Arbitration Clause above, the Parties expressly agree that the Lender is NOT precluded by the Mandatory Arbitration provision above from seeking those rights and remedies provided under Articles 6, 7 & 8 of the Deed of Trust, nor is the Lender precluded from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction nor from pursuing, as may be appropriate, non-judicial foreclosure proceedings or unlawful detainer proceedings.**

**C. It is further agreed that:**

    ii)    The Chairperson of the arbitration panel be an attorney in the State of California with a principal area of practice and experience in the area of real estate lending; and

    ii)    That at least one of the other arbitrators either be a California retired judge who has overseen no fewer than three (3) litigations involving real estate lending or been a previous expert testifying in no fewer than three trial or arbitration matters on California real estate lending issues.

**D.** If any party fails to pay applicable fees charged by the arbitration organization, the party failing to do so shall be deemed in default, shall not be entitled to submit evidence in opposition to any claim of the other party and the arbitrators shall, after hearing evidence sufficient to support relief in favor of the other party, enter an award in favor of the other party or parties. Arbitration hereunder shall proceed solely on an individual basis without the right for any claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others. The arbitrators' authority to resolve and make written awards is limited to claims between or among the Parties to this Agreement *only*, EXCEPT if Will Stuart or any other individual or entity associated with the Lender (referred to in this Agreement

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 124 of 177

as "Associated Lender Individuals and Entities"), is named in a Complaint, or other proceeding or motion, by the Borrower or Broker and/or the Borrower or Broker contend that they have any rights or remedies against the Associated Lender Individuals or Entities, then the Borrower or Broker must arbitrate these rights or remedies (including those alleged in any Complaint or motion or other proceeding), in the same arbitration conducted amongst the Borrower, Broker and Lender as required herein, and thus the Borrower and Broker are barred from filing any action, Complaint, proceeding or motion against the Associated Lender Individuals and Entities in court or in any other proceeding, except to confirm any Arbitration Award made under this provision. Claims may not be joined or consolidated unless agreed to in writing by *all* Parties to this Agreement. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a Party to this Agreement, except Associated Lender Individuals and Entities.

    **E.**    In the event that any Party to this Agreement files a Complaint, motion or other filing with any court of law in lieu of filing a claim for arbitration as is required above, including against an Associated Lender Individual or Entity (except for those rights, remedies, procedures and complaints excluded from the mandatory arbitration requirement under section B. above) and another Party or Parties to this Agreement files a motion in said court of law to compel the arbitration required above, and if the motion to compel arbitration is granted, then the Party who filed the complaint, motion or other filing with the court, shall pay each of the Parties who filed or joined in the motion to compel arbitration, the sum of $2,000 as liquidated damages. The liquidated damages must be fully paid as a condition to the commencement of arbitration. The Parties to the Agreement agree that it would be impracticable or extremely difficult to fix actual damages in the event that one or more Parties to this Agreement tried to avoid the arbitration requirements herein by filing a complaint, motion or other filing in a court of law, thus requiring one or more of the other Parties to this Agreement to file a motion to compel the arbitration agreed to herein. The sum of $2,000 in liquidated damages to be paid to the Party or Parties who file or join in a motion to compel arbitration is the Parties' reasonable estimate of the other Party or Parties' damages in having to file or join in the motion to compel arbitration.

    **F.**    The Parties shall maintain the confidential nature of the arbitration proceeding and the Award, including the Hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an Award or its enforcement, or unless otherwise required by law or judicial decision.

    **G.**    This Agreement and the rights of the Parties hereunder shall be governed by and construed in accordance with the laws of the State of California, exclusive of conflict or choice of law rules.

    **H.**    In any arbitration arising out of or related this this Agreement, the Note, the Deed of Trust or any related loan documents, the arbitrators are NOT empowered to award punitive or exemplary damages, and the parties expressly waive any right to recover any such damages. The arbitrators may not award any incidental, indirect or consequential damages, including damages for lost profits.

E. Moon - Settlement Agreement, Indemnity and First Amendment To Promissory Note Secured by Deed of Trust

I.    In any arbitration arising out of or related to this Agreement, the arbitrators shall award to the prevailing party, if any, the arbitration costs, the arbitrators' fees, attorneys' fees and expert fees reasonably incurred by the prevailing party in connection with the arbitration. Further, if the arbitrators determine a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the claims and counterclaims, the arbitrators may award the prevailing party an appropriate percentage of the costs, and attorneys' fees and expert fees.

**J.    Borrower and Lender acknowledges that their consent to the mandatory arbitration provision contained herein is extremely material to the Agreement and Borrower and Lender acknowledge that LENDER WOULD NOT HAVE ENTERED INTO THIS AGREEMENT WITHOUT THE EXPRESS TERMS SET FORTH IN THE MANDATORY ARBITRATION CLAUSE ABOVE INCLUDING, without limitation, the methodology, rules and location of an arbitration proceeding.**

19. Borrower acknowledges that he/she/it is individually responsible for determining the tax consequences of this Agreement and the transactions herein contemplated and Borrower further acknowledges that Lender has not made any representations to them relative to the tax consequences of this Agreement.

20. Borrower represents, certifies, acknowledges and warrants to Lender that he/she/it has each reviewed this Agreement with a competent Attorney and CPA prior to execution below, and has also reviewed and agrees with all accounting relating to the Note prepared by the current servicing (collection) agent.

21. This Agreement shall be governed by and construed in accordance with the laws of the State of California and the Parties agree that the venue for any arbitration or lawsuit brought relating to this Agreement shall be the County of Santa Clara.

22. All covenants and agreements herein shall inure to the benefit of the Lender, its nominees, successors and assigns, and all those persons and entities benefited by the release(s) set forth above.

23. All other terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect, except to the extent modified by the express provisions of this Agreement. These documents contain the entire understanding between the parties and supersede any prior understandings or written or oral agreements between them relating to the subject matter of these documents and the parties further intends and agree that they constitute the complete and exclusive statement of the terms of the understandings between the parties, and the parties intend and agree that no extrinsic evidence whatsoever may be introduced in any proceeding involving these documents. **It is further agreed that any conflicts between the Note, Deed of Trust, and this Agreement, this Agreement shall control.**

24. Time is of the essence relating to all terms hereof.

25. In the event any litigation is pursued in order to enforce the terms of this Agreement, the prevailing party shall be entitle to recover its costs, attorney's fees and expert fees.

E. Moon - Settlement Agreement, Indemnity and First Amendment To Promissory Note Secured by Deed of Trust

IN WITNESS WHEREOF, the Parties below have duly executed, acknowledged, and have received a copy of this Agreement as evidenced by their signatures below, as of the date first written above, and agree that it was entered into in the County of Santa Clara.

**"Borrower"**

_____ Date: _9/1/16_

**E. MARK MOON**

_____ Date: _9/1/16_

**LORI H. MOON**

SEE ATTACHMENT FOR
NOTARY DATED:
09/01/2016
ⓘ IN ACCORDANCE WITH
CA CIVII CODE • 1189

**BORROWER SIGNATURE MUST BE NOTARIZED**

**"Lender"**

MILESTONE FINANCIAL LLC
A California Limited Liability Company

By:   Bear Bruin Ventures, Inc.,
      A California corporation
      Its Manager

_____ Date: _9/1/2016_

By: William R. Stuart, its President

E. Moon - Settlement Agreement, Indemnity and First Amendment To Promissory Note Secured by Deed of Trust

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 127 of 177

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of  SAN MATEO

On  09/01/2016  before me,  JONATHAN A. TAYLOR  , Notary Public,

(Here insert name and title of the officer)

personally appeared  E. MARK MOON AND LORI H. MOON ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

JONATHAN A. TAYLOR
COMM. #2119319
NOTARY PUBLIC • CALIFORNIA
SAN MATEO COUNTY
My commission expires July 13, 2019

(Notary Seal)

◆━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━◆

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER
- ☑ Individual (s)
- ☐ Corporate Officer

  _____
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

C 2004-2015 ProLink Signing Service, Inc. – All Rights Reserved www.TheProLink.com – Nationwide Notary Service

# EXHIBIT "7"

ꭢ

RECORDATION REQUESTED BY
Alviso Funding

AND WHEN RECORDED MAIL TO:

Alviso Funding
13131 Dieriex Drive
Mountain View, CA 94040

**APN: 095-370-320**     **JPN: 122-067-000-36 T**

**2015-067220**

12:51 pm 06/26/15 DT AG FF AS Fee: 120.00
Count of Pages 21
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



\* R 0 0 0 2 0 4 9 3 7 4 \*

$v/\!\!\!\!\!\!\!\!\!\!\!/\rho$

SPACE ABOVE THIS LINE FOR RECORDER'S USE

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE
FILING WITH ASSIGNMENT OF RENTS

**THIS DEED OF TRUST**, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS AND PROCEEDS (this "Deed of Trust") dated as of June 23, 2015, is made by **E. MARK MOON AND LORI H. MOON, HUSBAND AND WIFE AS COMMUNITY PROPERTY** with a mailing address of 11 Mandalay Court, Redwood City, CA 94065 (the initial Trustor), **to MORTGAGE LENDER SERVICES INC., A CALIFORNIA CORPORATION**, having offices at FOLSOM, CA (the initial Trustee), for the benefit of **ALVISO FUNDING**, located at 13131 Dieriex Drive, Mountain View, CA 94040 (the initial "Beneficiary").

<u>**WITNESSETH:**</u>

TRUSTOR HEREBY IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE, IN TRUST, WITH POWER OF SALE all of Trustor's right, title and interest now owned or hereafter acquired in and to the following property, together with the Personalty (as hereinafter defined):

A. That certain real property, and all appurtenances, easements, rights and privileges thereto, including all minerals, oil, gas and other hydrocarbon substances thereon or therein, air rights, water rights and development rights, and any land lying in the streets, roads or avenues adjoining the real property or any part thereof (collectively, the "Land") located in the County of **San Mateo,** State of California, and more particularly described in Exhibit A hereto;

B. All Improvements (as hereinafter defined);

C. All Fixtures (as hereinafter defined), whether now or hereafter installed, being hereby declared to be for all purposes of this Deed of Trust a part of the Land; and

D. All Rents and Proceeds (as hereinafter defined).

FOR THE PURPOSE OF SECURING, in such order of priority as Beneficiary may determine: (i) payment of the Indebtedness (as hereinafter defined); and (ii) payment (with interest as provided) and performance by Trustor of the other Obligations (as hereinafter defined).

ARTICLE 1
DEFINITIONS

Certain Defined Terms: As used in this Deed of Trust, the following terms shall have the following meanings. Terms defined in the other Loan Documents (as defined below) shall have the same meaning when used herein.

Agreements: As defined in Paragraph 8.2 hereof.

Beneficiary: The initial Beneficiary, **ALVISO FUNDING**, and any future owner or holder, including pledgees and participants of the Note, or any other instrument secured by this Deed of Trust, or any participation therein.

Moon – DOT, Redwood City, CA                    1

Collateral:  The Personalty and the Fixtures.

Default Rate:  As defined in the Note.

Environmental Law:  Any present and future Federal, state and local laws, statutes, ordinances, rules, regulations, standards, policies and other government directives or requirements, as well as common law, that apply to Trustor or the Property and relate to Hazardous Materials, including the Comprehensive Environmental Response, Compensation and Liability Act, the Resource Conservation and Recovery Act, and Sections 25115, 25117, 25122.7, 25140, 25249.8, 25281, 25316, 25501, and 25316 of the California Health and Safety Code; and Article 9 or Article 11 of Title 22 of the Administrative Code, Division 4, Chapter 20.

Event of Default:  As defined in Paragraph 6.1 hereof.

Fixtures:  Trustor's right, title and interest in all fixtures located upon or within the Improvements or now or hereafter installed in, or used in connection with any of the Improvements, whether or not permanently affixed to the Land or the Improvements.

Flood Acts:  The National Flood Insurance Act of 1968, the Flood Disaster Protection Act of 1973, or the National Flood Insurance Reform Act of 1994, as each have been or may be amended, or any successor Law.

Hazardous Materials:  Any petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives, flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; Microbial Matter, infectious substances, asbestos or asbestos-containing materials in any form; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material", "hazardous waste", "toxic substance", "toxic pollutant", "contaminant", or "pollutant" within the meaning of any Environmental Law.

Impositions:  All real estate and personal property and other taxes and assessments, water and sewer rates and charges levied or assessed upon or with respect to the Property, all dues, assessments and other charges levied or assessed by any homeowner or property owner association, common interest or planned unit association, or other association applicable to the Property, and any and all other charges, expenses, payments, claims, mechanics' or material suppliers' liens or assessments of any nature that at any time prior to or after the execution of the Loan Documents may be assessed, levied, imposed, or become a lien upon the Property or the rent or income received therefrom, or any use or occupancy thereof.

Impound Account:  The account that Trustor shall maintain when required pursuant to Paragraph 3.4 hereof.

Improvements:  Trustor's right, title and interest in all buildings and other improvements located on the Land, or at any time hereafter constructed or placed upon the Land, and all additions to, modifications of and replacements thereof.

Indebtedness:  The indebtedness evidenced by the Note (including any prepayment charges due thereunder) and all other amounts due from Trustor to Beneficiary evidenced or secured by the Loan Documents, plus interest on all such amounts as provided in the Loan Documents.

Land:  As defined in the above Granting Paragraph A of this Deed of Trust.

Laws and Restrictions:  All laws, regulations, orders, codes, ordinances, rules, statutes and policies, restrictive covenants and other title encumbrances, permits and approvals, and Leases, applicable to the development, occupancy, ownership, management, use, and/or operation of the Property or otherwise affecting the Property or Trustor.

Leases:  Any and all leasehold interests, and other rental agreements, licenses and concessions, now or hereafter affecting or covering any part of the Property.

Loan:  The loan from Beneficiary to Trustor evidenced by the Note.

Loan Documents:  The Note, this Deed of Trust, and all other documents, evidencing, securing or relating to the Loan, the payment of the Indebtedness or the performance of the Obligations.

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 131 of 177

<u>Loan Parties</u>: Any Trustor, any general partner, member, trustee or holder of a beneficial interest of Trustor or any Person constituting one of a Trustor that consists of multiple Persons, and/or any guarantor of any of Trustor's obligations under any of the Loan Documents.

<u>Material Adverse Change</u>: Any material and adverse change in (i) the financial condition of any of the Loan Parties, or (ii) the condition, management or operation of the Property.

<u>Net Proceeds</u>: As defined in <u>Paragraph 5.1B</u> hereof.

<u>Note</u>: The Promissory Note of even date herewith executed by Trustor in the original principal amount of **SEVEN HUNDRED NINETY-FIVE THOUSAND AND 00/100ths DOLLARS ($795,000.00),** payable to Beneficiary or its order, and all modifications, renewals or extensions thereof.

<u>Obligations</u>: Any and all of the terms, covenants, promises and other obligations (including payment of the Indebtedness) made or owing by Trustor to or due to Beneficiary as provided in the Loan Documents and all of the material covenants, promises and other obligations made or owing by Trustor to any Person (other than Beneficiary) relating to the Property.

<u>Permitted Exceptions</u>: All of those title exceptions set forth in the title insurance policy issued to Beneficiary in connection with the Loan, which insures the priority of this Deed of Trust.

<u>Person</u>: Any natural person, corporation, firm, association, government, governmental agency or any other entity, whether acting in an individual, fiduciary or other capacity.

<u>Potential Event of Default</u>: Any event which, with the passage of time, with the giving of notice, or both, would constitute an Event of Default.

<u>Personalty</u>: Trustor's right, title and interest in all personal property (other than Fixtures) now or hereafter located in, upon or about or collected or used in connection with the Property, together with all present and future attachments, accessions, replacements, substitutions and additions thereto or therefor, and the cash and noncash proceeds thereof, including all goods, equipment, furniture, fixtures and furnishings (such as appliances, satellite television equipment, light fixtures, drapes and window coverings, floor coverings, laundry equipment, and office equipment), inventory, the Impound Account, the Agreements, all Trademarks, service marks, designs, logos, names or similar identifications pertaining to the Property, all drawings, plans and specifications, and all accounts, contract rights and general intangibles (such as insurance proceeds and condemnation awards or compensation, and any rights to Trademarks) arising out of or incident to the ownership, development or operation of the Property owned by or in which Trustor has an interest.

<u>Prepayment Premium</u>: The additional amount (if any) payable on account of a prepayment, as specified in the Note.

<u>Principal Party(ies)</u>: As defined in <u>Paragraph 6.1B</u> hereof.

<u>Proceeding</u>: As defined in <u>Paragraph 6.1B</u> hereof.

<u>Property</u>: All or any portion of, or interest in, each of the Land, Improvements, Fixtures, Personalty and Rents and Proceeds of Trustor as defined in the Granting paragraph of this Deed of Trust.

<u>Receiver</u>: Any trustee, receiver, custodian, fiscal agent, liquidator or similar officer.

<u>Rents and Proceeds</u>: All rents, royalties, revenues, receipts, issues, profits, security deposits, termination payments, proceeds and other income of any kind or character from the Leases, the Land, the Improvements, the Fixtures and Transfers.

<u>Trademarks</u>: All trademarks, service marks, designs, logos, indicia, tradenames, corporate names, company names, business names, fictitious business names, trade styles owned by Trustor and used in connection with the Property and/or other source and/or identifiers and applications pertaining thereto; provided that the rights and interests described in this Section shall include, without limitation, in favor of Trustor pertaining to trademarks or registrations presently or in the future owned or used by third parties but only to the extent permitted by such licensing or other contracts and, if not so permitted, only with the consent of such third parties.

Transfer: Any of the following:

(i) a sale, conveyance, assignment, transfer, alienation, or other disposition of the Property, of any kind (other than Leases), or any other transaction the result of which is, directly or indirectly, to divest Trustor of any portion of or interest in its title to the Property, voluntarily or involuntarily;

(ii) a mortgage, conveyance of security title, or encumbrance of the Property, or any interest therein in any manner (whether direct or indirect, voluntary or involuntary, but excluding the imposition of mechanics' or materialman's liens);

(iii) a merger, consolidation or dissolution involving, or the sale, transfer or assignment of all or substantially all of, the assets of Trustor, or any general partner or member of Trustor;

(iv) an assignment, transfer, pledge, voluntary or involuntary sale, or encumbrance (at one time or over any period of time) of ten percent (10%) or more of (A) the beneficial interest in Trustor, (B) the voting stock or beneficial interest of any corporation or limited liability company which is a general partner or member of Trustor, or any corporation or limited liability company directly or indirectly owning ten percent (10%) or more of any such corporation or limited liability company, or (C) the ownership interest of any owner of ten percent (10%) or more of the beneficial interests of Trustor if Trustor is a trust;

(v) a transfer of any general partnership, managing member or controlling interest in Trustor, in an entity which is in Trustor's chain of ownership and which is derivatively liable for the obligations of Trustor, or in any entity that has the right to participate directly or indirectly in the control of the management or operations of Trustor;

(vi) a conversion of any such general partnership interest to a limited partnership interest;

(vii) a change, removal, or resignation of any general partner of Trustor if Trustor is a partnership; or

(viii) a change, removal, or resignation of any managing member (or if no managing member, any member) of Trustor if Trustor is a limited liability company.

Trustee: The initial Trustee, **MORTGAGE LENDER SERVICES INC., A CALIFORNIA CORPORATION**, and its successors and assigns.

Trustor: The initial Trustor, **ALVISO FUNDING**, and its successors and assigns (whether or not any such successor or assign assumes the Obligations hereunder). Reference to "Trustor" includes each and every Trustor, both individually and collectively, when more than one Trustor exists.

## ARTICLE 2
### REPRESENTATIONS AND WARRANTIES

Trustor hereby represents and warrants to Beneficiary and Trustee that as of the date of this Deed of Trust and as of the date of any subsequent disbursement pursuant to the Loan Documents:

2.1  Title, Authorization and Organization. Trustor (i) is the lawful owner of the Property and holds good and marketable title to the Property free and clear of all defects, liens, encumbrances, easements, exceptions and assessments, except the Permitted Exceptions; (ii) has the power and authority to grant the Property as provided in and by this Deed of Trust and to own and operate the Property; (iii) forever warrants and defends Trustor's title to the Property and the validity, enforceability, and priority of the lien and security interest created by this Deed of Trust against the claims of all Persons; (iv) is duly organized, validly existing and in good standing under the laws of the State of its organization and is duly qualified to do business in the State in which the Land is located; and (v) is in compliance with all Laws and Restrictions.

2.2  Validity of Loan Documents. The execution, delivery and performance by Trustor of the Loan Documents and the borrowings evidenced by the Note (i) are within the power of Trustor, (ii) have been authorized by all requisite action, (iii) have received all necessary approvals and consents from any Person from whom such approval or consent is required; (iv) will not violate any Laws and Restrictions or any agreement or other instrument;. (v) will not result in the creation or imposition of any lien, charge, or encumbrance upon the Property or assets except for those in this Deed of Trust; and (vi) will not require any authorization or license from, or any filing with, any governmental or other body (except for the recordation or filing of any Loan Document). The Loan Documents constitute legal, valid and binding obligations of Trustor.

Moon – DOT, Redwood City, CA                          4

2.3 <u>Financial Statements and Other Information</u>. All financial statements and other reports, papers, data and information given to Beneficiary with respect to the Property or any Loan Party are true, accurate, complete and correct and except as expressly noted to the contrary therein, have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered thereby. There has been no Material Adverse Change since the date of the most recent financial statement given to Beneficiary.

2.4 <u>Litigation</u>. There is not now pending against or affecting any Loan Party or the Property, nor to the best of Trustor's knowledge is there threatened, any action, suit or proceeding that might result in a Material Adverse Change.

2.5 <u>Additional Representations and Warranties</u>. (i) The Property is not used principally or primarily for agricultural or grazing purposes; (ii) all costs for labor and materials for the construction of the Improvements have been paid in full; (iii) Trustor is not aware of any assessment for public improvements which is pending and which could become a lien upon the Property; (iv) no Potential Event of Default has occurred under any of the Loan Documents; (v) Trustor is not in default under any agreement or instrument to which it is a party which default would have a material and adverse effect on the Property or Trustor's ability timely to perform the Obligations; (vi) neither the Property, nor any part thereof, has sustained, incurred or suffered any material damage or destruction; and (vii) subject to the Permitted Exceptions, the Land, Improvements, Personalty and Fixtures are owned by Trustor free and clear of any liens, encumbrances, mortgages, security interests, claims and rights of others; (viii) the Property and the current use thereof complies with all Laws and Restrictions; (ix) Trustor has received no notices of violations or breaches of any Laws and Restrictions; (x) Trustor has not received any notice of any violation with respect to, and to Trustor's knowledge the Improvements are in material compliance with, The Americans With Disabilities Act of 1990 (42 U.S.C. §§12101-12213), including Title III thereof; and (xi) Trustor has not received any notice of any violation with respect to, and to Trustor's knowledge the Improvements are in material compliance with, the Fair Housing Amendments Act of 1988 (42 U.S.C. §3610 et seq.), as amended, and the rules and regulations implementing such legislation.

2.6 <u>Bankruptcy</u>. No petition in bankruptcy, petition or answer seeking assignment for the benefit of creditors or appointment of a Receiver or similar proceeding with respect to any Principal Party has occurred or is contemplated.

2.7 <u>Zoning, Building, Environmental and Land Use Law Compliance</u>. The Property and all uses thereof comply with all applicable zoning, building, environmental and other land use laws, ordinances, rules and regulations, and other similar restrictions (including the Americans with Disabilities Act). No action or proceeding, administrative or otherwise, is pending or threatened before a court or administrative agency with respect to compliance by the Property with applicable zoning, building, environmental and land use laws, ordinances, rules and regulations and similar restrictions.

2.8 <u>Property Separately Assessed</u>. The Land and Improvements are separately assessed and taxed in one or more separate assessor's tax parcels under applicable real property and personal tax laws.

2.9 <u>Illegal Activity</u>. No portion of the Property has been or will be purchased, improved, fixtured, equipped or furnished with proceeds of any illegal activity and, to the best of Trustor's knowledge, there are no illegal activities at or on the Property.

2.10 <u>Executive Order 13224</u>. Trustor and all Persons holding any legal or beneficial interest whatsoever in Trustor are not included in, owned by, controlled by, acting for or on behalf of, providing assistance, support, sponsorship, or services of any kind to, or otherwise associated with any of the persons or entities referred to or described in Executive Order 13224 – Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, as amended. It shall constitute an Event of Default hereunder if the foregoing representation and warranty shall ever become false.

ARTICLE 3<br/>AFFIRMATIVE COVENANTS

Trustor hereby covenants and agrees as follows:

3.1 <u>Obligations of Trustor</u>. Trustor will timely perform, or cause to be timely performed, all the Obligations.

3.2 <u>Insurance</u>.

A. <u>Property and Time Element Insurance</u>. Trustor shall keep the Property insured for the benefit of Trustor and Beneficiary (with Beneficiary named as mortgagee) by (i) a "Special Form" ("All Risk") property insurance policy with an agreed amount endorsement for full replacement cost (as defined below) without any coinsurance provisions or penalties, or the equivalent form of coverage available if "Special Form" ("All Risk") property insurance is no longer available in the ordinary course in the insurance industry, in an amount sufficient to prevent Beneficiary from ever becoming a coinsurer under the policy or Laws and Restrictions, and with a deductible not to exceed Twenty-Five Thousand Dollars ($25,000.00); (ii) a policy or endorsement providing business income insurance (including business interruption insurance,

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 134 of 177

extra expense insurance and rent insurance) on an actual loss sustained basis in an amount equal to at least one (1) year's total income from the Property including all rents plus all other pro forma annual income such as percentage rent and tenant reimbursements of fixed and operating expenses; (iii) a policy or endorsement insuring against damage by flood if the Property is located in a Special Flood Hazard Area identified by the Federal Emergency Management Agency or any successor or related government agency as a 100 year flood plain currently classified as Flood Insurance Rate Map Zones "A", "AO", "AH", "A1-A30", "AE", "A99", "V", "V1-V30", and "VE", under which flood insurance has been made available under the Flood Acts, in an amount equal to the lesser of (A) the original amount of the Note or (B) the maximum limit of coverage available for the Property under the Flood Acts; (iv) a policy or endorsement covering against damage or loss from (A) sprinkler system leakage and (B) boilers, boiler tanks, HVAC systems, heating and air-conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, in the amount reasonably required by Beneficiary; (v) during the period of any construction, repair, restoration, or replacement of the Property, a standard builder's risk policy with extended coverage in an amount at least equal to the full replacement cost of such Property, and worker's compensation, in statutory amounts; and (vi) a policy or endorsement covering against damage or loss by earthquake and other natural phenomenon in the amounts reasonably required by Beneficiary. As used herein, "full replacement cost" means the one hundred percent (100%) replacement cost of the Improvements, without allowance for depreciation and exclusive of the cost of excavations, foundations, footings, and value of land, and shall be subject to verification by Beneficiary. Full replacement cost will be determined, at Trustor's expense, periodically (but at least once per year) by the insurance company or an appraiser, engineer, architect, or contractor approved by said company and Beneficiary.

B.      Liability and Other Insurance. Trustor shall maintain commercial general liability insurance with per occurrence limits of $1,000,000, a products/completed operations limit of $2,000,000, and a general aggregate limit of $2,000,000, with an excess/umbrella liability policy of not less than $10,000,000 per occurrence and annual aggregate covering Trustor, with Beneficiary named as an additional insured, against claims for bodily injury or death or property damage occurring in, upon, or about the Property or any street, drive, sidewalk, curb, or passageway adjacent thereto. The insurance policies shall also include operations and blanket contractual liability coverage which insures contractual liability under the indemnifications set forth in Paragraph 9.18 below (but such coverage or the amount thereof shall in no way limit such indemnifications). Upon request, Trustor shall also carry additional insurance or additional amounts of insurance covering Trustor or the Property as Beneficiary shall reasonably require.

C.      Form of Policy. All insurance required under this Paragraph shall be fully paid for, non-assessable, and the policies shall contain such provisions, endorsements, and expiration dates as Beneficiary shall reasonably require. The policies shall be issued by insurance companies authorized to do business in the state in which the Property is located, approved by Beneficiary, and must have and maintain a current financial strength rating of "A-, X" (or higher) from A.M. Best or equivalent (or if a rating by A.M. Best is no longer available, a similar rating from a similar or successor service). In addition, all policies shall (i) contain a Standard Lender's Loss Payable endorsement and other non-contributory standard mortgagee protection clauses acceptable to Beneficiary, (ii) provide that they shall not be canceled, amended, or materially altered (including reduction in the scope or limits of coverage) without at least thirty (30) days' prior written notice to Beneficiary except in the event of cancellation for non-payment of premium, in which case only ten (10) days' prior written notice will be given to Beneficiary, and (iii) include a waiver of subrogation clause substantially equivalent to the following: "The Company may require from the Insured an assignment of all rights of recovery against any party for loss to the extent that payment therefor is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived prior to loss, nor shall such waiver affect the Insured's rights under this policy."

D.      Original Policies. Trustor shall deliver to Beneficiary (i) original or certified copies of all policies (and renewals) required under this Paragraph and (ii) receipts evidencing payment of all premiums on such policies at least thirty (30) days prior to their expiration. If original and renewal policies are unavailable or if coverage is under a blanket policy, Trustor shall deliver duplicate originals, or, if unavailable, original certificates evidencing that such policies are in full force and effect together with certified copies of the original policies.

E.      General Provisions. Trustor shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this Paragraph unless endorsed in favor of Beneficiary provided in this Paragraph and approved by Beneficiary in all respects. In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Property in extinguishment, in whole or in part, of the Obligations, all right, title, and interest of Trustor in and to all policies of insurance then in force regarding the Property and all proceeds payable thereunder and unearned premiums thereon shall immediately vest in the purchaser or other transferee of the Property. No approval by Beneficiary of any insurer shall be construed to be a representation, certification, or warranty of its solvency. No approval by Beneficiary as to the amount, type, or form of any insurance shall be construed to be a representation, certification, or warranty of its sufficiency. Trustor shall comply with all insurance requirements and shall not cause or permit any condition to exist which would be prohibited by any insurance requirement or would invalidate the insurance coverage on the Property.

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 135 of 177

F.    Waiver of Subrogation. Trustor for itself, and on behalf of its insurers, hereby waives and releases any and all right to claim or recover against Beneficiary, its officers, employees, agents and representatives, for any loss of or damage to Trustor, other Persons, the Property, Trustor's property or the property of other Persons from any cause whether or not insured against by the provisions of this Deed of Trust or otherwise insured against by Trustor.

3.3    Maintenance, Waste and Repair. Trustor will (i) maintain the Property in good order and condition; (ii) promptly make, or cause to be made, all necessary structural and non-structural repairs to the Property; (iii) not diminish or materially alter the Improvements, or erect any new buildings, structures or building additions on the Land, without the prior written consent of Beneficiary; (iv) not remove or permit to be removed any of the Fixtures or Personalty from the Property without the prior written consent of Beneficiary unless replaced by articles of equal suitability and value owned by Trustor free and clear of any lien or security interest; and (v) not permit any waste of the Property or make any change in the use thereof, nor do or permit to be done thereon anything, that may in any way impair the security of this Deed of Trust.

3.4    Impositions; Impounds. Trustor will pay all Impositions when due. Trustor will deliver to Beneficiary, within seven (7) days after demand therefor, receipts showing the payment of any Impositions. Following an Event of Default, Trustor will pay monthly to Beneficiary an amount equal to one-twelfth (1/12th) of the annual cost of Impositions together with an amount equal to the estimated next premiums for hazard and other required insurance. These funds will be held by Beneficiary without interest and will be released to Trustor for payment of Impositions and insurance premiums, or directly applied to such costs by Beneficiary, as Beneficiary may elect.

3.5    Compliance with Law. Trustor will promptly and faithfully comply with and perform all present and future Laws and Restrictions.

3.6    Books and Records and Other Information.

A. Trustor, without expense to Beneficiary, will maintain full and complete books of account and records reflecting the results of the operations of the Property in accordance with generally accepted accounting principles, and will furnish or cause to be furnished to Beneficiary such information concerning the financial condition of Trustor and the Property as Beneficiary shall reasonably request, including the most recent rent roll for the Property, any appraisals of the Property performed during the previous year, a budget for the current year, tenant sales and percentage rent for the Property, annual audited financial statements of Trustor, and an annual audited operating statement for the Property and annual audited financial statements for the other Principal Parties (if any). All financial statements and operating statements under this Paragraph 3.6A shall be certified as true, correct and accurate by an authorized representative of Trustor. Upon Beneficiary's reasonable request, Beneficiary shall have the right, at all reasonable times and upon reasonable notice, to audit the books and records of Trustor. If such audit discloses a variance of three percent (3%) or more in income or expenses entered in such books and records, the cost of such audit shall be paid by Trustor.

B. Trustor shall keep at either its principal place of business or at the offices at the Improvements, and make available to Beneficiary during normal business hours upon Beneficiary's request (or if so requested by Beneficiary, promptly provide to Beneficiary copies thereof), as-built plans and specifications or, if unavailable, the final set of plans and specifications from which the Improvements were constructed ("As-Builts"), certified by a licensed architect or licensed contractor as true, correct and complete As-Builts.

C. Upon the occurrence of any Event of Default, each Trustor shall immediately deliver to Beneficiary, or a Person designated by Beneficiary, copies of all books and records and a current rent roll, and the As-Builts, all certified, warranted and represented by Trustor as being true, correct, accurate, and complete, by an authorized by an authorized representative of Trustor.

3.7    Further Assurances. Trustor, at any time upon the reasonable request of Beneficiary, will at Trustor's expense, execute, acknowledge and deliver all such additional papers and instruments (including a declaration of no setoff) and perform all such further acts as may be reasonably necessary to perform the Obligations and, as Beneficiary deems necessary, to preserve the priority of the lien of this Deed of Trust and to carry out the purposes of the Loan Documents.

3.8    Litigation. Trustor will promptly give notice in writing to Beneficiary of any litigation or other event or occurrence which might result in a Material Adverse Change.

3.9    Inspection of Property. Trustor hereby grants to Beneficiary, its agents, employees, consultants and contractors, the right to enter upon the Property for the purpose of making any and all inspections, reports, tests, inquiries and reviews as Beneficiary (in its sole and absolute discretion) deems necessary to assess the then current condition of the Property, or for the purpose of performing any of the other acts Beneficiary is authorized to perform hereunder or under the Loan Documents. Trustor shall

cooperate with Beneficiary to facilitate such entry and the accomplishment of such purposes. All costs, fees and expenses (including those of Beneficiary's legal counsel and consultants) incurred by Beneficiary with respect to such inspections, reports, tests, inquiries and reviews shall be paid by Trustor to Beneficiary upon demand, shall accrue interest at the Default Rate until paid, and shall be secured by this Deed of Trust.

     3.10  Contest. Notwithstanding the provisions of Paragraphs 3.4 and 3.5, Trustor may, at its expense, upon written notice to Beneficiary, contest the validity or application of any Impositions or Laws and Restrictions by appropriate legal proceedings promptly initiated and diligently conducted in good faith, provided that (i) Beneficiary is reasonably satisfied that the priority of this Deed of Trust shall be maintained and neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, or lost as a result of such contest, and (ii) Trustor shall have posted a bond or furnished such other security as may be reasonably required from time to time by Beneficiary.

     3.11  Additional Information. Trustor will furnish to Beneficiary, within seven (7) days after written request therefor, any and all information that Beneficiary may reasonably request concerning the Property or the performance by Trustor of the Obligations.

     3.12  Prepayment. Trustor may prepay the Loan only on the terms and conditions set forth in the Note and Trustor shall pay Beneficiary prepayment charges in respect of any prepayment, whether voluntary or involuntary, as required by and on the terms and conditions set forth in the Note.

     3.13  Tax Service Contract. So long as any Loan Document remains in effect, at Trustor's sole expense, Beneficiary shall be furnished tax service contracts issued by a tax reporting agency satisfactory to Beneficiary.

     3.14  Broker and Finder Fees. Trustor shall pay any and all commissions and fees of any kind or character due any Person on account of the Loan transaction, and shall indemnify, defend, protect and hold Beneficiary and Trustee harmless from and against any and all losses, liabilities, claims, damages, causes of action, costs and expenses (including reasonable attorneys' fees) arising out of or in connection with any such commissions or fees, or claims of any Person with respect thereto.

ARTICLE 4
NEGATIVE COVENANTS

Trustor hereby covenants to and agrees as follows:

     4.1  Restrictive Uses. Trustor will not initiate, join in, or consent to any change in the current use of the Property or in any zoning ordinance, private restrictive covenant, assessment proceedings or other public or private restriction limiting or restricting the uses that may be made of the Property or any part thereof or in any way change the boundaries of the Property without the prior written consent of Beneficiary.

     4.2  Prohibited Transfers. Trustor shall not participate in, and shall not cause, allow or otherwise permit, a Transfer without the prior written consent of Beneficiary, which consent may be given or withheld for any reason (or for no reason) or given conditionally (including a requirement that the permitted transferee assume in writing, in form and substance satisfactory to Beneficiary in its sole discretion, all of Trustor's Obligations under the Loan Documents and agree to be bound thereby), as determined by Beneficiary in its sole and absolute discretion, and any default under, failure to observe, or breach of the provisions of this Paragraph 4.2 shall constitute an immediate Event of Default hereunder and, at the option of Beneficiary, Beneficiary may accelerate the Indebtedness whereby the entire Indebtedness (including any Prepayment Premium) shall become immediately due and payable. Any assumption of Trustor's obligations hereunder shall not, however, release any Loan Party from any liability under the Loan Documents. Consent to any such Transfer by Beneficiary shall not be deemed a waiver of Beneficiary's right to require such consent to any further or future Transfers.

     4.3  No Cooperative or Condominium. Trustor shall not operate the Property or permit the Property to be operated as a cooperative or condominium or otherwise such that the tenants or occupants participate in ownership, control, or management of the Property.

     4.4  Ownership Documents. If Trustor is a corporation (other than a corporation the stock of which is listed and publicly traded on a national or regional stock exchange), Trustor shall not materially amend its Articles or Bylaws without Beneficiary's prior written consent. If Trustor is a partnership or a limited liability company, Trustor will not terminate, permit the termination of or substantially amend its Partnership Agreement or Operating Agreement without Beneficiary's prior written consent. If Trustor is a trust or other form of legal entity, Trustor will not terminate, permit the termination of, or substantially amend its trust or other governing agreement without Beneficiary's prior written consent.

     4.5  Compliance With Anti-Terrorism Regulations. Neither Trustor nor any Person holding any legal or beneficial interest whatsoever in Trustor shall at any time during the term of the Loan be described in, covered by or specially designated pursuant to or be affiliated with any Person described in, covered by or specially designated pursuant to Executive Order 13224 – Blocking Property

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 137 of 177

and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, as amended, or any similar list issued by OFAC or any other department or agency of the United States of America. Notwithstanding the foregoing, Trustor hereby confirms that if it becomes aware or receives any notice of any violation of the foregoing covenant and agreement (an "OFAC Violation"), Trustor will immediately (i) give notice to Beneficiary of such OFAC Violation, and (ii) comply with all Laws and Restrictions applicable to such OFAC Violation, including Executive Order 13224; the International Emergency Economic Powers Act, 50 U.S.C. Sections 1701-06; the Iraqi Sanctions Act, Pub. L. 101-513, 104 Stat. 2047-55; the United Nations Participation Act, 22 U.S.C. Section 287c; the Antiterrorism and Effective Death Penalty Act, (enacting 8 U.S.C. Section 219, 18 U.S.C. Section 2332d, and 18 U.S.C. Section 2339b); the International Security and Development Cooperation Act, 22 U.S.C. Section 2349 aa-9; the Terrorism Sanctions Regulations, 31 C.F.R. Part 595; the Terrorism List Governments Sanctions Regulations, 31 C.F.R. Part 596; and the Foreign Terrorist Organizations Sanctions Regulations, 31 C.F.R. Part 597 (collectively, the "Anti-Terrorism Regulations"), and Trustor hereby authorizes and consents to Beneficiary's taking any and all reasonable steps Beneficiary deems necessary, in its sole discretion, to comply with all Laws and Restrictions applicable to any such OFAC Violation, including the requirements of the Anti-Terrorism Regulations. Notwithstanding anything to the contrary in this Paragraph 4.5, Trustor shall not be deemed to be in violation of the covenants and agreements set forth in the first sentence of this Paragraph 4.5 if Trustor timely complies with all requirements imposed by the foregoing sentence and all requirements of the Anti-Terrorism Regulations and all other applicable Laws and Restrictions relating to such OFAC Violation.

4.5 Leases. Trustor shall not, without first obtaining Beneficiary's prior written consent, (1) amend or modify any Lease in a manner that would reduce the term of the Lease or materially increase any rights or materially decrease any obligations of the tenant under the Lease, materially increase any of obligations or materially decrease any rights of the landlord under the Lease, (2) extend or renew any Lease (except in accordance with mandatory actions by the landlord under the existing lease provisions, if any), (3) terminate or accept the surrender of any Lease, (4) enter into any new Lease, or (5) accept any (i) prepayment of rent more than one (1) month in advance, (ii) termination fee, or (iii) similar payment under any Lease.

## ARTICLE 5
## CASUALTIES AND CONDEMNATION

5.1 Insurance and Condemnation Proceeds.

A.     Trustor shall notify Beneficiary in writing immediately upon the occurrence of any loss or damage by fire or other casualty to any of the Property or upon obtaining knowledge of the commencement of any proceedings for condemnation of any of the Property. Beneficiary shall be entitled to (i) participate in any such condemnation proceedings and Trustor from time to time will deliver to Beneficiary all instruments reasonably necessary to permit such participation, and (ii) settle and adjust all insurance claims relative to any such damage or destruction, deducting from any insurance proceeds the amount of all expenses incurred by Beneficiary in connection with any such settlement or adjustment. Notwithstanding anything to the contrary contained in any insurance policies, all proceeds paid to Trustor under any insurance policies required to be maintained by Trustor pursuant to Paragraph 3.2 or otherwise relating to the Property and any insurance proceeds received by Trustor under insurance policies maintained by tenants pursuant to a lease obligation shall immediately be delivered to Beneficiary. All condemnation proceeds from the Property are hereby assigned to and shall be paid to the Beneficiary and the cost of any legal representation of Beneficiary in any such condemnation proceedings shall be borne by Trustor.

B.     If Beneficiary elects to make insurance proceeds or condemnation awards available for repair or reconstruction, Beneficiary shall, through a disbursement procedure established by Beneficiary, make available to Trustor the net amount of all insurance proceeds or condemnation awards received by Beneficiary after deduction of Beneficiary's reasonable costs and expenses, if any, in collection of the same (the "Net Proceeds"). In the event Beneficiary elects not to make the Net Proceeds available for repair or reconstruction, Beneficiary, at its sole option, may apply the Net Proceeds in payment of the Indebtedness or in satisfaction of any other Obligation in such order as Beneficiary may determine.

C.     The Net Proceeds and any additional funds deposited by Trustor with Beneficiary, plus any loss of rental income insurance proceeds which have been deposited with Beneficiary or which the carrier has acknowledged to be payable, shall constitute additional security for the Loan. Trustor shall execute, deliver, file and/or record, at its own expense, such documents and instruments as Beneficiary requires to grant to Beneficiary a perfected, first priority security interest in the Net Proceeds and such additional funds.

D.     In the event of loss of or damage to any of the Improvements which is not covered by insurance or with respect to which no Net Proceeds are available to either Beneficiary or Trustor, Trustor shall promptly repair, restore or replace such Improvements (or cause such Improvements to be promptly repaired, restored or replaced) in accordance with plans and specifications reasonably approved by Beneficiary.

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 138
of 177

5.2    Additional Provisions Relating to Condemnation.  Trustor, immediately upon obtaining knowledge of the commencement of any proceedings for the condemnation of the entire Property or any material part thereof, will notify Trustee and the Beneficiary of the pendency of such proceedings.  Trustee and Beneficiary may participate in any such proceedings and Trustor from time to time will deliver to Beneficiary all instruments requested by Beneficiary to permit such participation.  Beneficiary shall be under no obligation to question the amount of any such award or compensation and may accept the same in the amount in which the same shall be paid.  In any such condemnation proceedings, Beneficiary may be represented by counsel selected by Beneficiary, the cost of such counsel to be borne by Trustor.  The proceeds of any award or compensation so received shall, at the option of Beneficiary, either be applied to the prepayment of the Indebtedness or satisfaction of any Obligation, or be paid over to the Trustor for restoration of the Improvements in accordance with procedures and requirements established by Beneficiary.  Trustor hereby unconditionally and irrevocably waives all rights of a property owner under Section 1265.225(a) of the California Code of Civil Procedure, or any successor statute providing for the allocation of condemnation proceeds between a property owner and a lien holder.

## ARTICLE 6
## EVENTS OF DEFAULT AND REMEDIES OF BENEFICIARY

### 6.1  Events of Default.

A.  It shall constitute an Event of Default hereunder if any of the following events shall occur and Beneficiary, by written notice delivered to Trustor, declares an Event of Default:  (i) Trustor shall fail to pay within five (5) days of the date when due any part of the Indebtedness; (ii) Trustor shall fail to timely observe, perform or discharge any Obligation, other than as described in Paragraphs 6.1A.(i), (iii), (iv), (v), (vi), (vii), or (viii), and any such failure shall remain unremedied for thirty (30) days or such lesser period as may be otherwise specified in the applicable Loan Document or agreement (the failure under this clause (ii) hereinafter referred to as the "Grace Period") after notice to Trustor of the occurrence of such failure; (iii) Trustor, as lessor or sublessor, as the case may be, shall assign the Rents and Proceeds without first obtaining the written consent of Beneficiary; (iv) default by Trustor after the expiration of all applicable grace or cure periods under any agreement to which Trustor is a party, other than the Loan Documents, which agreement relates to the borrowing of money by Trustor from any Person, and such default might give rise to a Material Adverse Change or adversely affect the security for the Loan; (v) any representation or warranty made by Trustor in, under or pursuant to the Loan Documents was false or misleading in any material respect as of the date on which such representation or warranty was made or deemed remade; (vi) any of the Loan Documents shall cease to be in full force and effect or be declared null and void, or shall cease to constitute valid and subsisting liens and/or valid and perfected security interests in and to the Property, Trustor shall contest or deny in writing that it has any further liability or obligation under any of the Loan Documents; (vii) the occurrence of a Material Adverse Change; or (viii) if Trustor or any guarantor of the Loan (or any portion thereof) is an individual, then the death or incapacity of such individual, and if Trust or any such guarantor is a corporation, partnership, limited liability company or other legal entity, the dissolution, liquidation, or cessation of business operations of such entity.

B.  It shall constitute an Event of Default hereunder without the requirement of any notice by Beneficiary if any of the following events shall occur:  (i) Trustor, any other Loan Party, any general partner or managing member of any Loan Party which is a partnership or a limited liability company, as the case may be, any parent company of any such general partner or managing member, any Person directly or indirectly owning 50% or more of the outstanding shares of any Loan Party which is a corporation and any parent company of such Person, any trustee or beneficiary with a beneficial interest of 50% or more in any Loan Party, any owner of the Property, or any guarantor of Trustor's obligations under the Loan Documents (each a "Principal Party," and collectively, the "Principal Parties") shall generally not pay its debts as they become due or shall admit in writing its inability to pay its debts, or shall have made a general assignment for the benefit of creditors; (ii) any Principal Party shall commence any case, proceeding or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking to have an order for relief entered against it as debtor, or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property (collectively, a "Proceeding"); (iii) any Principal Party shall take any action to authorize any of the actions set forth above in clauses (i) or (ii); (iv) any Proceeding shall be commenced against any Principal Party, and such Proceeding (A) results in the entry of an order for relief against it which is not fully stayed within seven (7) business days after the entry thereof or (B) remains undismissed for a period of forty-five (45) days; (v) any Principal Party shall liquidate, dissolve or otherwise terminate their corporate, limited liability company, partnership or other entity organizational structure without the prior written consent of Beneficiary; (vi) failure to comply with the provisions of Paragraph 3.2D hereof on or before the date fifteen (15) days prior to the expiration date of any policy furnished pursuant to the terms of the Loan Documents, and/or the lapse or expiration of any insurance policy or policies required to be obtained or maintained under the terms of the Loan Documents; or (vii) failure to timely observe, perform or discharge any provision of Paragraph 4.2 hereof or the occurrence of a Transfer without Beneficiary's prior written consent.

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 139 of 177

6.2 <u>Remedies</u>.

A. Upon the occurrence of any Event of Default, Beneficiary may at any time declare all of the Indebtedness to be due and payable and the same shall thereupon become immediately due and payable, together with all payments due in accordance with the terms of the Note, without any further presentment, demand, protest or notice of any kind. Beneficiary may, in its sole discretion, also do any of the following: (i) in person, by agent, or by a Receiver, without regard to the adequacy of security, the solvency of Trustor or the condition of the Property, without obligation so to do and without notice to or demand upon Trustor, enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee and do any acts which Beneficiary deems necessary to preserve the value or marketability of the Property; sue for or otherwise collect the Rents and Proceeds, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees (including court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses), against the Obligations, all in such order as Beneficiary may determine; appear in and defend any action or proceeding purporting to affect, in any manner whatsoever, the Obligations, the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase or compromise any encumbrance, charge or lien that in the judgment of Beneficiary or Trustee is prior or superior hereto; and in exercising any such powers, pay necessary expenses, employ counsel and pay reasonable attorneys' fees (including court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses); (ii) as a matter of strict right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Property, apply <u>ex parte</u> to any court having jurisdiction to appoint a Receiver to enter upon and take possession of the Property, and Trustor hereby waives notice of any application therefor, provided a hearing to confirm such appointment with notice to Trustor is set within the time required by law (any such Receiver shall have all the powers and duties of Receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided herein, and shall continue as such and exercise all such powers until the date of confirmation of sale, unless such Receivership is sooner terminated); (iii) commence an action to foreclose this Deed of Trust in any manner provided hereunder or by law; (iv) with respect to any Personalty, proceed as to both the real and personal property in accordance with Beneficiary's rights and remedies in respect of the Land, or proceed to sell said Personalty separately and without regard to the Land in accordance with Beneficiary's rights and remedies as to personal property; and/or (v) deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record.

B. If Trustor shall at any time fail to perform or comply with any of the terms, covenants and conditions required on Trustor's part to be performed and complied with under any of the Loan Documents or any other agreement that, under the terms of this Deed of Trust, Trustor is required to perform, then Beneficiary may, in its sole discretion: (i) make any payments hereunder or thereunder payable by Trustor and take out, pay for and maintain any of the insurance policies provided for herein or therein; and/or (ii) after the expiration of any applicable grace period and subject to Trustor's right of contest of certain Obligations specifically granted hereby, perform any such other acts thereunder on the part of Trustor to be performed and enter upon the Land and Improvements for such purpose.

C. Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require. Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and notice of sale as then required by law and by this Deed of Trust. Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items as Beneficiary shall determine, and in such order as Beneficiary may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any Person, including Trustor, Trustee or Beneficiary, may purchase at such sale and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers. After deducting all costs, fees and expenses of Trustee and of this Trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale in the following priority, to payment of: (i) first, all sums expended under the terms hereof, not then repaid, with accrued interest at the Default Rate; (ii) second, all other sums then secured hereby; and (iii) the remainder, if any, to the Person or Persons legally entitled thereto. Beneficiary may, in its sole discretion, designate the order in which the Property shall be offered for sale or sold through a single sale or through two or more successive sales, or in any other manner Beneficiary deems to be in its best interest. If Beneficiary elects more than one sale or other disposition of the Property, Beneficiary may at its option cause the same to be conducted simultaneously or successively, on the same day or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Property not then sold until all Indebtedness secured hereby has been fully paid. If Beneficiary elects to dispose of the Property through more than one sale, Trustor shall pay the costs and expenses of each

Moon – DOT, Redwood City, CA        11

such sale of its interest in the Property and of any proceedings where the same may be made. Trustee may postpone the sale of all or any part of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement, and without further notice make such sale at the time fixed by the last postponement; or Trustee may, in its discretion, give a new notice of sale. Beneficiary may rescind any such notice of default at any time before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute a cancellation of any prior declaration of default and demand for sale and of any acceleration of maturity of Indebtedness affected by any prior declaration or notice of default. The exercise by Beneficiary of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, or impair the right of Beneficiary to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, or otherwise affect the Note or this Deed of Trust, or any of the rights, obligations or remedies of Beneficiary or Trustee hereunder.

D.  In the event of a sale of the Property, or any part thereof, and the execution of a deed therefor, the recital therein of default, and of recording the notice of default and notice of sale, and of the elapse of the required time (if any) between the recording and the notice, and of the giving of notice of sale, and of a demand by Beneficiary, or its successors or assigns, that such sale should be made, shall be conclusive proof of such default, recording, election, elapse of time, and giving of such notice, and that the sale was regularly and validly made on due and proper demand by Beneficiary, its successors or assigns. Any such deed or deeds with such recitals therein shall be effective and conclusive against Trustor, its successors and assigns, and all other Persons. The receipt for the purchase money recited or contained in any deed executed to the purchaser as aforesaid shall be sufficient discharge to such purchaser from all obligations to see to the proper application of the purchase money.

E.  All remedies of Beneficiary provided for herein are cumulative and shall be in addition to any and all other rights and remedies provided in the other Loan Documents or by law, including any right of offset. The exercise of any right or remedy by Beneficiary hereunder shall not in any way constitute a cure or waiver of default hereunder or under the Loan Documents, or invalidate any act done pursuant to any notice of default, or prejudice Beneficiary in the exercise of any of its rights hereunder or under the Loan Documents.

F.  All sums expended by Trustee or Beneficiary in the exercise of any of their rights or remedies under this Deed of Trust, and all reasonable costs and expenses incurred in connection therewith shall (i) be immediately due and payable on demand, (ii) accrue interest at the Default Rate from the date of expenditure by Beneficiary, and (iii) be added to the Indebtedness and secured by the Loan Documents prior to any right, title or interest in or claim upon the Property attaching or accruing subsequent to the lien of this Deed of Trust.

G.  If Beneficiary submits a payoff demand to Trustor in connection with the maturity of the Loan, Trustor shall promptly communicate to Beneficiary or Beneficiary's collection agent any dispute, along with an explanation, as to the total payoff amount provided. Trustor's full payoff of the loan shall constitute: (i) Trustor's review and approval of the total payoff amount; (ii) Trustor's full release of Beneficiary, and any collection agent of Beneficiary, from any and all claims of any kind arising out of or related to the debt, total payoff amount, and calculation of all sums charged; and (iii) Trustor's final settlement, waiver and release of any and all claims against Beneficiary or Beneficiary's collection agent. All persons or entities, including any escrow or title company, who may pay the total payoff amount on behalf of Trustor, shall have full power and authority to bind the Trustor to the provisions of this paragraph. Beneficiary shall retain any documents, schedules, invoices or other papers delivered by Trustor only for such period as Beneficiary, at its sole discretion, may determine necessary, after which time Beneficiary may destroy such records without notice to or consent from Trustor. In connection with this Paragraph 3.2G, Trustor expressly waives the benefits of Section 1542 of the California Civil Code, which provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." BUYER ACKNOWLEDGES AND AGREES THAT IT HAS BEEN REPRESENTED BY LEGAL COUNSEL OF ITS CHOICE IN CONNECTION WITH THIS AGREEMENT, AND THAT SUCH COUNSEL HAS EXPLAINED TO BUYER THE PROVISIONS OF THIS PARAGRAPH 3.2G.

**TRUSTOR'S INITIALS:**

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 141 of 177

ARTICLE 7
SECURITY AGREEMENT AND FIXTURE FILING

7.1  Grant of Security Interest. Trustor hereby grants to Beneficiary a security interest in and to all Trustor's right, title and interest now owned or hereafter acquired in and to the Collateral).

7.2  Remedies. This Deed of Trust constitutes a security agreement under the California Uniform Commercial Code with respect to the Collateral in which Beneficiary is hereby granted a security interest. In addition to the rights and remedies provided under this Deed of Trust, Beneficiary shall have all of the rights and remedies of a secured party under the California Uniform Commercial Code as well as all other rights and remedies available at law or in equity. Trustor shall execute and deliver on demand, and irrevocably constitutes and appoints Beneficiary the attorney-in-fact of Trustor to, at Trustor's expense, execute, deliver and, if appropriate, to file with the appropriate filing officer or office, such instruments as Beneficiary may request or require in order to impose, perfect or continue the perfection of the lien or security interest created hereby. Upon the occurrence of any Event of Default, Beneficiary shall have the right (i) to cause any of the Collateral which is personal property to be sold at any one or more public or private sales as permitted by applicable law and to apply the proceeds thereof to the Indebtedness or the satisfaction of any Obligation and (ii) to apply to the Indebtedness or the satisfaction of any Obligation any Collateral which is cash, negotiable documents or chattel paper. Any such disposition may be conducted by an employee or agent of Beneficiary or Trustee. Any Person, including both of Trustor and Beneficiary, shall be eligible to purchase any part or all of such Personalty at any such disposition.

7.3  Expenses. Expenses of retaking, holding, preparing for sale, selling or the like, pertaining to the Collateral shall be borne by Trustor and shall include Beneficiary's and Trustee's reasonable attorneys' fees and legal expenses (including, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses). Trustor, upon demand of Beneficiary shall assemble the Collateral and make it available to Beneficiary at the Improvements, a place which is hereby deemed to be reasonably convenient to Beneficiary and Trustor. Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale or other disposition of the Collateral or of the time after which any private sale or any other intended disposition is to be made. Any such notice sent to Trustor in the manner provided for the mailing of notices herein is hereby deemed to be reasonable notice to Trustor.

7.4  Fixture Filing. This Deed of Trust covers certain goods which are or are to become fixtures related to the Land and constitutes a fixture filing under the California Uniform Commercial Code with respect to such goods executed by Trustor as debtor in favor of Beneficiary as secured party.

7.5  Waivers. Trustor waives (i) any right to require Beneficiary to (A) proceed against any Person, (B) proceed against or exhaust any Collateral or (C) pursue any other remedy in its power; and (ii) any defense arising by reason of any disability or other defense of Trustor or any other Person, or by reason of the cessation from any cause whatsoever of the liability of Trustor or any other Person. Until the Indebtedness shall have been paid in full, Trustor shall not have any right to subrogation, and Trustor waives any right to enforce any remedy which Beneficiary now has or may hereafter have against Trustor or against any other Person and waives any benefit of and any right to participate in any Collateral or security whatsoever now or hereafter held by Beneficiary.

ARTICLE 8
ASSIGNMENT OF RENTS AND PROCEEDS AND AGREEMENTS

8.1  Assignment of Rents and Proceeds. Trustor absolutely and unconditionally assigns and transfers the Rents and Proceeds to Beneficiary, whether now due, past due or to become due, and gives to and confers upon Beneficiary the right, power and authority to collect such Rents and Proceeds, and apply the same to the Indebtedness or the satisfaction of any Obligation. Trustor irrevocably appoints Beneficiary its agent to, at any time, demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in the name of Trustor or in the name of Beneficiary, for all such Rents and Proceeds. Neither the foregoing assignment of Rents and Proceeds to Beneficiary or the exercise by Beneficiary of any of its rights or remedies under this Deed of Trust shall be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any part thereof, unless and until Beneficiary, in person or by its own agent, assumes actual possession thereof, nor shall appointment of a Receiver for the Property by any court at the request of Beneficiary or by agreement with Trustor or the entering into possession of the Property by such Receiver be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation thereof.

8.2  Assignment of Agreements. Trustor hereby sells, assigns, transfers, sets over and delivers to Beneficiary all of Trustor's right, title and interest in and to any and all agreements, bonds, contracts, letters of credit, reports, surety agreements, surveys, plans, drawings and governmental approvals whatsoever pertaining to the operation of the Property or to the construction of the Improvements, as the same may be amended or otherwise modified from time to time (collectively, the "Agreements"). The foregoing assignment encompasses the right of Trustor to (i) terminate any of the Agreements, (ii) perform or compel performance and

Moon – DOT, Redwood City, CA                    13

otherwise exercise all remedies under the Agreements, and (iii) collect and receive all sums which may become due Trustor or which Trustor may now or shall hereafter become entitled to demand or claim, under the Agreements.

8.3 Revocable License. Notwithstanding anything to the contrary contained herein or in the Note, so long as no Event of Default shall have occurred, Trustor shall have a license to collect all Rents and Proceeds and all other sums which may become payable to Trustor under the Agreements, and to first apply the same to the payment or performance of the Obligations as and when due. Upon the occurrence of an Event of Default, Beneficiary shall have the right, on written notice to Trustor, (i) to terminate and revoke the license herein granted to Trustor and (ii) Trustor shall immediately forward and turn over to Beneficiary all Rents and Proceeds (including, without limitation, all security deposits and termination payments) then held or thereafter received by Trustor to exercise and enforce any and all of its rights and remedies provided in this Article 8 or by law or at equity.

8.4 Nonresponsibility. The acceptance by Beneficiary of the assignments with all the rights, powers, privileges and authority so granted shall not obligate Beneficiary to assume any obligations in respect of the Rents and Proceeds or under the Agreements or take any action thereunder or to expend any money or incur any expense or perform or discharge any obligation, duty or liability in respect of the Rents and Proceeds or under the Agreements or to assume any obligation or responsibility for the nonperformance of the provisions thereof by Trustor.

## ARTICLE 9
## MISCELLANEOUS

9.1 Successor Trustee. Beneficiary may remove Trustee or any successor trustee at any time or times and appoint a successor trustee by recording a written substitution in the county where the Property is located, or in any other manner permitted by law.

9.2 No Waiver. No failure by Beneficiary to insist upon strict, full and complete (i) payment when due of any portion of the Indebtedness or (ii) performance of any Obligation, nor failure to exercise any right or remedy hereunder, shall constitute a waiver of any such failure to pay or breach of any such Obligation, or of the later exercise of such right or remedy.

9.3 Abandonment. Any and all Personalty that upon foreclosure of the Property is owned by Trustor and is used in connection with the operation of the Property shall be deemed at the option of Beneficiary to have become on such date a part of the Property and abandoned to Beneficiary in its then condition.

9.4 Notices. All notices or other written communications hereunder or under any other Loan Documents shall be given in writing (i) in person or by facsimile transmission with receipt acknowledged, (ii) by overnight delivery with Federal Express or another comparable overnight courier service, or (iii) by mail sent by registered or certified mail, postage prepaid, return receipt requested, to the addresses for the parties specified at the beginning of this Deed of Trust. The notice address of the parties set forth above may be changed by written notice given hereunder. All such notices shall be considered delivered: (i) if personally delivered or sent by facsimile transmission, on the date of delivery; (ii) if sent by United States Mail in the manner prescribed above, on the date shown on the return receipt for acceptance or rejection; or (iii) if sent by courier delivery service, on the date of delivery or rejection as shown by the written delivery record of such service.

9.5 Severability. If any provision hereof or of any other Loan Document is held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Deed of Trust or any other Loan Document, except that if such provision relates to the payment of any monetary sum, then Beneficiary may, at its option, declare the Indebtedness immediately due and payable.

9.6 Joinder of Foreclosure. Should Beneficiary hold any other or additional security for the performance of the Obligations, its sale or foreclosure, upon any default in such performance, in the sole discretion of Beneficiary, may be prior to, subsequent to, or joined or otherwise contemporaneous with any sale or foreclosure hereunder.

9.7 Governing Law. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California, in accordance with the internal laws of the State of California, without regard to conflicts of laws and principles.

9.8 Subordination. At the option of Beneficiary, exercised in its sole and absolute discretion, this Deed of Trust and/or any other Loan Document shall become subject and subordinate in whole or in part (but not with respect to priority of entitlement to any insurance proceeds, damages, awards, or compensation resulting from damage to the Property or condemnation or exercise of power of eminent domain), to any and all contracts of sale and/or any and all Leases upon the execution by Beneficiary and recording thereof in the Official Records of the county where the affected Land is located of a unilateral declaration to that effect. Beneficiary may require the issuance of such title insurance endorsements to the title policy in connection with any such subordination as Beneficiary, in its reasonable judgment, shall determine are appropriate, and Trustor shall pay any cost or expense incurred in connection with the issuance thereof.

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 143 of 177

9.9 <u>Waiver of Statute of Limitations</u>. Trustor hereby waives, to the full extent allowed by law, the right to plead any statute of limitations as a defense to any Obligations in any action under or relating to the Loan Documents.

9.10 <u>Entire Agreement</u>. The Loan Documents set forth the entire understanding between Trustor and Beneficiary relative to the Loan and the same shall not be amended except by a written instrument duly executed by each of Trustor and Beneficiary.

9.11 <u>Copies</u>. Trustor will promptly give to Beneficiary copies of all (i) notices of violation relating to the Property or the operation of any business thereon that Trustor receives, whether from any governmental agency or authority or otherwise, (ii) notices of default that Trustor shall give or receive under any agreement that Trustor covenants to perform hereunder, and (iii) notices of claims made or threatened that would be adverse to the interest of Trustor in the Property (including without limitation claims of liens, judgments, and claims of unpaid or underpaid taxes).

9.12 <u>Personalty Security Instruments</u>. If Beneficiary at any time holds additional security for any obligations secured hereby, it may enforce the terms thereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder, and may apply the proceeds upon the Indebtedness without affecting the status of or waiving any right to exhaust all or any other security, including the security hereunder, and without waiving any breach or default or any right or power whether exercised hereunder or contained herein or in any such other security.

9.13 <u>Suits to Protect Property</u>. Trustor shall appear in and defend any action or proceeding purporting to affect the security of the Deed of Trust, any other Loan Documents, or of any additional or other security for the Obligations, the interest of Beneficiary or the rights, powers and duties of Trustee hereunder; and shall pay all costs and expenses, including cost of evidence of title, reasonable attorneys' fees, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses, in any action or term, covenant or condition proceeding in which Beneficiary and/or Trustee may appear or be made a party, including foreclosure or other proceeding commenced by those claiming a right to any part of the Property in any action to partition or condemn all or part of the Property, whether or not pursued to final judgment, and in any exercise of the power of sale contained herein, whether or not the sale is actually consummated. In any such action or proceeding in which Beneficiary is made a party, Beneficiary may at its option defend such action, and all costs of such defense, including all court costs and reasonable attorneys' fees, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses, shall be borne and paid by Trustor.

9.14 <u>Charges for Statements</u>. Trustor shall pay Beneficiary's charge, up to the maximum amount permitted by law, for any statement regarding the Obligations requested by Trustor or in its behalf.

9.15 <u>Usury</u>. In the event that Beneficiary, or a court of competent jurisdiction in a final, non-appealable judgment determines that any charge, fee or interest paid or agreed to be paid in connection with the Loan may, under the applicable usury laws, cause the interest rate on the Loan to exceed the maximum permitted by law, then such charges, fees or interest shall be reduced and any amounts actually paid in excess of the maximum interest permitted by such laws shall be applied by Beneficiary to reduce the outstanding principal balance of the Loan. The parties intend that Trustor shall not be required to pay, and Beneficiary shall not be entitled to collect, interest in excess of the maximum legal rate permitted under the applicable usury laws.

9.16 <u>Publicity</u>. Beneficiary, at its expense, may publicize the financing of the Property.

9.17 <u>Information Reporting Under IRS Section 6045(e)</u>. Any information returns or certifications that must be filed with the Internal Revenue Service and/or provided to other parties pursuant to Internal Revenue Code Section 6045(e) shall be prepared, filed by and sent to the appropriate parties by Trustor. To the extent permitted by law, Beneficiary shall have no responsibility to perform such services; provided however, that upon demand Trustor shall reimburse Beneficiary for any costs incurred by Beneficiary in doing so and shall also pay such fee as Beneficiary may reasonably and lawfully request. Beneficiary shall, where requested by Trustor, promptly supply Trustor with all information pertaining to Beneficiary reasonably required by Trustor to prepare and file any such return or certification.

9.18 <u>Indemnification and Defense</u>.

A. Trustor will indemnify, defend, protect and hold Beneficiary and its agents harmless from and against all liability, loss, claims, damage, cost or expense (including reasonable attorneys' fees, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses) that Beneficiary might incur in connection with the making or administering of the Loan, the enforcement of any of Beneficiary's rights or remedies under the Loan Documents, by reason of any failure of any representation or warranty made by Trustor or the failure of Trustor to perform any Obligation or by reason or in defense of any and all claims and demands whatsoever that may be asserted against Beneficiary arising out of or in connection with the Property or the Loan.

Case: 22-03106   Doc# 96-4   Filed: 05/28/25   Entered: 05/28/25 14:45:16   Page 144 of 177

B.  Trustor will indemnify, defend, protect and hold Beneficiary and its agents harmless from and against all liability, loss, claims, damage, cost or expense (including actual attorneys' fees incurred in good faith, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses) that Beneficiary might incur in connection with the making or administering of the Loan, the enforcement of any of Beneficiary's rights or remedies under the Loan Documents, by reason of any failure of any representation or warranty made by Trustor or the failure of Trustor to perform any Obligation or by reason or in defense of any and all claims and demands whatsoever that may be asserted against Beneficiary arising out of or in connection with the Property or the Loan, including without limitation arising out of or in connection with the presence of Hazardous Materials at or about the Property, or emanating from the Property.

C.  Whenever, under any Loan Document, Trustor is obligated to indemnify and/or defend Beneficiary, or Trustor is obligated to defend or prosecute any action or proceeding, then Beneficiary shall have the right to participate in such prosecution or defense using counsel of Beneficiary's choice, and all costs and expenses incurred by Beneficiary in connection with such participation (including reasonable attorneys' fees, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses) shall be reimbursed by Trustor to Beneficiary. In addition, Beneficiary shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor.  Trustor shall give notice to Beneficiary of the initiation of all proceedings prosecuted or required to be defended by Trustor, or which are subject to Trustor's indemnity and/or defense obligations, under this Deed of Trust, promptly after the receipt by Trustor of notice of the existence of any such proceeding, but in no event later than five (5) days thereafter.

D.  Should Beneficiary incur any liability, loss, claim, damage, cost or expense required to be reimbursed by Trustor to Beneficiary hereunder, the amount thereof with interest thereon at the Default Rate shall constitute part of the Indebtedness, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust.

9.19  Destruction of Note/Compliance.  Trustor shall, if the Note is mutilated or destroyed by any cause whatsoever, or otherwise lost or stolen and regardless of whether due to the act or neglect of Beneficiary or Trustee, execute and deliver to Beneficiary in substitution therefor a duplicate promissory note containing the same terms and conditions as the Note, within ten (10) days after Beneficiary notifies Trustor of any such mutilation, destruction, loss or theft of the Note. Trustor agrees at any time upon request by Beneficiary to fully cooperate in adjusting for clerical errors any of the Loan Documents and any and all loan closing documentation, including without limitation as necessary to enable Beneficiary to sell, convey, seek guaranty or market this loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Housing Authority or the Veterans Administration. Trustor agrees and covenants to fully cooperate with Beneficiary, including any successors in interest to Beneficiary, in order to assure that the loan documentation executed upon origination, including amendments subsequent thereto, will conform with applicable law and be acceptable in the market place in the instance of transfer, sale or conveyance by Beneficiary of its interest in and to said loan documentation.

9.20  Heirs and Assigns.  Subject to the restrictions on Transfers contained in this Deed of Trust, this Deed of Trust and all other Loan Documents apply to, inure to the benefit of, and bind all parties hereto and thereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

9.21  Interpretation.  When the identity of the parties or other circumstances make it appropriate, the masculine gender shall include the feminine and/or neuter, and the singular number shall include the plural.  Specific enumeration of rights, powers and remedies of Trustee and Beneficiary and of acts which they may do and of acts Trustor must do or not do shall not exclude or limit the general.  The headings of each Article and Paragraph are for convenience and do not limit or construe the contents of any provision hereof.  The provisions of the Loan Documents shall be construed as a whole according to their common meaning, not strictly for or against any party and consistent with the provisions herein contained, in order to achieve the objectives and purposes of such documents.  Each party and its counsel has reviewed and revised the Loan Documents and agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of such document.  The use in the Loan Documents of the words "including", "such as", or words of similar import when following any general term, statement or matter shall not be construed to limit such statement, term or matter to the specific items or matters, whether or not language of non-limitation such as "without limitation" or "but not limited to", or words of similar import are used with reference thereto, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest possible scope of such statement, term or matter.  References to "foreclosure" and related phrases shall be deemed references to the appropriate procedure in connection with Trustee's private power of sale as well as any judicial foreclosure proceeding or a conveyance in lieu of foreclosure.

9.22  Transfers by Beneficiary to Third Persons.  Trustor understands and acknowledges that after the closing of the Loan, the Loan may be sold by Beneficiary to a third Person and such third Person may subsequently transfer the Loan and, in connection therewith, all of the Loan Documents would be assigned by Beneficiary in connection with such transfer to such third Person (and, subsequently, to all subsequent transferees). Trustor hereby acknowledges that upon such assignment of the Loan Documents by Beneficiary to such third Person or subsequent transferees, Beneficiary shall have no obligations or liabilities under the Loan

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 145 of 177

Documents, such third Person (or other subsequent transferee) shall be substituted as the "Lender" under the Loan Documents for all purposes and Trustor shall look solely to such third Person or subsequent transferee for the performance of any obligations of the "Lender" under the Loan Documents. If, at any time, Beneficiary desires to sell or transfer, or grant a participation interest in, all or any portion of, or any interest in, the Note or any other Loan Document to any third Person, Trustor shall furnish in a timely manner any and all information concerning the Property and Leases, and concerning Trustor, requested by Beneficiary or such third Person in connection with any such sale or transfer. Beneficiary shall have the right to furnish to any third Person in connection with any such sale or transfer any and all information Beneficiary now has or may later acquire from Trustor relating to the Obligations.

9.23    Commingling of Funds. Any and all sums collected or retained by Beneficiary under any of the Loan Documents (including insurance and condemnation proceeds and any amounts paid by Trustor to Beneficiary under Paragraph 3.4 hereof), shall not be deemed to be held in trust, and Beneficiary may commingle such funds or proceeds with its general assets and shall not be liable for the payment of any interest or other return thereon, except to the extent otherwise required by law.

9.24    Certain Obligations Unsecured. Notwithstanding anything to the contrary set forth herein or any of the Loan Documents, this Deed of Trust does not secure any obligations in this Deed of Trust or in any of the other Loan Documents to the extent that such other obligations relate specifically to the presence on the Property of toxic or hazardous materials (the "Unsecured Obligations"). Any breach or default with respect to the Unsecured Obligations shall constitute an Event of Default hereunder, notwithstanding the fact that such Unsecured Obligations are not secured by this Deed of Trust. Nothing in this section shall, in itself, impair or limit Beneficiary's right to obtain a judgment in accordance with applicable law after foreclosure for any deficiency in recovery of all obligations that are secured by this Deed of Trust following foreclosure.

9.25    Costs and Fees. All costs, fees and expenses incurred by Beneficiary in making, administering or collecting the Loan (including those of Beneficiary's legal counsel and consultants, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage, communication expenses and costs in connection with any inspections, reports, tests, inquiries and reviews, condemnation proceedings, endorsements to the title policy, actions or proceedings in which Beneficiary and/or Trustee may appear or be made a party, foreclosure or other proceedings commenced by those claiming a right to any part of the Property or any action to partition all or part of the Property, whether or not pursuant to final judgment and exercise of the power of sale contained herein, whether or not the sale is actually consummated) and all sums expended by Trustee or Beneficiary in the exercise of any of their respective rights or remedies under this Deed of Trust, shall be immediately due and payable by Trustor to Beneficiary upon demand, shall accrue interest at the Default Rate from the date of expenditure until paid, and shall be added to the Indebtedness secured by the Loan Documents prior to any right, title or interest in or claim upon the Property attaching or accruing subsequent to the lien of this Deed of Trust.

9.26    Standard of Approval; Covenant of Good Faith and Fair Dealing. Whenever Trustee or Beneficiary has been specifically granted a right to exercise its business judgment, or act, in a subjective manner, with respect to any matter, or the right to act in its sole and absolute discretion or sole judgment, or the right to make a subjective judgment under any provision of this Deed of Trust, whether or not "objectively" reasonable under the circumstances, any such exercise shall not be deemed inconsistent with any covenant of good faith and fair dealing otherwise implied by law to be part of the Loan Documents.

9.27    Exhibits. The Exhibits attached to this Deed of Trust are deemed incorporated into this Deed of Trust in their entirety.

9.28    Attorneys' Fees. If any suit, action or proceeding of any kind (an "action") is brought by any party hereto to enforce, defend or interpret any provision of this Deed of Trust or any of the Loan Documents (including an action for declaratory relief), the prevailing party in such action shall recover from the other non-prevailing parties to such action all reasonable costs and expenses which the prevailing party may incur in bringing such action and/or enforcing any judgment granted therein, all of which shall be deemed to have accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to judgment. The "prevailing party" means the party entitled to recover costs of suit, whether or not any action proceeds to final judgment. Any judgment or order entered in such action shall specifically provide for the recovery of all reasonable costs and expenses incurred by the prevailing party in connection therewith including costs and expenses incurred in enforcing such judgment. For the purpose of this Paragraph 9.28, "costs and expenses" include all court costs and attorneys' fees, such as court costs and attorneys' fees incurred in connection with any of the following: (i) post-judgment motions, (ii) contempt proceedings, (ii) garnishment, levy and debtor and third party examinations, (iv) discovery, and (v) bankruptcy litigation. Beneficiary shall have the right (but not the obligation) to commence, appear in, or defend any action purporting to affect any of the interests, rights, obligations or liabilities of Beneficiary or Trustor in connection with this Deed of Trust or any of the Loan Documents, and Trustor shall pay to Beneficiary on demand all costs and expenses reasonably incurred by Beneficiary in connection therewith.

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 146 of 177

9.29 **JURISDICTION; WAIVERS; JUDICIAL REFERENCE.**

**A.** **JURISDICTION.** WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDINGS BASED UPON, ARISING OUT OF, OR RELATING TO, THE LOAN, ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR INSTRUMENT BETWEEN THE PARTIES RELATING TO THE LOAN OR THE LOAN DOCUMENTS (EACH A "DOCUMENT", AND COLLECTIVELY, ANY OR ALL, THE "DOCUMENTS"), THE PROPERTY, THE RELATIONSHIP OF TRUSTOR AND BENEFICIARY HEREUNDER OR ANY DEALINGS BETWEEN THE PARTIES RELATING TO THE LOAN (EACH A "PROCEEDING", AND COLLECTIVELY, ANY OR ALL, THE "PROCEEDINGS"), EACH PARTY IRREVOCABLY (i) SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF CALIFORNIA AND THE UNITED STATES DISTRICT COURTS LOCATED IN THE STATE OF CALIFORNIA, (ii) AGREES THAT THE EXCLUSIVE VENUE FOR A JUDICIAL REFERENCE PROCEEDING PURSUANT TO SECTION 9.29.C BELOW SHALL BE THE COUNTY OF SANTA CLARA, CALIFORNIA, AND (iii) WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDINGS BROUGHT IN ANY SUCH COURT, WAIVES ANY CLAIM THAT SUCH PROCEEDINGS HAVE BEEN BROUGHT IN AN INCONVENIENT FORUM, AND WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO ANY PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY.

**B.** WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT PERMITTED BY LAW, EACH OF THE PARTIES HEREBY AGREES TO, AND DOES, WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL IN ANY PROCEEDING. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES INVOLVED IN ANY PROCEEDINGS OF ANY KIND WHATSOEVER THAT MAY BE FILED IN ANY COURT, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, ANTITRUST CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON-LAW OR STATUTORY CLAIMS. IN THE EVENT OF PROCEEDING IN A COURT, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY SUCH COURT WITHOUT A JURY.

**C.** Consent to Judicial Reference. If and to the extent that Paragraph 9.29.B is determined by a court of competent jurisdiction to be unenforceable or is otherwise not applied by any such court, each party hereby consents and agrees that (i) any and all Proceedings shall be heard by a referee in accordance with the general reference provisions of California Code of Civil Procedure Section 638, *et seq.*, as amended from time to time, in accordance with this Paragraph 9.29.C, sitting without a jury, in the County of Santa Clara, California, (ii) such referee shall hear and determine all of the issues in any Proceeding (whether of fact or of law), including issues pertaining to a "provisional remedy" as defined in California Code of Civil Procedure Section 1281.8, such as entering restraining orders, entering temporary restraining orders, issuing temporary and permanent injunctions and appointing receivers, and shall report a statement of decision as provided by California Code of Civil Procedure Section 643 in writing to the court, except that if, during the course of any Proceeding either party desires to seek such a provisional remedy but a referee has not been appointed, or is otherwise unavailable to hear the request for such provisional remedy, then such party may apply to the Santa Clara County Superior Court for such provisional relief, and (iii) pursuant to California Code of Civil Procedure Section 644, judgment may be entered upon the decision of such referee in the same manner as if the Proceeding had been tried directly by a court of competent jurisdiction. THE REFEREE SHALL NOT HAVE THE AUTHORITY TO AWARD PUNITIVE DAMAGES TO EITHER PARTY, AND EACH PARTY HEREBY WAIVES ANY RIGHT TO AN AWARD OF PUNITIVE DAMAGES. The parties shall use commercially reasonable and good faith efforts to agree upon and select such referee, provided that such referee must be a retired California state or federal judge, and that further provided if the parties cannot agree upon a referee, the referee shall be appointed by the Presiding Judge of the Santa Clara County Superior Court. The referee shall resolve any discovery disputes. The referee shall not permit any members of the public or the media to attend the hearing. Unless the parties agree otherwise, the hearing shall be recorded by a court reporter. The parties shall share the cost of the referee and reference proceedings equally; provided that the referee may award attorneys' fees and reimbursement of the referee and reference proceeding fees and costs to the prevailing party, whereupon all referee and reference proceeding fees and charges will be payable by the non-prevailing party (as so determined by the referee). This Agreement may be filed as evidence of either or both parties' consent and agreement to have any and all Proceedings heard and determined by a referee under California Code of Civil Procedure Section 638, *et seq.* EACH PARTY AGREES TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THIS "CONSENT TO JUDICIAL REFERENCE" PROVISION DECIDED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THIS PARAGRAPH 9.29.C, WITH A REFEREE AND NOT A JUDGE, AND IS GIVING UP ANY RIGHTS IT MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR BEFORE A TRIAL JURY. EACH PARTY ALSO IS WAIVING ANY RIGHT TO RECEIVE PUNITIVE DAMAGES. IF A PARTY REFUSES TO SUBMIT TO A GENERAL REFERENCE PROCEEDING AFTER AGREEING TO THIS PROVISION, IT MAY BE COMPELLED TO PARTICIPATE IN THE GENERAL REFERENCE PROCEEDING UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. EACH PARTY'S AGREEMENT TO THIS GENERAL REFERENCE PROVISION IS VOLUNTARY. EACH PARTY HAS READ AND UNDERSTANDS THE FOREGOING PROVISION AND VOLUNTARILY AGREES

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 147 of 177

TO SUBMIT PROCEEDINGS TO A GENERAL REFERENCE PROCEEDING BEFORE A REFEREE IN ACCORDANCE WITH THIS PARAGRAPH 9.29.C, RATHER THAN A COURT OR JURY AND TO WAIVE ANY RIGHT TO PUNITIVE DAMAGES.

D.      Applicability to Non-Judicial Foreclosures and Realization on Collateral. Notwithstanding anything to the contrary contained in this Paragraph 9.29, the parties understand, acknowledge and agree that a Proceeding does not include any non-judicial foreclosure of all or any portion of the Property whether pursuant to the provisions of any Document or applicable law, including non-judicial foreclosure pursuant to the applicable provisions of the California Civil Code and non-judicial foreclosure and/or private sale pursuant to the California Commercial Code, except that the provisions of Paragraphs 9.29.B and 9.29.C shall apply to any Proceeding brought by Trustor to contest any such non-judicial foreclosure and/or private sale (but not the non-judicial foreclosure and/or private sale, which shall remain pending) and the provisions of this Paragraph 9.29 shall not be deemed to be a waiver by Beneficiary of its right to proceed with a non-judicial foreclosure or private sale under applicable law as a permitted remedy under any Loan Document or under applicable law.

E.      ACKNOWLEDGEMENTS RELATED TO WAIVERS. EACH PARTY ACKNOWLEDGES THAT THE WAIVERS CONTAINED IN THIS PARAGRAPH 9.29 ARE A MATERIAL INDUCEMENT TO ENTERING INTO THE LOAN DOCUMENTS AND BENEFICIARY'S WILLINGNESS TO MAKE THE LOAN TO TRUSTOR, AND THAT EACH PARTY WILL CONTINUE TO BE BOUND BY AND RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. EACH PARTY FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED ALL WAIVERS CONTAINED IN THIS PARAGRAPH 9.29 WITH LEGAL COUNSEL OF ITS OWN CHOOSING, OR HAS HAD AN OPPORTUNITY TO DO SO, AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS RIGHTS AS SPECIFIED IN THIS PARAGRAPH 9.29 (INCLUDING JURISDICTION AND VENUE, THE RIGHT TO A COURT AND/OR JURY TRIAL, AND THE RIGHT TO CLAIM PUNITIVE DAMAGES) HAVING HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL. THESE WAIVERS ARE IRREVOCABLE, MEANING THAT THEY MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THESE WAIVERS SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS DEED OF TRUST, ANY OTHER LOAN DOCUMENT, OR ANY OTHER DOCUMENT ENTERED INTO BETWEEN THE PARTIES.

F.      SURVIVAL. THE PROVISIONS OF THIS PARAGRAPH 9.29 SHALL SURVIVE THE CLOSING OF THE LOAN (AND NOT BE MERGED THEREIN) OR ANY TERMINATION OF THE LOAN OR ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT.

9.30   Joint and Several Liability. If Trustor is comprised of more than one (1) Person, then the Obligations are joint and several undertakings of each of the Trustors, and Beneficiary may proceed against any one or more of the Trustors without waiving its right to proceed against any of the other Trustors.

9.31   General Partner Liability. Notwithstanding any contrary provision of applicable law, if Trustor is a limited partnership or any constituent entity of Trustor is a limited partnership, each general partner of Trustor or of any constituent entity of Trustor, agrees that Beneficiary need not exhaust the partnership assets of such partnership before executing upon the assets of such general partner in satisfaction of the obligations evidenced hereby or by any other document, instrument or agreement entered into by such partnership in connection with the Loan, but may execute upon such general partner's assets prior to, at the same time as, or after executing upon the partnership assets of such partnership. Each such general partner shall be jointly and severally liable for such obligations with all other persons and entities liable therefor. Upon Beneficiary's request, Trustor shall cause each any every person or entity becoming a general partner after the date of this Deed of Trust to execute an instrument agreeing to the provisions of this Section 9.31.

IN WITNESS WHEREOF, Trustor has caused this Deed of Trust to be executed as of the day and year first above written.

TRUSTOR:

_____
E. MARK MOON

_____
LORI H. MOON

Case: 22-03106    Doc# 96-4    Filed: 05/28/25    Entered: 05/28/25 14:45:16    Page 148 of 177

# EXHIBIT A

The land referred to is situated in the County of San Mateo, City of Redwood City, State of California, and is described as follows:

Parcel I:

Lot 36, as shown on that certain Map entitled "Laguna Pointe, City of Redwood City, County of San Mateo, State of California, filed in the Office of the County Recorder of San Mateo County, State of California on July 31, 1991 in Volume 122 of Maps at pages 67 through 80.

EXCEPTING THEREFROM all oil, gas or other hydrocarbon substances, geothermal steams, brines and minerals as said substances were excepted in that certain Deed recorded on February 23, 1990 as Document No. 90024690, Official Records of San Mateo County, California.

PARCEL II:

An exclusive easement for the uses, to the extent and subject to the limitations as set forth in Article XI of the Declaration of Covenants, Conditions and Restrictions for Laguna Pointe recorded on April 17, 1992 as Document No. 92057198, Official Records of San Mateo County, California, within the portion of Lot 35 as shown on that certain map entitled "LAGUNA POINTE, CITY OF REDWOOD CITY, COUNTY OF SAN MATEO, STATE OF CALIFORNIA", filed in the office of the County Recorder of San Mateo County, State of California on July 31, 1991 in Volume 122 of Maps at pages 67 through 80 which is designated as E.U.A. (Exclusive use area) and P.S.D.E. (Private storm drain easement) on said map and which adjoins Parcel I above.

Said easement is to be appurtenant to and for the benefit of Parcel I above.

PARCEL III:

An exclusive easement for the uses, to the extent and subject to the limitations as set forth in Article XI of the Declaration of Covenants, Conditions and Restrictions for Laguna Pointe recorded on April 17, 1992 as Document No. 92057198, Official Records of San Mateo County, California, within the portion of Lot 37 as shown on that certain Map entitled "LAGUNA POINTE, CITY OF REDWOOD CITY, COUNTY OF SAN MATEO, STATE OF CALIFORNIA", filed in the office of the County Recorder of San Mateo County, State of California on July 31, 1991 in Volume 122 of Maps at pages 67 through 80 which is designated as E.U.A. (Exclusive use area) and P.S.D.E. (Private storm drain easement) on said map and which adjoins Parcel I above.

Said easement is to be appurtenant to and for the benefit of Parcel I above.

PARCEL IV:

Non-exclusive easements of use, enjoyment, ingress, egress, and support in, to, and throughout all of the private streets and the Common Area Lots A through F, and to all improvements or facilities in said Common Area Lots A through F, to the extent and subject to the limitations as set forth in Article II of the Declaration of Covenants, Conditions and Restrictions for Laguna Pointe recorded on April 17, 1992 as Document No. 92057198, Official Records of San Mateo County, California.

Said easement is to be appurtenant to and for the benefit of Parcel I above.

APN: 095-370-320 JPN: 122-067-000-36 T

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**　　　　　　　　**CIVIL CODE § 1189**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of ~~SAN MATEO~~ )

On ~~JUNE 24, 2015~~ before me, *Mary R. Lazo, Notary Public* ,
　　　*Date*　　　　　　　　　　　　*Here Insert Name and Title of the Officer*

personally appeared ~~E. MARK MOON & LORI H. MOON~~
　　　　　　　　　　　　　　　*Name(s) of Signer(s)*

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> **MARY R. LAZO**
> **Commission # 2098588**
> **Notary Public - California**
> **San Mateo County**
> **My Comm. Expires Jan 31, 2019**

Signature _____
　　　　　*Signature of Notary Public*

*Place Notary Seal Above*

─────────── **OPTIONAL** ───────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: ~~DEED OF TRUST~~　　Document Date: ~~6/23/2015~~
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____　　　　Signer's Name: _____
☐ Corporate Officer — Title(s): _____　　☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General　　　　　　☐ Partner — ☐ Limited ☐ General
☐ Individual　☐ Attorney in Fact　　　　　　☐ Individual　☐ Attorney in Fact
☐ Trustee　☐ Guardian or Conservator　　　　☐ Trustee　☐ Guardian or Conservator
☐ Other: _____　　　　　　☐ Other: _____
Signer Is Representing: _____　Signer Is Representing: _____

---

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)　Item #5907

# EXHIBIT "8"

1 │ MORAN LAW GROUP, INC.
│ CATHLEEN COOPER MORAN, I.D. #83758
2 │ RENÉE C. MENDOZA, I.D. #139939
│ 643 Bair Island Road, Suite 403
3 │ Redwood City, CA 94063
│ Tel.: (650) 694-4700
4 │ Fax: (650) 368-4818
│ E-Mail: Cathy@moranlaw.net
5 │
6 │ Attorney for Debtor: Mark E. Moon
7 │ John P. McDonnell, Esq. (State Bar No. 77369)
│ Law Offices of John P. McDonnell
│ 295 89th Street, Ste. 200
8 │ Daly City, CA 94015-1655
│ Telephone: 650-991-9909
9 │ Facsimile: 650-449-7789
│ JPMcDON@aol.com
10 │
11 │ Attorney for Plaintiffs Mark and Lori Moon

1
MORAN LAW GROUP, INC.
CATHLEEN COOPER MORAN, I.D. #83758
2
RENÉE C. MENDOZA, I.D. #139939
643 Bair Island Road, Suite 403
3
Redwood City, CA 94063
Tel.: (650) 694-4700
4
Fax: (650) 368-4818
E-Mail: Cathy@moranlaw.net
5

6
Attorney for Debtor: Mark E. Moon

7
John P. McDonnell, Esq. (State Bar No. 77369)
Law Offices of John P. McDonnell
295 89th Street, Ste. 200
8
Daly City, CA 94015-1655
Telephone: 650-991-9909
9
Facsimile: 650-449-7789
JPMcDON@aol.com
10

11
Attorney for Plaintiffs Mark and Lori Moon

12                   UNITED STATES BANKRUPTCY COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA DIVISION 3

| | |
|---|---|
| 14  E. MARK MOON and LORI H. MOON | )  Chapter 11 |
| 15                  Plaintiffs, | )  Bankruptcy No. 20-30711 |
| 16           v. | )  Adversary No. 20-03117 |
| 17  MILESTONE FINANCIAL, LLC, a California | )  PLAINTIFFS' MOTION FOR AWARD OF |
| 18  Limited Liability Company, WILLIAM R. STUART, BEAR BRUIN VENTURES, INC. a | )          ATTORNEYS FEES |
| 19  California Corporation, and DOES 1 to 10 inclusive. | )  DATE:  July 1, 2022 |
| 20                  Defendants. | )  TIME:  10:30 A.M. |
| | )  DEPT.  Judge Montali |

21

22          John P. McDonnell, attorney for Plaintiffs, represents as follows;

23                        FACTUAL BACKGROUND

24          The Court is familiar with the facts of the case, but for the convenience of the Court, the

25   relevant factual background from the Plaintiff's Motion for Partial Summary Judgment (Docket

26   #36), is attached as Exhibit A.

27          ///

28          ///

1

**Prior To Bankruptcy**

Mark Moon retained my services in June 2019, and entered into a representation agreement, a copy of which is attached as Exhibit B.

Mr. Moon was referred to me by a colleague in June 2019. He brought a considerable amount of documentation, including the April 2019 payoff demand for $1,288,792. Mark had secured a refinancing loan from Network Capital in March 2019, and he was trying to obtain a payoff number from Milestone. I reviewed many documents that Mark had relating to the loans and the Milestone payoff demand. I conducted some legal research on some of the amounts demanded by Milestone in the excessive April 19, 2019 payoff demand.

The case required research into the law on the distinctions between legitimate "liquidated damages" and an illegal penalty provision. The law has shifted and evolved quite a bit since the statute was amended in 1977 to create a presumption in favor of the validity of a liquidated damages provision. I concluded that the provisions in the Milestone documents were illegal penalties.

After reviewing the case, in July 2019, I contacted the attorney for Milestone, Harris Cohen. I sent him an e-mail stating that the $115,615 acceleration penalty was illegal and that the interest claim was overstated.

As pointed out to the court previously, I proposed to Mr. Cohen that we pick a number to for Moon to pay off, while both parties reserved all their rights. We could get Milestone paid a lot of money, and Milestone could still pursue its claims for more. I proposed $945,000 as a possible number. Neither Mr. Cohen nor Milestone ever responded to that proposal.

Milestone's only response to my July proposal was to file a Notice of Default in September 2019. The NOD claimed that the amount owed as of September 2019 was $1,247,843. This was *less* than the $1,288,792 demand in the April 2019 payoff demand. Milestone conceded at this point that the $115,615 acceleration penalty was improper and removed it from its claim.

///

///

2

Case: 20-03110  Doc# 96-4 Filed: 06/23/25 Entered: 06/23/25 15:48:16 Page 2 of 53
of 177

1    Milestone has always litigated the case aggressively. As the case has progressed, I have

2    become convinced that Milestone adopted an aggressive litigation posture to delay the case,

3    increase the costs and amplify their interest claims.

4    Milestone has been claiming interest at a rate of 20.05% all during the litigation. That

5    rate, on just the $902,525 principal from the 2016 extension agreement, would be over $180,000

6    per year, and $15,000 per month. In the time since the case was initially filed in November

7    2019, (approximately 30 months) Milestone has increased its interest claim by at least another

8    $450,000. Milestone fully expected to collect that increased amount (if it prevailed), since the

9    Moons' home is valued at over $2.4 million.

10   **Suit filed in State Court. November 2019**

11   Since I could make no progress resolving the payoff dispute, I filed a lawsuit on behalf

12   of Mark Moon in San Mateo Superior Court in November 2019.

13   Milestone immediately took an aggressive posture in the case, raising procedural

14   objections to the complaint. Rather than spend time dealing with a likely demurrer, I filed an

15   amended complaint.

16   From years of experience, I have found that creating a detailed chronology of the case

17   and the evidence (mostly based on documents produced) is essential in business litigation. I

18   kept such a chronology in this case and updated it regularly as the case progressed. I also

19   created a "notes" document that I regularly updated. The chronology was very helpful at many

20   stages in the case, as was reviewing prior notes as the case progressed.

21   The parties engaged in document discovery and Requests for Admissions. Milestone

22   obtained documents from the Moons, and I obtained documents from then-defendant Evergreen

23   Escrow Inc. Milestone also subpoenaed the full loan file from Network Capital, the mortgage

24   company that had committed to the March/April 2019 loan to the Moons. Network produced

25   over 12,000 pages of documents, which were not well organized. All of these documents

26   required review and coordination with the documents already recorded in the chronology.

27   ///

28   ///

There were a large number of discovery disputes between the parties, and in July 2019, the parties went through an "Informal Discovery Conference" as required by the San Mateo Local Rules.

As the case was progressing, consistent with its aggressive posture, Milestone filed a Notice of Trustee' Sale on May 19, 2020 and set the sales date at June 24, 2020.

**Trustee's Sale and TRO**

The notice of Trustee' Sale forced the Moons to make an emergency motion for a Temporary Restraining Order in June 2020. This required further research into the California Homeowners Bill Of Rights for the ways in which Milestone's foreclosure notice violated those statutes.

This was after the COVID emergency orders that courts issued in March through June 2019, which had effectively closed the courthouses. It was almost impossible to determine where and how to make an ex parte application with the courts closed. It took considerable time to work though the maze of the many *ad hoc* orders issued by the court.

I made the ex parte application for the TRO on June 19, 2020. Milestone appeared through counsel and filed a 94-page Opposition. The application was submitted to the Judge, who ruled that a TRO was not needed, because the sale was prohibited by Governor Newsom's COVID Orders.

Milestone then notified me that it did not agree with the Judge's decision, and would still proceed with the sale on June 24, 2020.

So I had to return to court on 6/23 to resubmit the TRO application to stop the sale. Milestone again submitted its 94-page Opposition. Judge Davis issued the TRO on June 23, 2020.

Per statute, Judge Davis set a hearing for a preliminary injunction. Again the parties submitted voluminous memos and declarations. Milestone amplified their position with declarations from experts. At the September 3 hearing, Judge Miram determined that the Moons had failed to meet the high requirements for a preliminary injunction and denied the application.

1    The Moons initially filed a Notice of Appeal, but then, in consultation with bankruptcy

2    counsel Cathy Moran, they determined to file for bankruptcy on September 10, 2019.  The state

3    court action was then removed to bankruptcy court.

4    In the interim, Judge Davis had entered a tentative ruling awarding Moons $14,450 in

5    attorneys fees for the work on the TRO.  Due to the removal of the case to bankruptcy, this order

6    was not made final.

7    **Adversary Case in Bankruptcy**

8    I worked with bankruptcy counsel and filed an application for Mr. Moon to employ me

9    as counsel in the adversary case.  Again, consistent with their aggressive litigating, Milestone

10   filed an Opposition to my employment

11   It was necessary to quickly research the law and rules governing employment of special

12   counsel and file an Opposition.  Ms. Moran also filed an Opposition.  The Court determined that

13   the Opposition to my employment was meritless and approved my application.

14   The parties commenced discovery under Rule 26.

15   As noted above, there were discovery disputes in State Court and the Discovery disputes

16   continued after the case got to bankruptcy court.  I had several disputes with the defense about

17   compliance with Rule 26, and the parties had disputes over the further discovery.  The Court

18   handled one of these disputes at a status conference.

19   The Court referred the case to the BDRP procedure, and the parties proceeded to take

20   depositions.  This involved the usual wrangling about scheduling, complicated by the fact that

21   the depositions would be done remotely.  Milestone began with the deposition of Mr. Moon, and

22   I went through the normal routine of reviewing my chronology, notes and documents to prepare

23   for Mr. Moon's deposition.  I had to do the same for the later deposition of Mrs. Moon

24   Aster the deposition of Mark Moon, I proceeded to take the deposition of Mr. Stuart.

25   This led to the large logistical problem of getting the exhibits into the record properly at a

26   remote deposition.  I worked with the Talty reporting firm in San Jose, which had a system

27   (called "Agile") for doing this.  I took the training on Agile and proceeded with the deposition.

28   There were many exhibits for the deposition.  At the deposition, Mr. Stuart stated that he could

1  not stay for the full day but had to leave early.  This required us to schedule a second deposition

2  date.

3       While the case was in the bankruptcy court, but before the BDRP mediation, my research

4  disclosed that the California usury statute could apply to the Moon loan.  The loan states that it

5  was negotiated by a Real Estate Broker named Marc Fournier.  So I prepared and served a

6  deposition subpoena on Mr. Fournier.  I was then contacted by Fournier's attorney.  we had

7  several discussions, and I decided not to proceed with Fournier's deposition.

8       The next event in the case was the BDRP mediation.  This involved preparing a lengthy

9  brief of the facts and law, and working with Mr. Moon to prepare for the mediation (by zoom). I

10  continued to research the usury issue, and determined that even if Mr. Fournier had been

11  involved in the initial 2015 loan, there was no broker involved in the 2016 extension.  I brought

12  this issue, as well as the issue of the illegality of the $115K acceleration penalty, up at the

13  mediation in late August 2021.  Milestone was unconvinced.  Eventually, the mediation was

14  unsuccessful.

15       After the mediation, I prepared and filed the Motion for Partial Summary Judgment on

16  September 9, 2021, which included the usury issue and the acceleration penalty.  As usual, the

17  preparation of this type of motion requires a thorough presentation of the facts and the law.

18       In response to my usury argument, Milestone stated for the first time that Mr. Stuart's

19  wife was the real estate agent on the extension.  This led to a great deal of further research on

20  what needed to be done for a loan to be "arranged or negotiated" by a broker, including the case

21  *Gibbo v. Berger* (2004) 123 Cal.App.4th 396), and the rules for broker participation and

22  compensation.  This also led to research on the Mortgage Loan Originator license requirements.

23  Mrs. Stuart did not have a MLO license (Mr. Fournier did have one for the initial 2015 loan).

24       After I filed my MSPJ, Milestone filed its motion for full summary judgment.  I had to

25  do extensive additional work to defend against Milestone's motion.

26       The Court is deeply familiar with the motions and the oppositions on those cross-

27  motions, including the great deal of research required on the "not a forbearance" issue raised by

28

Milestone. I researched the lengthy history of the case law on "credit sales" and determined that Milestone's position was meritless.

Milestone also claimed that its huge acceleration penalty could be justified as "liquidated damages" because without the money early (four months before the July 13, 2019 due date), Milestone could not relend the money and earn another fee. I researched the law to determine if there was any support for this claim for "consequential damages." There is none. I also extensively researched the "liquidated damage" cases that involved collection of loans, including *Sybron Corp. v. Clark Hosp. Supply Corp*. (1978) 76 Cal.App.3d 896 and *Greentree Financial Group, Inc. v. Execute Sports, Inc*. (2008) 163 Cal.App.4th 495, which established that since damages for withholding money are easily determined (the amount owed times the interest rate), any penal provision included in a loan collection claim is illegal, and can not qualify as liquidated damages.

After submission of the briefs of the parties, the court requested briefing on the applicability of the court's holdings in its earlier *Arce* case. I did more research and prepared a memo urging that those holdings applied in our case. I also reviewed the Milestone brief on the issue.

On January 12, 2022, the Court gave the parties an oral ruling on the motions, and issued a Memo decision on January 31. This directed the parties to try to arrange agreement on the payments made by Moon and the advances made by Milestone. This required obtaining records of the payments Moon had made during the bankruptcy case. This was difficult, because the bank did not have online access to "debtor in possession" records. We finally obtained the records. I reviewed the records, calculated the amounts and provided the records to Mr. Cohen. We both worked further to work out some questions on the Moon payments.

I also researched and prepared a memo on the applicability of *Akopyan v. Wells Fargo Home Mortgage, Inc.* (2013) 215 Cal.App.4th 120, and other issues. The parties also disputed whether Milestone could charge a 10% "administrative fee" on advances it made. As part of preparation for the status conference, I also had to review the Moon Deed of Trust to show that the language that Milestone had presented in its papers did not appear in the Moon DOT.

My review of treatises on mortgage lending and foreclosures indicated to me that the Milestone loan to the Moons violated several federal statutes, such as the Truth in Lending Act (TILA), the Real Estate Settlement Procedures Act (RESPA) and the Home Ownership and Equity Protection Act (HOEPA). I thoroughly researched those, and with the help of an expert (discussed below) determined that many of these statutes, particularly TILA, had been violated. I was prepared to move to amend the complaint, but the Court's ruling on usury made that moot.

While this case was in the bankruptcy court, the state court erroneously concluded that the state case had been dismissed. I wanted that case as a backup in case Moon's bankruptcy case was dismissed before this Adversary Proceeding was resolved. I had to file a motion under Cal. C.C.P. §473 for correction of an error by the court. That was successful.

On April 27, the Court issued its final ruling on the two motions. The time records I gave to Mr. Cohen (and the court) go up to May 17, 2022, the date the records were printed. The May time includes some of the time working on this fee application.

As directed by the final order, I prepared a proposed judgment and sent it to Mr. Cohen. He did not to approve my proposal and sent the court one of his own. The court reviewed the papers on this and issued its final judgment on May 26, 2022.

**Additional Information**

I have attached my time records as Exhibit C. I have previously provided these to Mr. Cohen. There are several references in my records to a "consulting expert." This was a connection I made through an old law partner of mine, who is very knowledgeable in the areas of mortgage lending and mortgage loan servicing. He agreed to work for no charge, so there are no third party fees in my application. He provided me with a great deal of information on mortgage servicing (which contradicted what Mr. Stuart had stated in his deposition). He also provided the information related to the federal lending regulations, which confirmed that the violations of federal law could be raised. However, as stated above, this issue became moot.

Also, my fee agreement provides that I can charge Mark 8% interest on past due amounts, but I have never charged Mark interest. However, I have not been paid on this case for the approximately 19 months since Mark filed bankruptcy in September 2019. I have also been

8

Case: 20-03110 Doc#: 966-4 Filed: 06/05/23 Entered: 06/05/23 15:48:16 Page 2 of 53
Case: 22-03011 Doc#: 96-4 Filed: 06/05/25 Entered: 06/05/25 15:48:16 Page 2 of 53 of 177

advancing all of the costs of the case since then. I am a sole practitioner, and the lack of any revenue on a case that absorbed a great deal of my time, as well as some costs, has been a hardship. I believe interest in an amount of $5,000 would be fair.

With respect to the time records, I submitted a regular bill for time up to the bankruptcy date (Sept. 9, 2020) as a creditors claim. After that, I continued to keep track of time as before, but I never submitted a bill to Mark. At all times, I expected the case to settle, as 95% of business cases do, so I expected that Mark would bear the brunt of the attorneys fees. So I billed accordingly. There are many instances in the records where I show some work as "no charge." If the work was brief, or simple or repetitive, I did not charge for it.

I prepared regular bills for September through March 31, 2021, but did not send them. After that, I continued to keep time records, but did not prepare a regular bill. So there are bills from June 2019 to March 2021. After April 1, 2021, the time records are presented in the raw, pre-bill format. Due to some glitch in the billing software, I have not been able to convert these to "pro forma" bills.

**Education and Experience**

As stated in my resumé attached as Exhibit D, I graduated from Boalt Hall at the University of California Berkeley in 1977, and then obtained a further degree in tax law at NYU, the top tax program in the country.

My first case was to brief and argue the appeal to the Ninth Circuit in the Lettieri case listed in the resumé. It was a difficult "choice of law case" involving conflicts between New York, New Jersey and California, but I convinced the court to reverse the lower court and apply California law. I mention it only because I represented the family of Al Lettieri, who played the role of the gangster who ordered the "hit" on Don Corleone in "The Godfather," and who was then shot in the head by Michael in the Italian restaurant. It was my first and last "glamor" case.

I began my career as an international tax attorney at Bank of America, where I handled many complex issues, including the legal and tax problems caused by President Carter's 1979 instruction for the U.S. banks to seize all the asset of the new Iranian government. I also worked

on foreign exchange tax issues, and eventually wrote the article that led the IRS to change its rules on foreign dividends (IRC §986).

I then worked in corporate and international tax at Baker & McKenzie. My experience in finance helped me to convince the IRS to abandon an improper income accounting issue and drop a $55 million claim against a large retail manufacturer. I also worked on U.S. export controls on American technology that might be used for military purposes.

The breadth of my practice continued to expand when I moved to Wilson Sonsini. I continued to work on tax matters, such as mergers, and tax litigation, but also began working on business litigation including commercial lease disputes and disputes on technology contracts.

In 1989 I moved to the small firm of Myers Hawley in Los Altos. At that point my practice became about 70% business litigation and 30% tax work. In 1991, I tried the first case that alleged software copyright infringement—a six-week jury trial before the late judge William Ingram that resulted in a verdict for my client, the Plaintiff. In the *Galedrige* case, the IRS had decided to force all construction companies to change to the accrual method of accounting, which would produce an extremely large tax increase. The IRS had already won two of those cases, but the *Galedrige* case (and the *Turin* case) reversed the tide. Eventually, the IRS abandoned its position and issued Notice 2001-010.

I continued to handle cases that involved individuals and businesses, including technology contract cases. I also handled cases dealing with technology patent licensing . I continued to work in commercial leasing and real estate litigation, leading to the *WDT Winchester* case that clarified the application of new laws for evicting commercial tenants. I also handled quite a few SLAPP cases, such as the *Sareen* case. I have also assisted many people with IRS claims of failure to report foreign bank accounts.

For the last 20 years or so, I have been working (pro bono) as a "pro tem" judge in Santa Clara, handling Mandatory Settlement Conferences. During those many conferences, I have also learned a great deal about the many varied business cases that come before that court.

///

///

10

**Legal Discussion**

The California Courts have firmly established that in calculating "reasonable attorney's fees" under Civil Code §1717, the starting point is the "lodestar" amount, which is a reasonable amount of time multiplied by a reasonable hourly rate.

> 'Under the lodestar method, attorney fees are calculated by first multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate of compensation. (See *Ketchum v. Moses, supra*, 24 Cal.4th at p. 1136; *Serrano v. Priest* (1977) 20 Cal.3d 25, 48)"

*Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 619-620.

> The lodestar figure may then be adjusted, based on factors specific to the case, to fix the fee at the fair market value for the legal services provided. (*PLCM, supra*, 22 Cal.4th at p. 1095.)

*Pasternack v. McCullough* (2021) 65 Cal.App.5th 1050, 1055 [280 Cal.Rptr.3d 538].)

My time records are at Exhibit C. As shown at the last page, the total amount of time necessary on this case was 596.9 hours (up to May 17, 2022), and my billing rate has been $425 per hour. The costs have been $9,605.61. I am a sole practitioner and the only attorney that worked on the case. There have been no "multi-attorney" meetings, other than my conversations with Ms. Moran to improve my understanding of the rules in bankruptcy courts.

All of this time has been reasonably expended in dealing with the contract claim in the case.[1] The hours might seem high to Mr. Cohen, but they have been incurred due to the aggressive litigation tactics of Milestone. As the California Supreme Court has held, "[a party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh* (1982) 32 Cal.3d 621, followed in *Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 627

The courts have also established that a "reasonable hourly rate" refers to the prevailing rate for attorneys in the community engaged in same type of work with similar experience.

> "We [have] expressly approved the use of prevailing hourly rates as a basis for the lodestar, noting that anchoring the calculation of attorney fees to the lodestar

---

[1] The Amended Complaint includes a fraud claim, but virtually no time was spent on that. The discovery of the fraud was serendipitous. The mortgage servicing company sent Mark a document that showed how the $902,525 in the 2016 Settlement Agreement was calculated. This disclosed what appeared to be another improper $81,000 "acceleration penalty" that was never disclosed to Mark. The only real work on the fraud claim was to add it to the Amended Complaint.

11

adjustment method " 'is the only way of approaching the problem that can claim objectivity…
*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.

The "prevailing rate" is not limited by the rate actually charged by the attorney.

To determine the reasonable hourly rate, courts consider the rate prevailing in the community for similar work. (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 582 . This market rate approach has been applied in cases involving in-house counsel, contingency fees, and pro bono work. In each of these cases, courts have refused to limit the market rate to the attorney's fee arrangement with the prevailing party. (*PLCM, supra*, 22 Cal.4th at p. 1096…. "Although the terms of [a fee] contract may be considered, they 'do not compel any particular award.' [Citations.]" (*PLCM, supra*, 22 Cal.4th at p. 1096.)
*Pasternack v. McCullough (*2021) 65 Cal.App.5th 1050, 1055-1056.

There is no requirement that the reasonable market rate mirror the actual rate billed.
*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 701.

In determining the prevailing rate in the community, courts have looked to published reports based on surveys of actual rates. One survey that is often used is the "Laffey Matrix," which provides the rates that the U.S. Department of Justice will accept as reasonable in federal litigation. A copy of the 2022 Laffey Matrix is attached as Exhibit E. It shows that in 2019, the hourly rate for attorneys with 20+ years of experience was $894 per hour, which had increased to $919 per hour by the end of 2021. Courts that have used the Laffey Matrix have stressed that the D.C. rates must be adjusted to determine rates that should be charged in a locality. The method for doing this is to refer to the difference in prevailing wages for attorneys in the local community with those in D.C. To do this, the court looks at the wage data provided by the Bureau of Labor statistics. See, e.g. *In re HPL Technologies, Inc. Securities Litigation* (N.D.Cal. 2005) 366 F.Supp.2d 912, 922 where Chief Judge Walker determined that the Laffey rate should be adjusted upward by 9%. The *HPL* case was cited with approval in *Syers Properties,* supra, at 695. The BLS data for D.C, available at https://www.bls.gov/oes/current/oes_47900.htm#23-0000 shows that the average hourly wage for lawyers in D.C is $89.72. The BLS information for the San Francisco-Oakland Bay Area at https://www.bls.gov/oes/current/oes_41860.htm#23-0000 shows that the average hourly wage for lawyers in S.F. is $92.05, about 2.5% higher.

However, California Courts have stressed that the Laffey number is only one factor that the court may look to in its discretion.

> "In sum, *PLCM, Nemecek, Syers*, and their like tell us that a trial court has discretion to award an hourly rate under the lodestar method that exceeds the rate that was actually incurred or paid. These cases also disclose the trial court's wide discretion to consider the prevailing party's fee agreement in awarding attorney fees."

*Paternak, supra*, at 1058.

Another objective source that courts have looked to is the Kluwers "Real Rate Report," which actually conducts a detailed survey of billing rates in each major locality. The relevant pages from the 2020 report are attached at Exhibit F. These show that the *median* rate for partners with 21+ experience in SF is $700, and the *average* rate for these partners in the mid-range "third quartile" (above the lowest 40% and below the highest 40%) is $945. (The respective rates for San Jose are actually higher at $865 and $1,028.) An average of the $700 median rate and the $945 average third-quartile rate would be $822.50, which is lower that the Laffey rate outlined above.

Based upon this objective information, I would suggest that $800 would be a fair prevailing rate to use in this case. If that rate is applied to the entire 596.9 hours of time, the attorney's fees awarded to Mark Moon should be $477,540. The costs of $9,605 should be added to this. And as requested above, I believe $5,000 would be an additional amount to compensate for the delay in getting paid.

The prevailing party is also entitled to recover attorneys fees for the time involved in preparing the motion. That time will have to added when the Opposition and Reply briefs are over.

Dated: June 3, 2022

         /s/ John McDonnell
JOHN P. McDONNELL, ESQ.
Attorney for Plaintiffs

13

# EXHIBIT "9"

| Date | Timekeeper | Hours | Rate | Amount | Status | Narrative |
|---|---|---|---|---|---|---|
| 7/3/2024 | Kornberg, Bernie | 0.2 | $500 | $100.00 | B | Review initial case management order |
| 7/10/2024 | Kornberg, Bernie | 0.3 | $500 | $150.00 | B | Review notice of designation of record |
| 7/18/2024 | Kornberg, Bernie | 0.2 | $500 | $100.00 | B | Review amended notice of designation |
| 7/22/2024 | Kornberg, Bernie | 0.6 | $500 | $300.00 | B | Review designation of record and prepare counter-designation |
| 7/23/2024 | Kornberg, Bernie | 0.5 | $500 | $250.00 | B | Review additional documents in record to determine necessity of inclusion of additional documents for designation |
| 8/15/2024 | Kornberg, Bernie | 0.6 | $500 | $300.00 | B | Review order by 9th Circuit on attorneys' fees (.2); call with Harris Cohen regarding strategy after entry of order (.2); call with client regarding entry of order (.2) |
| 8/23/2024 | Kornberg, Bernie | 0.2 | $500 | $100.00 | B | Communicate with Moons' counsel regarding extension of time |
| 8/25/2024 | Kornberg, Bernie | 0.1 | $500 | $50.00 | B | Reviewed motion to extend time to file opening brief |
| 8/27/2024 | Kornberg, Bernie | 0.2 | $500 | $100.00 | B | Review order granting extension of time to file opening brief |
| 9/4/2024 | Kornberg, Bernie | 0.5 | $500 | $250.00 | B | Initial review of opening brief (.4); send brief to client with comments (.1) |
| 9/26/2024 | Kornberg, Bernie | 0.1 | $500 | $50.00 | B | Communicate with Moon's counsel regarding extension of time to file brief |
| 9/30/2024 | Kornberg, Bernie | 0.8 | $500 | $400.00 | B | Draft motion and supporting documents to extend deadline to file brief |
| 10/1/2024 | Kornberg, Bernie | 0.2 | $500 | $100.00 | B | Review order extending deadline to file brief |
| 10/8/2024 | Kornberg, Bernie | 3.4 | $500 | $1,700.00 | B | Draft appellee's brief |
| 10/9/2024 | Kornberg, Bernie | 5.2 | $500 | $2,600.00 | B | Continue drafting appellee's brief |
| 10/10/2024 | Kornberg, Bernie | 6.3 | $500 | $3,150.00 | B | Finalize first draft of appellee's brief (3.2); revise brief per comments of Harris Cohen and prepare final brief (3.1) |
| 10/11/2024 | Kornberg, Bernie | 0.1 | $500 | $50.00 | B | Send brief to client with comments |
| 10/23/2024 | Kornberg, Bernie | 0.4 | $500 | $200.00 | B | Review reply brief and send to client with comments |
| 12/9/2024 | Kornberg, Bernie | 0.1 | $500 | $50.00 | B | Review order of court continuing hearing |
| 12/16/2024 | Kornberg, Bernie | 0.1 | $500 | $50.00 | B | Communicate with client regarding timing of appeal |
| 5/12/2025 | Kornberg, Bernie | 0.5 | $500 | $250.00 | N | Review District Court's memorandum decision on appeal (.3); communicate with client and counsel regarding result and triggering deadlines (.2) |
| | **Total Hours:** | **20.6** | **Total Billed:** | **$10,300.00** | | |

# EXHIBIT "10"

| | | MILESTONE BILLS AFTER 6/20/24 | | | | |
|---|---|---|---|---|---|---|
| **MONTH** | | **HOURS** | | **@$800.00** | | **AT REDUCED** |
| | | | | | | **RATE** |
| 6/30/2024 | | 0.6 | | $ 480.00 | | $ 237.00 |
| 7/31/2024 | | 13.3 | | $ 10,640.00 | | $ 5,253.50 |
| 8/31/2024 | | 4.1 | | $ 3,280.00 | | $ 1,619.50 |
| 9/30/2024 | | 2.15 | | $ 1,720.00 | | $ 849.25 |
| 10/31/2024 | | 4.85 | | $ 3,880.00 | | $ 1,915.75 |
| 11/30/2024 | | 0.1 | | $ 80.00 | | $ 39.50 |
| 1/31/2025 | | 0.95 | | $ 760.00 | | $ 375.25 |
| 4/30/2025 | | 0.25 | | $ 200.00 | | $ 98.75 |
| 5/25/2025 | $ 4.60 | | | $ 3,680.00 | | $ 1,817.00 |
| | | | | $ 24,720.00 | | $ 12,205.50 |

# Harris L Cohen, Esq.

Harris L. Cohen, A Professional Corporation
5305 Andasol Ave. / Encino, CA 91316
Tel (818) 905-5599 / Fax (818) 905-5660
Hcohen00@aol.com
6/30/24

# STATEMENT

| Attorney Fees $395.00/hr. Hours 0.6 | $ 237.00 |
|---|---|
| Costs | $ 0.00 |
| **TOTAL DUE** | **$ 237.00** |

Mr. William R. Stuart
Milestone Financial LLC
4970 El Camino Real, Ste. 230
Los Altos, CA 94022

**ATTORNEYS' FEES** Re: Moon 11 Mandalay Milestone

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 6/21/24 | Reviewed notice of appeal (0.10) | 0.10 |
| 6/27/24 | Tel with Kornberg re fees motion, meet and confer etc. (0.20) | 0.20 |
| 6/28/24 | Drafted email to opposing counsel re meet and confer re attorneys' fees motion (0.10), tel to opposing counsel, revised declaration re meet and confer (0.20) | 0.30 |

| Cost Items | Amount |
|---|---|
|  |  |

# Harris L Cohen, Esq.

Harris L. Cohen, A Professional Corporation
5305 Andasol Ave. / Encino, CA 91316
Tel (818) 905-5599 / Fax (818) 905-5660
Hcohen00@aol.com
7/31/24

# STATEMENT

| Attorney Fees $395.00/hr. Hours 13.3 | |
|---|---|
| | $5,253.50 |
| Costs | $ 0.00 |
| **TOTAL DUE** | **$5,253.50** |

Mr. William R. Stuart
Milestone Financial LLC
4970 El Camino Real, Ste. 230
Los Altos, CA 94022

**ATTORNEYS' FEES** Re: Moon 11 Mandalay Milestone

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 7/1/24 | Email to opposing counsel (0.10), revised declaration (0.20), email to Kornberg (0.10), reviewed Kornberg declaration (0.20), revisions and emails re same, (0.20) reviewed brief changes (0.30), email to Kornberg re same (0.10), tel from McDonnell and revised declaration after meet and confer (0.20), tel with Kornberg (0.10), prepared Stuart declaration (0.10), text and call to Stuart (0.10), more calls with Kornberg re bill of costs (0.10) | 1.70 |
| 7/2/24 | Tel from Kornberg re bill of costs issue (0.10) | 0.10 |
| 7/3/24 | Reviewed appeal scheduling order (0.10) | 0.10 |
| 7/22/24 | Began review of opposition to motion from attorneys, fees (0.95), began work on opposition (1.30) | 2.25 |
| 7/23/24 | Worked on Kornberg declaration (0.30), legal research (1.50), worked on drafting opposition  (1.70) | 3.50 |
| 7/23/24 | Appeal -  Emails re appeal (0.10), tel from Kornberg, second call from Kornberg, (0.15) reviewed documents for appeal at Kornberg request (0.40) | 0.65 |
| 7/24/24 | Worked on reply to opposition to motion for attorneys' fees (3.00) | 3.00 |
| 7/25/24 | Worked on revisions to Kornberg declaration (0.40), worked on revisions to brief and response to McDonnell supplemental brief (1.10) | 1.50 |
| 7/30/24 | Reviewed case management statement from McDonnell (0.15), prepared case management statement and proof of service, service and emails (0.35) | 0.50 |
| | | |
| | | |
| | | |
| | | |

| Cost Items | Amount |
|---|---|
| | |

# Harris L Cohen, Esq.

Harris L. Cohen, A Professional Corporation
5305 Andasol Ave. / Encino, CA 91316
Tel (818) 905-5599 / Fax (818) 905-5660
Hcohen00@aol.com
8/31/24

# STATEMENT

| Attorney Fees $395.00/hr. Hours 4.1 | $1,619.50 |
|---|---|
| Costs | $  0.00 |
| **TOTAL DUE** | **$1,619.50** |

Mr. William R. Stuart
Milestone Financial LLC
4970 El Camino Real, Ste. 230
Los Altos, CA 94022

**ATTORNEYS' FEES** Re: Moon 11 Mandalay Milestone

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 8/1/24 | Reviewed pleading and began preparation for hearing (0.75) | 0.75 |
| 8/2/24 | Continued hearing preparation and appeared at hearing (1.15), drafted proposed order after hearing (,65)  revised proposed order (0.30), email to McDonnell (0.15) | 2.25 |
| 8/6/24 | Email from McDonnell (0.10), revised proposed order, prepared redline (0.20), email to McDonnell (0.10) | 0.40 |
| 8/15/24 | Appeared at state court status conference, email to client (0.25) | 0.25 |
| 8/26/24 | Reviewed order from court, emails re same (0.20) | 0.20 |
| 8/27/24 | Tel with Kornberg (0.10), discussed order by 9th circuit and related issues (0.10), email to client (0.05) | 0.25 |
|  |  |  |

| Cost Items | Amount |
|---|---|
|  |  |

# Harris L Cohen, Esq.

Harris L. Cohen, A Professional Corporation
5305 Andasol Ave. / Encino, CA 91316
Tel (818) 905-5599 / Fax (818) 905-5660
Hcohen00@aol.com
9/30/24

# STATEMENT

| Attorney Fees $395.00/hr. Hours 2.15 | $ 849.25 |
|---|---|
| Costs | $  0.00 |
| **TOTAL DUE** | **$ 849.25** |

Mr. William R. Stuart
Milestone Financial LLC
4970 El Camino Real, Ste. 230
Los Altos, CA 94022

**ATTORNEYS' FEES** Re: Moon 11 Mandalay Milestone

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 9/6/24 | Tel from Kornberg regarding briefing strategy on motion for reconsideration (0.25) | 0.25 |
| 9/9/24 | Reviewed opposition to motion for reconsideration (0.30), prepared redline and new brief (0.40), reviewed state court case dismissal, email to client re same (0.10) | 0.80 |
| 9/12/24 | Reviewed ninth circuit court order, tel from Kornberg (0.20), reviewed emails (0.10) | 0.30 |
| 9/30/24 | Discussion with Kornberg re attorneys' fees motion and issues and options (0.10), began drafting motion (0.60) | 0.80 |
| | | |

| Cost Items | Amount |
|---|---|
| | |

# Harris L Cohen, Esq.

Harris L. Cohen, A Professional Corporation
5305 Andasol Ave. / Encino, CA 91316
Tel (818) 905-5599 / Fax (818) 905-5660
Hcohen00@aol.com
10/31/24

# STATEMENT

| Attorney Fees $395.00/hr. Hours 4.85 | $1,915.75 |
|---|---|
| Costs | $ 0.00 |
| **TOTAL DUE** | **$1,915.75** |

Mr. William R. Stuart
Milestone Financial LLC
4970 El Camino Real, Ste. 230
Los Altos, CA 94022

**ATTORNEYS' FEES** Re: Moon 11 Mandalay Milestone

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 10/1/24 | Worked on motion to change hearing to substantive hearing (1.25), pulled documents (0.30), drafted notice of hearing (0.25), email to Kornberg (0.10) | 1.90 |
| 10/10/24 | Calls with Kornberg (0.20), worked on brief (1.15), prepared redline and clean draft (0.25) | 1.60 |
| 10/24/24 | Reviewed opposition to motion to advance attorney fee hearing (0.20) | 0.20 |
| 10/30/24 | Call with Kornberg re motion to advance hearing and related issues (0.20) | 0.20 |
| 10/31/24 | Worked on reply brief (0.95) | 0.95 |
| | | |

| Cost Items | Amount |
|---|---|
| | |

# Harris L Cohen, Esq.

Harris L. Cohen, A Professional Corporation
5305 Andasol Ave. / Encino, CA 91316
Tel (818) 905-5599 / Fax (818) 905-5660
Hcohen00@aol.com
11/30/24

# STATEMENT

| Attorney Fees $395.00/hr. Hours 0.1 | $ 39.50 |
|---|---|
| Costs | $ 0.00 |
| **TOTAL DUE** | **$ 39.50** |

Mr. William R. Stuart
Milestone Financial LLC
4970 El Camino Real, Ste. 230
Los Altos, CA 94022

**ATTORNEYS' FEES** Re: Moon 11 Mandalay Milestone

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 11/6/24 | Reviewed Court's order re hearing, email to client | 0.10 |
| | | |
| | | |

| Cost Items | Amount |
|---|---|
| | |

# Harris L Cohen, Esq.

Harris L. Cohen, A Professional Corporation
5305 Andasol Ave. / Encino, CA 91316
Tel (818) 905-5599 / Fax (818) 905-5660
Hcohen00@aol.com
1/31/25

# STATEMENT

| Attorney Fees $395.00/hr. Hours 0.95 | $ 375.25 |
|---|---|
| Costs | $ 0.00 |
| **TOTAL DUE** | **$ 375.25** |

Mr. William R. Stuart
Milestone Financial LLC
4970 El Camino Real, Ste. 230
Los Altos, CA 94022

**ATTORNEYS' FEES** Re: Moon 11 Mandalay Milestone

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 1/30/25 | Tel to Kornberg for report on appeal for hearing on 1/31/25 (0.20) | 0.20 |
| 1/31/25 | Appeared at hearing on 1/31/25 re case (0.65), email to client re same (0.10) | 0.75 |
| | | |
| | | |

| Cost Items | Amount |
|---|---|
| | |

# Harris L Cohen, Esq.

Harris L. Cohen, A Professional Corporation
5305 Andasol Ave. / Encino, CA 91316
Tel (818) 905-5599 / Fax (818) 905-5660
Hcohen00@aol.com
4/30/25

# STATEMENT

| Attorney Fees $395.00/hr. Hours 0.25 | $ 98.75 |
|---|---|
| Costs | $ 0.00 |
| **TOTAL DUE** | **$ 98.75** |

Mr. William R. Stuart
Milestone Financial LLC
4970 El Camino Real, Ste. 230
Los Altos, CA 94022

**ATTORNEYS' FEES** Re: Moon 11 Mandalay Milestone

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 4/25/25 | Appeared at status conference and email to client re same | 0.25 |
| | | |
| | | |

| Cost Items | Amount |
|---|---|
| | |

# Harris L Cohen, Esq.

Harris L. Cohen, A Professional Corporation
5305 Andasol Ave. / Encino, CA 91316
Tel (818) 905-5599 / Fax (818) 905-5660
Hcohen00@aol.com
5/31/25

# STATEMENT

| Attorney Fees $395.00/hr. Hours 4.6 | |
|---|---|
| | $1,817.00 |
| Costs | $ 0.00 |
| **TOTAL DUE** | **$1,817.00** |

Mr. William R. Stuart
Milestone Financial LLC
4970 El Camino Real, Ste. 230
Los Altos, CA 94022

**ATTORNEYS' FEES** Re: Moon 11 Mandalay Milestone

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 5/12/25 | Reviewed email and District Court Ruling (0.25), tel with Kornberg (0.10), began drafting points and authorities on motion for attorneys' fees (1.75), prepared appendix of exhibits (0.35) | 2.45 |
| 5/13/25 | Compiled bills (0.30), created billing summary for the Court (0.30), added work performed to brief (0.40), drafted Cohen declaration (0.40), worked on Stuart and Kornberg declarations (0.50) | 1.90 |
| 5/23/25 | Compiled final billing and summary | 0.25 |
| | | |
| | | |
| | | |

| Cost Items | Amount |
|---|---|
| | |